**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Rebecca BROWER, on behalf of herself and all others similarly situated,<br><br>               *Plaintiff,*<br><br>    v.<br><br>COLGATE-PALMOLIVE COMPANY,<br><br>               *Defendant.* | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rebecca Brower ("Plaintiff"), by and through her counsel, on her own behalf and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Colgate-Palmolive Company ("Colgate" or "Defendant") and alleges the following facts in support of her claims against Defendant based upon personal knowledge, where applicable, information and belief, and the investigation of counsel:

## NATURE OF THE ACTION

1.    Heavy metals are known to pose significant and adverse health risks and consequences to humans. It is well-recognized that there is no safe level of lead and any of the other heavy metals.[1] Exposure to heavy metals, including lead and mercury, can cause negative

---

[1] *FDA Webinar: Action Levels for Lead in Food Intended for Babies and Young Children: Draft Guidance*, at 5 (March 2, 2023), https://www.fda.gov/media/166188/download (last accessed April 11, 2025) ("Although we may not be able to say the reference level is a safe level, it is a level we could rely on as a benchmark to measure exposure to foods."); *see also* Kevin Loria, *Congressional Report Finds More Problems With Heavy Metals in Baby Food*, Consumer Reports (Sept. 29, 2021, updated Oct. 20, 2021), https://www.consumerreports.org/food-safety/problems-with-heavy-metals-in-baby-food-congressional-report-a6400080224/#:~:text=%E2%80%9CThere%20is%20no%20safe%20level,research%20and%20testing%20at%20CR (last accessed April 13, 2025); *see, e.g.,* World Health Organization, *Lead*

health effects such as various cancers, gastric and vascular disorders, liver, kidney, and brain damage, miscarriages, and reproductive disorders:[2]



2.      Despite this, Defendant sold products with the intended consumer audience of children and adults with alarmingly high levels of lead and mercury with no warning.  Reasonable consumers would want to know about the presence of toxins in any product and especially one that is used multiple times a day and put directly into their bodies such as toothpaste.

3.       Exposure to any source of heavy metals should be avoided and minimized, and disclosure of the presence of heavy metals in products intended to be used every day, multiple times a day is presumptively material.

---

Poisoning, Sept. 27, 2024, available at https://who.int/news-room/fact-sheets/detail/lead-poisoning-and-health (last accessed April 21, 2025) (hereinafter "WHO Lead Poisoning").

[2] Anirban Goutam Mukherjee, et al., *Heavy Metal and Metalloid Contamination in Food and Emerging Technologies for Its Detection*, Sustainability, Jan. 9, 2023, 15(2), available at https://www.mdpi.com/2071-1050/15/2/1195 (last accessed Apr. 22, 2025).

4.      Consumers, including parents and other caregivers, reasonably believe that the toothpaste they purchase for themselves, and their children, will be free of heavy metals, such as lead and mercury. This is particularly true when products are produced and marketed by a company like Defendant who claims to be the "most trusted brand in the world."[3] Consumers, including Plaintiff, were wrong to place their trust in Defendant.

5.      A recent report published by Lead Safe Mama, LLC, a lead-poisoning prevention and consumer goods safety advocate,[4] found that certain toothpaste and tooth powder products – including Defendant's Colgate Watermelon, Colgate Watermelon Burst Toothpaste with Fluoride (for Kids), and Colgate Total Active Prevention Whitening Fluoride Toothpaste (collectively, the "Toothpaste Products") – contain lead and mercury.[5]

6.      Defendant fails to disclose that the Toothpaste Products contain (or have a material risk of containing) heavy metals, including lead and mercury. Nowhere on the Toothpaste Products' packaging is it disclosed that they contain (or have a material risk of containing) heavy metals, including lead and mercury (collectively, the "Omissions").

---

[3]   Colgate, *Mission: History and Purpose*, available at https://www.colgate.com/en-us/mission/history-and-purpose (last accessed Apr. 21, 2025) (hereinafter "Mission: History and Purpose").

[4] *See* Lead Safe Mama, *Chart Comparing the Toxicant Profiles of Popular Toothpaste and Tooth Powder Products Tested by an Independent, Third-Party Lab in 2025*, available at https://tamararubin.com/2025/01/toothpaste-chart/#comments (last accessed April 21, 2025) (hereinafter "Lead Safe Mama Chart").

[5] Discovery may reveal additional toothpaste products of Defendant that contain lead and/or mercury and/or other heavy metals, including but not limited to cadmium and/or arsenic. Plaintiff reserves her right to amend and include any such additional products and/or heavy metals in this action.

7.     Plaintiff brings this class action against Defendant for deceptive business practices, including the Omissions, regarding the presence of heavy metals, including lead and mercury, in the Toothpaste Products.

8.     Plaintiff seeks injunctive and monetary relief on behalf of the proposed Class, including (i) requiring full disclosure of all heavy metals in Defendant's marketing, advertising, and labeling; (ii) requiring testing of all ingredients and final products for heavy metals; and (iii) restoring monies to the members of the proposed Class.

9.     No reasonable consumer purchasing toothpaste or seeing Defendant's representations would expect the Toothpaste Products to contain heavy metals. Furthermore, reasonable consumers, like Plaintiff, would consider the inclusion of heavy metals a material fact when considering what oral hygiene products to purchase.

10.     Defendant intended for consumers to rely on its Omissions, concealment, and other deceptive conduct regarding the Toothpaste Products' quality, ingredients, standards, and suitability for consumption. Defendant's business practices and Omissions were deceptive, misleading, unfair, and/or false because, among other things, the Toothpaste Products contained undisclosed toxic heavy metals.

11.     Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Class (as defined herein), who, from the applicable limitations period up to and including the present, purchased for personal/household use and not resale any of the Toothpaste Products. Through this action, Plaintiff asserts claims for violations of New York General Business Law sections 349 and 350, Minnesota consumer statutes, fraud by omission, and unjust enrichment, seeking monetary damages, injunctive relief, and all other relief as authorized in equity or by law.

4

## PARTIES

12.     Plaintiff Rebecca Brower is, and at all times relevant, has been a citizen and resident of the state of Minnesota, residing in Minneapolis, in Hennepin County.

13.     Plaintiff purchased Defendant's Toothpaste Products from approximately 2000 until December 2024, including from Target locations in Minneapolis, Minnesota. Plaintiff believed that she was purchasing oral hygiene products that were nontoxic and free of heavy metals, including lead and mercury. During the time she purchased and used the Products, and due to the Omissions by Defendant, she was unaware that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury. If Defendant had disclosed that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury; that Defendant inadequately tested, or never tested, for heavy metals, in its ingredients and/or finished Toothpaste Products; or that Defendant sold Toothpaste Products that failed to meet its internal standards, Plaintiff would not have purchased any of the Toothpaste Products.

14.     Defendant Colgate-Palmolive Company is a citizen of the states of Delaware and New York, as it is incorporated in the state of Delaware and its principal place of business is located at 300 Park Avenue, New York, New York. Defendant packages, labels, markets, advertises, formulates, manufactures, distributes, and sells its Toothpaste Products throughout the United States, including New York.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d)(2), because at least one Class Member is of diverse state citizenship from Defendant, there are more than 100 Class Members, and the aggregate

amount in controversy exceeds $5 million, exclusive of interest and costs. Defendant sells its Toothpaste Products through major retailers from coast to coast in the United States and, as such, Class Members are citizens of numerous diverse states outside of New York and Delaware.

16.     The Southern District of New York has personal jurisdiction over Defendant as Defendant is headquartered in this District and conducts substantial business in this State and in this District through its headquarters and sale of products.

17.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant maintains its principal place of business in this District and because a substantial part of the events, misrepresentations, and/or Omissions giving rise to the deceptive conduct alleged in this Class Action Complaint occurred in, were directed to, and emanated from this District.

## FACTUAL ALLEGATIONS

### I.     Defendant's Presence in the Oral Hygiene and Toothpaste Market

18.     Defendant is the largest toothpaste brand in the United States.[6] In 2024, Defendant earned over $20 billion in net sales and a gross profit of $12.16 billion.[7]

19.     In 2021, Worldpanel by Kantar found that the Colgate brand was the "Fastest Growing Oral Care Brand of the Decade" and ranked second out of the "Top 25 Most Chosen Global FMCG [(fast-moving consumer goods)] Brands."[8]

---

[6]     Zippia, *Largest Toothpaste Brands*, Apr. 25, 2023, available at https://www.zippia.com/advice/largest-toothpaste-brands/ (last accessed Apr. 21, 2025).

[7] Colgate-Palmolive Investor, *Colgate Announces 4th Quarter and Full Year 2024 Results*, Jan. 31, 2025, available at https://investor.colgatepalmolive.com/news-releases/news-release-details/colgate-announces-4th-quarter-and-full-year-2024-results (last accessed Apr. 19, 2025).

[8] Kantar, *Brand Footprint 2022*, available at https://kantar.turtl.co/story/brand-footprint-2022-p/page/4/4 and https://kantar.turtl.co/story/brand-footprint-2022-p/page/6/6 (last accessed Apr. 21, 2025).

20.     As the leading provider of oral hygiene products in the United States, Defendant knows its customers trust the quality of its oral hygiene products and expect the Toothpaste Products to be free of heavy metals, including lead and mercury.

21.     According to a survey conducted by Newsweek and Statista, Defendant ranked third in the consumer goods industry as one of the World's Most Trusted Companies in 2024.[9]

22.     Defendant is aware of the reliance and trust its consumers place upon it and calls itself the "most trusted brand in the world."[10] Defendant has even published an article titled, "What's in a Colgate Product? Consumer Trust Rooted in Ingredient Transparency."[11]

## II.     Lead Safe Mama Reveals Presence of Heavy Metals, Including Lead and Mercury, in Colgate Toothpaste

23.     In January 2025, lead-poisoning prevention and consumer goods safety advocate Lead Safe Mama, LLC ("LSM") began conducting independent testing of popular toothpaste and tooth powder products, including Defendant's products.[12]

24.     On April 18, 2025, LSM published its testing results, finding that two of Defendant's products, Colgate Watermelon Burst Toothpaste with Fluoride (for Kids) and Colgate

---

[9]     Newsweek, *World's Most Trustworthy Companies 2024*, available at https://rankings.newsweek.com/worlds-most-trustworthy-companies-2024 (last accessed Apr. 21, 2025).

[10] Mission: History and Purpose, *supra*.

[11]  Colgate-Palmolive, *What's in a Colgate Product? Consumer Trust Rooted in Ingredient Transparency*, Jan. 2022, available at https://www.colgatepalmolive.com/en-us/who-we-are/stories/consumer-trust-ingredient-transparency (last accessed Apr. 21, 2025).

[12] *See* Lead Safe Mama Chart, *supra*.

Total Active Prevention Whitening Fluoride Toothpaste, contained extremely high levels of lead and mercury.[13] The testing commissioned by LSM was performed by Purity Laboratories, Inc.[14]



*Colgate Watermelon Burst Toothpaste with Fluoride (for Kids)*



*Colgate Total Active Prevention Whitening Fluoride Toothpaste*

---

[13] The Lead Safe Mama Chart, which includes test results for Defendant's products, is attached hereto as Exhibit 1.

[14] The lab reports for the Toothpaste Products are attached hereto as Exhibit 2.

25.     The sample for Colgate Watermelon Burst Toothpaste with Fluoride (for Kids) was received by LSM on March 10, 2025, and tested on March 12, 2025. [15] The testing was completed on March 14, 2025.[16]

26.     The sample for Colgate Total Active Prevention Whitening Fluoride Toothpaste was received by LSM on March 20, 2025, and tested on March 24, 2025.[17] The testing was completed on March 27, 2025.[18]

27.     The Colgate Watermelon Burst Toothpaste with Fluoride (for Kids) contained more than 300 parts per billion ("ppb") of lead and 6.9 ppb of mercury, while the Colgate Total Active Prevention Whitening Fluoride Toothpaste contained over 500 ppb of lead and 10.4 ppb of mercury.[19]

| Product | Lead (ppb) | Mercury (ppb) |
|---|---|---|
| **Colgate Watermelon Burst Toothpaste with Fluoride (for Kids)** | **302.1 ppb** | **6.9 ppb** |
| **Colgate Total Active Prevention Whitening Fluoride Toothpaste** | **539 ppb** | **10.4 ppb** |

28.     These are extremely high levels of lead and way over the action level set by the EPA of 15 ppb for public water that requires immediate action.[20]

---

[15] *See* Ex. 2

[16] *See id.*

[17] *See id.*

[18] *See id.*

[19] *See*, *generally*, Ex. 2.

[20] FACS, *Guide to PPB and "Safe" Lead Levels in Water: Understanding the Standards*, Mar. 16, 2022, available at https://facs.com/blog/guide-to-ppb-and-safe-lead-levels-in-water-understanding-the-

### III.    Defendant has actively concealed the truth about its Toothpaste Products from consumers.

29.    Defendant actively and knowingly concealed from and failed to disclose to consumers, including Plaintiff and the Class, that its Toothpaste Products contain or materially risk containing, heavy metals, including lead and mercury.

30.    Defendant actively and knowingly concealed and failed to disclose material facts to Plaintiff and consumers about the negative health effects of its Toothpaste Products to consumers.

31.    Defendant also knew of the formulation and ingredients of the Toothpaste Products yet failed to disclose the presence or material risk of heavy metals in the Toothpaste Products. Despite Defendant's claims that it "test[s] each [ingredient] carefully, at every stage of the product lifecycle[,]"[21] its Toothpaste Products are "[r]esponsibly made[,]"[22] and its ingredients "meet [Defendant's] strict safety standards and all applicable government regulations everywhere they are sold around the world[,]"[23] Defendant knowingly failed to adequately monitor or test its Toothpaste Products and ingredients, failed to responsibly manufacture them, and failed to adhere to internal safety standards.

32.    Defendant knowingly and actively concealed the material facts because it knew consumers cared about the quality, ingredients, standards, and suitability for consumption of the

---

standards/#:~:text=There%20is%20no%20safe%20level%20of%20lead.,include%20replacement%20of%20lead%20plumbing (last accessed Apr. 22, 2025).

[21]    Colgate, *Science and Innovation: Ingredients*, available at https://www.colgate.com/en-us/mission/science-and-innovation/ingredients (last accessed Apr. 21, 2025) (hereinafter "Science and Innovation: Ingredients").

[22]    *Id.*

[23]    Colgate-Palmolive, *Sustainability: Ingredient Safety Policy*, available at https://www.colgatepalmolive.com/en-us/sustainability/our-sustainability-policies/ingredient-safety (last accessed Apr. 21, 2025) (hereinafter "Sustainability: Ingredient Safety Policy").

Toothpaste Products, and if consumers were to learn the truth about Defendant's claims, it would negatively affect Defendant's finances.

33.    Defendant knew or should have known of the negative health effects caused by exposure to heavy metals, yet knowingly and actively concealed the presence or material risk of heavy metals in the Toothpaste Products.

34.    The knowing and active concealment of these material facts render the Toothpaste Products' packaging deceptive, misleading, and unfair because without full disclosure, reasonable consumers, including Plaintiff and the Class, believe the Toothpaste Products to be of a certain quality and suitable for consumption when they are not.

35.    Plaintiff and the Class Members made purchases they would not have had they known the truth or paid a premium price for the Toothpaste Products based on Defendant's active concealment, Omissions, and misrepresentations regarding the presence or material risk of heavy metals in the Toothpaste Products.

36.    The facts concealed, omitted, or not disclosed by Defendant were material such that reasonable consumers, including Plaintiff and the Class, would have considered them when deciding when deciding whether to purchase the Toothpaste Products. Had Plaintiff known the truth, she would not have purchased the Toothpaste Products or paid the premium price.

## IV.    Defendant Omits Any Mention of Heavy Metals While Misrepresenting the True Nature of its Toothpaste Products

37.    Defendant claims that "[e]very single ingredient [it] use[s] is completely safe for you, your family, and the environment" and that it "test[s] each one carefully, at every stage of the

11

product lifecycle."[24] Defendant also claims its products are "[r]esponsibly made."[25] The ingredients are further said to "meet [Defendant's] strict safety standards and all applicable government regulations everywhere they are sold around the world."[26]

38.    Defendant also claims that it is "committed to reduc[ing] [its] environmental impact."[27]

39.    Defendant's promises on the packaging for Colgate Watermelon Burst Toothpaste with Fluoride (for Kids) include "Anticavity," "Clinically Proven Cavity & Enamel Protection," and "Sugar Free." [28]

 

---

[24] Colgate, *Science and Innovation: Ingredients*, available at https://www.colgate.com/en-us/mission/science-and-innovation/ingredients (last accessed Apr. 21, 2025) (hereinafter "Science and Innovation: Ingredients").

[25] *Id*.

[26] Colgate-Palmolive, *Sustainability: Ingredient Safety Policy*, available at https://www.colgatepalmolive.com/en-us/sustainability/our-sustainability-policies/ingredient-safety (last accessed Apr. 21, 2025) (hereinafter "Sustainability: Ingredient Safety Policy").

[27] Colgate, *Mission: Environmental Impact*, available at https://www.colgate.com/en-us/mission/environmental-impact (last accessed Apr. 21, 2025).

[28] Product listing for Colgate Watermelon Burst Toothpaste with Fluoride (for Kids), Target, available at https://www.target.com/p/colgate-2-in-1-kids-toothpaste-and-anticavity-mouthwash-watermelon-burst-4-6oz/-/A-13773703#lnk=sametab (last accessed Apr. 21, 2025).

40.    It also claims to be "Gentle on tooth enamel."[29]

41.    Defendant' promises on the packaging of the Colgate Total Active Prevention Whitening Fluoride Toothpaste include that "Fight[s] Root Cause of: Gingivitis, Plaque, Tartar, Cavities, Sensitivity, Bad Breath, Enamel Erosion, Stains."[30]



42.    Defendant makes these claims while failing to disclose that its Toothpaste Products, including those marketed for children, contain (or have a material risk of containing) lead and mercury, both of which have been scientifically shown to cause a litany of adverse health effects for families and the environment.

43.    Defendant's statements are directly contrary to the fact that the Toothpaste Products contain heavy metals.

---

[29] *Id*.

[30] Product listing for Colgate Total Active Prevention Whitening Fluoride Toothpaste, Target, available at https://www.target.com/p/colgate-total-whitening-toothpaste/-/A-88919775?preselect=13773793#lnk=sametab (last accessed Apr. 21, 2025).

## V.    Due to the Presence and Material Risk of Heavy Metals, the Omissions are Misleading

44.    The Toothpaste Products contain lead and mercury at levels exceeding United States Environmental Protection Agency ("EPA") limits for drinking water.

45.    For lead, the EPA set the maximum contaminant level goal ("MCLG") to zero and the maximum contaminant level ("MCL") to 0.010 mL/g, or 10 ppb.[31] The MCLG for lead is zero because "EPA and the Centers for Disease Control and Prevention (CDC) agree that there is no known safe level of lead in a child's blood."[32]

46.    In January 2025, the FDA issued its final guidance for action levels of lead ranging from 10 ppb to 20 ppb in processed foods for infants and children under two years old.[33] The action levels represent levels at which the FDA considers water or food to be "contaminated" within section 402(a)(1) of the Federal Food, Drug, and Cosmetic Act.

47.    For mercury, the FDA set both the MCLG and MCL to 0.002 ML/g, or 2 ppb.[34]

48.    Defendant's Colgate Watermelon Burst Toothpaste with Fluoride (for kids) contains a shocking 302.1 ppb of lead—over 30 times higher than the EPA's MCL level.[35] The Toothpaste Product also contains 6.9 ppb of mercury—over three times higher than the EPA's MCL

---

[31] Environmental Protection Agency, *National Primary Drinking Water Regulation*, available at https://www.epa.gov/ground-water-and-drinking-water/national-primary-drinking-water-regulations#seven (last accessed Apr. 21, 2025) (hereinafter "EPA Primary Drinking Water Regulation").

[32] Environmental Protection Agency, *Basic Information about Lead in Drinking Water*, last updated Apr. 10, 2025, available at https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water (last accessed Apr. 21, 2025).

[33] U.S. Department of Health and Human Services, Food and Drug Administration, *Action Levels for Lead in Processed Food Intended for Babies and Young Children: Guidance for Industry*, Jan. 2025, available at https://www.fda.gov/media/164684/download (last accessed Apr. 21, 2025).

[34] EPA Primary Drinking Water Regulation, *supra*.

[35] *See* Ex. 2

level.[36] This is particularly concerning given the heightened danger of heavy metals exposure for children.[37]

49.     Defendant's Colgate Total Active Prevention Whitening Fluoride Toothpaste fares even worse with 539 ppb of lead—over 50 times higher than the EPA's MCL level, and 10.4 ppb of mercury—over five times higher than the EPA's MCL level.[38]

50.     There are no safe levels of any heavy metal.[39] Heavy metals are neurotoxins, or poisons, which affect the nervous system.[40]

51.     With respect to children, exposure to these heavy metals "diminish[es] quality of life, reduce[s] academic achievement, and disturb[s] behavior, with profound consequences for the

---

[36] *See id.*

[37] *See* Environmental Protection Agency, *Learn About Lead*, available at https://www.epa.gov/lead/learn-about-lead (last accessed Apr. 21, 2025) ("Lead is particularly dangerous to children because their growing bodies absorb more lead than adults do and their brains and nervous systems are more sensitive to the damaging effects of lead.")

[38] *See* Ex. 2

[39] *FDA Webinar: Action Levels for Lead in Food Intended for Babies and Young Children: Draft Guidance*, at 5 (March 2, 2023), available at https://www.fda.gov/media/166188/download (last accessed Apr. 21, 2025) ("Although we may not be able to say the reference level is a safe level, it is a level we could rely on as a benchmark to measure exposure to foods."); *see also* Kevin Loria, *Congressional Report Finds More Problems With Heavy Metals in Baby Food*, Consumer Reports (Sept. 29, 2021, updated Oct. 20, 2021), available at https://www.consumerreports.org/health/food-safety/problems-with-heavy-metals-in-baby-food-congressional-report-a6400080224/ (last accessed Apr. 21, 2025) (hereinafter "Congressional Report Finds More Problems With Heavy Metals in Baby Food").

[40] *See*, *e.g.*, U.S. House of Representatives, Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Staff Report, *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, at 2 (Feb. 4, 2021), https://oversightdemocrats.house.gov/sites/evo-subsites/democrats-oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed Apr. 21, 2025) (hereinafter "Congressional Committee Report") ( "The Food and Drug Administration and the World Health Organization have declared them dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects.").

welfare and productivity of entire societies."[41] Heavy metals can harm the "developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder ('ADHD')."[42] Even in trace amounts, heavy metals can alter the developing brain and erode a child's intelligence quotient ("IQ").[43]

52.     Due to their smaller physical size and still-developing brain and organs, toddlers are particularly susceptible to the toxic effects of heavy metals because "[t]hey also absorb more of the heavy metals that get into their bodies than adults do."[44]

53.     Of additional concern to developing children are the health risks related to simultaneous exposure to multiple heavy metals as "co-exposures can have interactive adverse effects."[45] Heavy metals disturb the body's metabolism and cause "significant changes in various biological processes such as cell adhesion, intra- and inter-cellular signaling, protein folding, maturation, apoptosis, ionic transportation, enzyme regulation, and release of neurotransmitters."[46]

---

[41] Healthy Babies Bright Futures, *What's in My Baby's Food?*, Oct. 2019, at 13 available at https://hbbf.org/sites/default/files/2022-12/BabyFoodReport_ENGLISH_R6_0.pdf (last accessed April 21, 2025) (hereinafter "HBBF Report").

[42] *Id.* at 6.

[43] *See* Congressional Committee Report, *supra*, at 2.

[44] Jesse Hirsch, *Heavy Metals in Baby Food: What You Need to Know*, Consumer Reports, Aug. 16, 2018, updated June 27, 2023, available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed Apr. 21, 2025) (internal citation omitted) ("Consumer Reports: Heavy Metals in Baby Food").

[45] Rachel Morello-Frosch, et al., *Environmental Chemicals in an Urban Population of Pregnant Women and Their Newborns from San Francisco* at 2, Environmental Science & Technology, Nov. 15, 2016; 50(22),12464-12472; available at https://stacks.cdc.gov/view/cdc/80511 (last accessed Apr. 21, 2025).

[46] Monisha Jaishankar, et al., *Toxicity, Mechanism and Health Effects of Some Heavy Metals* at 62, Interdisciplinary Toxicology, Nov. 14, 2014, 7(2), 60–72, https://doi.org/10.2478/intox-2014-0009 (last accessed Apr. 21, 2025).

54.    According to Victor Villarreal, Ph.D., Assistant Professor in the Department of Educational Psychology at the University of Texas at San Antonio who has studied the effects of heavy metals on childhood development, "[t]he effects of early exposure to heavy metals can have long-lasting impacts that may be impossible to reverse."[47]

55.    Exposure to heavy metals, even in small amounts, can lead to life-long effects. Heavy metals can remain in one's body for years and, thus, can accumulate in the body, such as in the kidneys and other internal organs, increasing their risk to a person over time.[48]

56.    Because heavy metals can bioaccumulate in the body, even regular consumption of small amounts can increase the material risk of various health issues, including bladder, lung, and skin cancer; cognitive and reproductive problems; and type 2 diabetes.[49]

57.    As Dr. James E. Rogers, the director of food safety research and testing at Consumer Reports, has said "[t]*here is no safe level of heavy metals*, so the goal should be to have no measurable levels of any heavy metal in baby and toddler foods."[50] This rings particularly true when considering that generally, it is recommended that children and adults brush their teeth twice a day.[51]

---

[47] Consumer Reports: Heavy Metals in Baby Food, *supra*.

[48] *See id*.

[49] *See id*.

[50] Congressional Report Finds More Problems with Heavy Metals in Baby Food, *supra* (emphasis added).

[51] *See*, *e.g.*, HeadStart.gov, *Toothbrushing*, available at https://headstart.gov/browse/tag/toothbrushing (last accessed Apr. 21, 2025); American Dental Association, *Toothbrushes*, available at https://www.ada.org/resources/ada-library/oral-health-topics/toothbrushes#:~:text=The%20American%20Dental%20Association%20recommends,caries%20and%20remineralization%20of%20teeth (last accessed Apr. 22, 2025).

58.    Research continues to confirm that exposures to heavy metals cause "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[52]

59.    The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared heavy metals "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[53]

60.    The heavy metals in the Toothpaste Products have the potential to cause not only adverse health effects, but also to pollute the environment. The lead and mercury in the Toothpaste Products have been scientifically shown to bioaccumulate in the environment: "The daily use of toothpastes containing heavy metals can be a threat to the environment since they can *bioaccumulate and reach toxic proportions*, affecting water, soil, and living organisms."[54]

### A.    Negative Health Effects of Lead

61.    Lead is a highly toxic heavy metal, identified as a carcinogen, and whose harmful effects cannot be reversed or remediated due to its accumulation in the body over time.[55]

62.    No amount of lead is safe for human exposure or consumption, according to the FDA, CDC, AAP, and WHO.[56]

---

[52] HBBF Report, *supra*, at 1.

[53] Congressional Committee Report, *supra*, at 2.

[54] K. Chengappa, A. Rao, R. Shenoy, M. Pai, P. Jodalli, A. B.R., *Heavy metal content of over-the-counter toothpastes—a systematic review in vitro studies*, Frontiers in Dental Medicine, Mar. 26, 2025; 6:1543972, available at https://pmc.ncbi.nlm.nih.gov/articles/PMC11979237/ (last accessed Apr. 21, 2025) (emphasis added).

[55] *See* Consumer Reports: Heavy Metals in Baby Food; *ToxFAQs for Lead*, Agency for Toxic Substances                    and                    Disease                    Registry, https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=93&toxid=22 (last accessed Apr. 21, 2025).

[56] *See* FDA, *Lead in Food and Foodwares* (current as of Jan. 6, 2025), https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares#:~:text=Although%20no%20safe%20level%20for,blood%20(%C2%B5g%20%2FdL) (last accessed Apr. 21, 2025); CDC, *Childhood Lead Poisoning Prevention: CDC Updates Blood*

63.    Exposure to lead can cause cancer, neuropathy and brain damage, hypertension, decreased renal function, increased blood pressure, and gastrointestinal and cardiovascular effects. It can also cause reduced fetal growth or lower birth weights.[57]



---

*Lead Reference Value* (Apr. 2, 2024), https://www.cdc.gov/lead-prevention/php/news-features/updates-blood-lead-reference-value.html (last accessed Apr. 21, 2025); American Academy of Pediatrics, *Lead Exposure in Children* (last updated Jan. 2, 2025), https://www.aap.org/en/patient-care/lead-exposure/lead-exposure-in-children/#:~:text=How%20Much%20Lead%20is%20Safe,Prevention%20recommends%20evaluation%20and%20intervention (last accessed Apr. 21, 2025); WHO Lead Poisoning, *supra*; *see also* USA Today, *FDA: Recalled Applesauce Pouches Had Elevated Lead Levels and Another Possible Contaminant* (Jan. 5, 2024, updated Jan. 9, 2024), https://www.usatoday.com/story/money/food/2024/01/05/applesauce-pouch-recall-contamination-spreads/72121869007/ (last accessed Apr. 21, 2025).

[57] Geneva Environment Network, *Environmental and Health Impacts of Lead*, last updated Oct. 17, 2024, available at https://www.genevaenvironmentnetwork.org/resources/updates/lead-poisoning-prevention/ (last accessed Apr. 22, 2025).

64.     The EPA has found that "[l]ead can affect almost every organ and system in your body. Children six years old and younger are more susceptible to the effects of lead."[58]

65.     For children, "[e]ven low levels of lead in blood of children can result in: behavior and learning problems, lower IQ and hyperactivity, slowed growth, hearing problems, [and] anemia."[59]

66.     Lead can also be transmitted from pregnant women to their babies during pregnancy because "[l]ead can accumulate in our bodies over time… During pregnancy, lead is released from the mother's bones… and can pass from the mother exposing the fetus or the breastfeeding infant to lead."[60] This can result in "miscarriage, stillbirth, premature birth, and low birth weight infants."[61]

67.     Lead is also harmful to adult health, and exposure to lead in adults is associated with increased blood pressure, increased risk of hypertension, reduced fetal growth in pregnant women, damage to reproductive organs, cognitive decline, heart disease, and worsened kidney function.[62]

---

[58] EPA, *Learn About Lead*, last updated Dec. 5, 2024, https://www.epa.gov/lead/learn-about-lead (last accessed April 20, 2025).

[59] *Id.*

[60] *Id.*

[61] T. Bhasin, Y. Lamture, M. Kumar, R. Dhamecha, *Unveiling the Health Ramini factions of Lead Poisoning: A Narrative Review,* Cureus, Oct. 9, 2023; 15(1):e46727, available at https://pmc.ncbi.nlm.nih.gov/articles/PMC10631288/ (last accessed Apr. 21, 2025).

[62] *NTP Monograph: Health Effects of Low-Level Lead*, U.S. Department of Health and Human Services, National Toxicology Program, June 2012, available at https://ntp.niehs.nih.gov/sites/default/files/ntp/ohat/lead/final/monographhealtheffectslowlevellead_newissn_508.pdf (last accessed Apr. 21, 2025); A. Spivey, *The Weight of Lead: Effects Add Up in Adults*, Environ. Health Perspectives, Jan. 1, 2007, 115(1): A30-A36, https://ehp.niehs.nih.gov/doi/10.1289/ehp.115-a30 (last accessed Apr. 21, 2025); *Lead vs. Lead-Free Solder: Which is Better for PCB Manufacturing?* Wevolver, Jan. 31, 2023, https://www.wevolver.com/article/lead-free-solder-vs-lead-solder (last accessed Apr. 21, 2025).



68.    Because exposure to lead builds up in the human body over time, it can disrupt neurological, skeletal, reproductive, hematopoietic, renal, and cardiovascular systems.[63]

---

[63] Collin, M. Samuel, et al., *Bioaccumulation of Lead (Pb) and Its Effects on Human: A Review*, Journal of Hazardous Material Advances, Aug. 2022, (7), available at https://www.sciencedirect.com/science/article/pii/S277241662200050X?via%3Dihub (last accessed Apr. 21, 2025).

69.    Even "[r]epeated low-level exposure [to lead] over a prolonged period" can result in clinical symptoms including "[p]ersistent vomiting, encephalopathy, lethargy, delirium and coma[.]"[64]

70.    The Toothpaste Products contain amounts of lead at 302.1 ppb for a product meant for children, and 539 ppb in a product intended for adults.

### B. Negative Health Effects of Mercury

71.    The EPA has found that mercury exposure "can harm the brain, heart, kidneys, lungs, and immune system of people of all ages."[65]

72.    Similar to lead, "[e]xposure to mercury – even in small amounts – may cause serious health problems, and is a threat to the development of the child in utero and early in life."[66]

73.    Scientific studies have found that mercury "can cause disorders such as various cancers; endothelial dysfunction; gastric and vascular disorders; liver, kidney, and brain damage; hormonal imbalances, miscarriages, and reproductive disorders; skin lesions; vision damage; and even death."[67]

---

[64] Taanvi Bhasin, et al., *Unveiling the Health Ramifications of Lead Poisoning: A Narrative Review*, Cureus, Oct. 9, 2023, 15(10), available at https://www.cureus.com/articles/184381-unveiling-the-health-ramifications-of-lead-poisoning-a-narrative-review#!/ (last accessed Apr. 22, 2025).

[65] EPA, *Basic Information about Mercury*, available at https://www.epa.gov/mercury/basic-information-about-mercury (last accessed Apr. 21, 2025).

[66] World Health Organization, *Mercury and Health*, available at https://www.who.int/news-room/fact-sheets/detail/mercury-and-health (last accessed Apr. 21, 2025).

[67] A. Charkiewicz, W. Omeljaniuk, M. Garley, J. Niklinski, *Mercury Exposure and Health Effects: What Do We Really Know?*, Int'l Journal of Molecular Science, Mar. 5, 2025, 26(5), 2326, available at https://www.mdpi.com/1422-0067/26/5/2326 (last accessed Apr. 21, 2025).

74.    Mercury has no known "positive functionality in the human body, and even at low concentrations, it can have harmful long-term health effects, causing headaches, limb pain, tooth loss, or general weakness."[68]

75.    Mercury increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed in utero. Exposure to mercury has been linked to higher risk of lower IQ scores and intellectual disability.[69]

76.    Mercury exposure at two and three years of age has been positively associated with autistic behaviors among pre-school age children.[70]

77.    The Toothpaste Products contain amounts of mercury at 6.9 ppb for a product meant for children, and 10.4 ppb in a product intended for adults.

## VI.    Defendant's Toothpaste Products Can Be Manufactured Without Heavy Metals

78.    Defendant could have manufactured its Toothpaste Products to be free of lead and mercury, or at the very least, to contain non-detectable levels of the same. In fact, some of Defendant's competitors have manufactured Toothpaste Products with non-detectable levels of lead and mercury.[71]

79.    Five toothpaste products tested by LSM were found to have less than 5 ppb of lead and mercury: (1) Dr. Brown's Baby Toothpaste; (2) Kids' Spry Tooth Gel with Xylitol; (3) Pegciz Toothpaste (Foam); (4) Orajel Training Toothpaste; and (5) Miessence Toothpaste.[72] Defendant's

---

[68] *Id.*

[69] *See* HBBF Report, *supra*, at 14.

[70] *See* Congressional Committee Report, *supra*, at 12-13.

[71] *See* Ex. 1.

[72] *See id.*

Toothpaste Products were categorized with products that contained the highest amounts of lead, with levels at 200 ppb and above.[73]

## VII.    The Material Omissions Mislead and Deceived Reasonable Consumers

80.    The popularity of Defendant's Toothpaste Products is directly tied to consumers' trust in the Colgate brand, as evidenced by Defendant's own statements.[74]

81.    Defendant promises that "[e]very single ingredient [it] use[s] is completely safe for you, your family, and the environment" and that it "test[s] each one carefully, at every stage of the product lifecycle."[75] Defendant also guarantees that its ingredients "meet [Defendant's] strict safety standards and all applicable government regulations everywhere they are sold around the world."[76]

82.    The Omissions wrongfully convey to consumers that the Toothpaste Products are of a high quality and have certain characteristics they do not actually possess.

83.    Defendant misleadingly causes consumers to believe its Toothpaste Products do not contain (or have a material risk of containing) heavy metals, including lead and mercury, due to the material Omissions, when in fact the Toothpaste Products do contain (or have a material risk of containing) both lead and mercury.

---

[73] *Id.*

[74] Mission: History and Purpose, *supra*; Colgate-Palmolive, *What's in a Colgate Product? Consumer Trust Rooted in Ingredient Transparency*, Jan. 2022, available at https://www.colgatepalmolive.com/en-us/who-we-are/stories/consumer-trust-ingredient-transparency (last accessed Apr. 20, 2025).

[75] Science and Innovation: Ingredients, *supra*.

[76] Sustainability: Ingredient Safety Policy, *supra*.

84.    For example, LSM's testing found that Defendant's Colgate Watermelon Burst Toothpaste with Fluoride (for Kids) contains 302.1 ppb of lead and 6.9 ppb of mercury. Defendant fails to disclose the presence of both heavy metals.

85.    Whether the Toothpaste Products contain heavy metals is material information to reasonable consumers, including Plaintiff.

86.    Defendant wrongfully failed to disclose to reasonable consumers material information regarding the presence of (or material risk of) heavy metals in the Toothpaste Products.

87.    Due to the Omissions, particularly in conjunction with Defendant's representations that "every single ingredient" used is "completely safe" and tested "at every stage of the product life cycle," reasonable consumers, like Plaintiff, would not suspect the presence of heavy metals in the Toothpaste Products. Unlike Defendant, reasonable consumers are not able to independently detect the presence of heavy metals in the Toothpaste Products and are generally without the means to conduct their own scientific tests on the Toothpaste Products.

88.    Moreover, information regarding the presence of heavy metals in the Toothpaste Products is in the exclusive possession of Defendant and not available to consumers. Defendant chose to not disclose such information to consumers and thus actively concealed the presence and risk of heavy metals in the Toothpaste Products.

89.    Reasonable consumers must and do rely on Defendant to honestly report what its Toothpaste Products contain.

90.    Based on the failure to disclose the presence (or material risk) of heavy metals on the Toothpaste Products' packaging, no reasonable consumer would expect, suspect, or understand that the Toothpaste Products contained or had a material risk of containing heavy metals.

91.     In light of Defendant's statements regarding the quality of the Toothpaste Products, including its supposed comprehensive quality controls, Defendant knew or should have known the Toothpaste Products contained or had a material risk of containing heavy metals.

92.     Defendant had a duty to ensure the Toothpaste Products were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

93.     Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive packaging based on the material Omissions.

94.     Defendant knew that properly and sufficiently monitoring the Toothpaste Products for heavy metals was not only important, but critical.

95.     Defendant knew or should have known it could control the levels of heavy metals in the Toothpaste Products by requiring proper monitoring and testing for heavy metals, including lead and mercury, at manufacturing and packaging stages, and effecting changes when needed. Indeed, Defendant purports to "test each [ingredient] carefully, at every stage of the product lifecycle – from the development lab to the store shelf, and even to your bathroom at home."[77]

96.     The Omissions are material and reasonably likely to deceive reasonable consumers, such as Plaintiff, in their purchasing decisions. This is especially true considering Defendant's long-standing campaign built on trust.

97.     The Omissions make the Toothpaste Products' packaging deceptive based on the presence or risk of heavy metals in the Toothpaste Products. Reasonable consumers, like Plaintiff, would consider the presence or risk of heavy metals in the Toothpaste Products a material fact when considering which oral hygiene products to purchase.

---

[77] Science and Innovation: Ingredients, *supra*.

98.     Defendant knew, yet failed to disclose, that it was not sufficiently or adequately monitoring or testing the Toothpaste Products or ingredients used in the Toothpaste Products for heavy metals.

99.     The Omissions were misleading due to Defendant's failure to sufficiently or adequately monitor or test for and disclose the presence (or material risk) of heavy metals in the Toothpaste Products.

100.    Defendant knew or should have known that the Toothpaste Products contained or may contain undisclosed levels of heavy metals that were not disclosed on the packaging.

101.    Defendant knew or should have known that reasonable consumers expected Defendant to sufficiently monitor and test the Toothpaste Products and their packaging for heavy metals to ensure the quality of the Toothpaste Products.

102.    Defendant knew or should have known that reasonable consumers paid higher prices, or paid any price at all, for the Toothpaste Products and expected Defendant to sufficiently test and monitor the Toothpaste Products and their packaging for the presence of heavy metals.

103.    The Omissions are material and render the Toothpaste Products' packaging deceptive because without full disclosure, reasonable consumers believe the Toothpaste Products do not contain or have a material risk of containing heavy metals.

104.    The Omissions were intended to and did, in fact, cause consumers like Plaintiff and the Class Members, to purchase products they would not have if the true quality and ingredients were disclosed or for which they would not have paid a premium price, or any price at all.

105.    As a result of the Omissions, Defendant was able to generate substantial sales, which allowed Defendant to capitalize on, and reap enormous profits from, Plaintiff and similarly situated consumers who paid the purchase price or premium for the Toothpaste Products.

106.     Plaintiff and other reasonable consumers would not have purchased the Toothpaste Products or would have paid less for them but for the Omissions.

## CLASS ALLEGATIONS

107.     Plaintiff brings this action individually and on behalf of the following Classes pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (3), and (c)(4):

**Nationwide Class**: All persons who, during the applicable statute of limitations to the present, purchased the Toothpaste Products in the United States for household use, and not for resale (the "Nationwide Class").

**New York Subclass**: All persons who, during the applicable statute of limitations to the present, purchased the Toothpaste Products in New York for household use, and not for resale (the "New York Subclass").

**Minnesota Subclass**: All persons who, during the applicable statute of limitations to the present, purchased the Toothpaste Products in Minnesota for household use, and not for resale (the "Minnesota Subclass").

108.     Members of the Nationwide Class and the New York Subclass and the Minnesota Subclass are sometimes, where appropriate, referred to herein collectively as "Class Members" or the "Classes."

109.     Excluded from the Classes are Defendant, any of Defendant's parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, or co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

110.     This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the Class Members are easily ascertainable.

28

111.    **Numerosity**: The Class Members are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to the parties and Court.

112.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other Class Members, and those questions predominate over any questions that may affect individual Class Members. Questions of law and fact common to Plaintiff and the Classes include, but are not limited to, the following:

  a.  whether the Omissions were misleading;

  b.  whether Defendant owed a duty to disclose;

  c.  whether Defendant knew or should have known that the Toothpaste Products contained or may contain heavy metals, including lead and/or mercury;

  d.  whether Defendant failed to disclose that the Toothpaste Products contained or may contain heavy metals, including lead and/or mercury;

  e.  whether Defendant's packaging is false, deceptive, and misleading based on the Omissions;

  f.  whether the Omissions are material to a reasonable consumer;

  g.  whether the Omissions are likely to deceive a reasonable consumer;

  h.  whether Defendant had knowledge that the Omissions were material, false, deceptive, and misleading;

  i.  whether Defendant had exclusive knowledge of the Omissions;

  j.  whether Plaintiff could have reasonable discovered the Omissions;

  k.  whether Defendant violated New York state laws;

  l.  whether Defendant violated Minnesota state laws;

     m.  whether Defendant engaged in unfair trade practices;

     n.  whether Defendant engaged in false advertising;

     o.  whether Defendant made fraudulent omissions;

     p.  whether Defendant made fraudulent misrepresentations by omissions;

     q.  whether Plaintiff and the Class Members are entitled to actual, statutory, and punitive damages; and

     r.  whether Plaintiff and the Class Members are entitled to declaratory and injunctive relief.

113.  Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of all the Class Members. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

114.  **Typicality**. Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and the Class Members sustained damages as a result of Defendant's uniform wrongful conduct during transactions with them.

115.  **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Classes, and there are no defenses unique to Plaintiff. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class Members and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the Class Members.

116.  **Risks of Prosecuting Separate Actions**: This case is appropriate for certification because prosecution of separate actions would risk either inconsistent adjudications which would

establish incompatible standards of conduct for Defendant or would be dispositive of the interests of members of the Classes.

117. **Policies Generally Applicable to the Classes**: This case is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Plaintiff and Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's practices challenged herein apply to and affect the Class Members uniformly, and Plaintiff's challenge to those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on individual facts or law applicable only to Plaintiff.

118. **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and the Class Members. The injuries suffered by each Class Member are relatively small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct. Absent a class action, it would be virtually impossible for the Class Members to obtain effective relief from Defendant. Even if Class Members could sustain individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties, including the Court, and would require duplicative consideration of the common legal and factual issues presented here. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court.

**COUNT ONE**
**Violations of New York's Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349**
**Against Defendant on Behalf of Plaintiff Brower and the New York Subclass**

119.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

120.    New York General Business Law ("GBL") section 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

121.    In its advertising and sale of goods throughout New York, Defendant conducts business and trade within the meaning of GBL section 349.

122.    Defendant violated GBL section 349 by deceptively and misleadingly omitting that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury.

123.    Defendant's Omissions, concealment, and other deceptive conduct intentionally marketed that the Toothpaste Products were of a particular standard, grade, or quality when they in fact contained (or had a material risk of containing) heavy metals, including lead and mercury.

124.    Defendant's Omissions, concealment, and other deceptive conduct described herein were directed at the consumer public at-large as they repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

125.    The facts concealed or not disclosed by Defendant were material facts in that Plaintiff and the New York Subclass, and other reasonable consumers, would have considered them in deciding whether to purchase the Toothpaste Products. Had Plaintiff and members of the New York Subclass known the Toothpaste Products did not have the quality, ingredients, standards, and suitability for consumption as advertised by Defendant and contained (or had a material risk of

containing) heavy metals, including lead and mercury, they would not have purchased the Toothpaste Products or paid a premium price.

126.    Defendant alone possessed the information that was material to Plaintiff and the New York Subclass and failed to disclose such material information to consumers.

127.    Defendant has engaged and continues to engage in deceptive conduct in violation of GBL section 349.

128.    The Omissions and other deceptive conduct caused Plaintiff and the New York Subclass to suffer injury in the form of actual damages when they purchased the Toothpaste Products that were worth less than the price paid and that they would not have purchased at all had they known the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury.

129.    Defendant intended for Plaintiff and the New York Subclass to rely on its Omissions, concealment, and other deceptive conduct regarding the Toothpaste Products' quality, ingredients, standards, and suitability when purchasing the Toothpaste Products, unaware of the undisclosed material facts.

130.    As a direct and proximate result of these violations, Plaintiff, the New York Subclass, and other reasonable consumers have been harmed, and that harm will continue unless Defendant is enjoined from further omitting the true quality, ingredients, standards, and suitability for consumption of the Toothpaste Products.

131.    Pursuant to GBL sections 349(h) and 350-D, Plaintiff and the New York Subclass seek injunctive relief, declaratory relief, full refund, compensatory and punitive damages, actual damages or $50 (whichever is greater), statutory and treble damages, and attorneys' fees.

## COUNT TWO
**Violations of New York False Advertising Law, N.Y. Gen. Bus. Law § 350**
**(On Behalf of Plaintiff Brower and the New York Subclass)**

132.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

133.    New York General Business Law ("GBL") section 350 prohibits false advertising in the conduct of any business, trade, or commerce.

134.    Pursuant to GBL section 350, false advertising is defined as "advertising, including labeling, or a commodity… if such advertising is misleading in a material respect. … [considering] representations made by statement, word [or] design [and] the extent to which the advertising fails to reveal facts material in the light of such representations."

135.    Defendant knew or should have known the Toothpaste Products did not have the quality, ingredients, standards, and suitability for consumption as described above because they contained (or had a material risk of containing) undisclosed levels of heavy metals, including lead and mercury.

136.    Defendant purposely concealed and did not disclose material facts regarding the presence of heavy metals, including lead and mercury, to consumers, such as Plaintiff and the New York Subclass.

137.    The facts concealed or not disclosed by Defendant were material in that Plaintiff, the New York Subclass, and other reasonable consumers would have considered them when deciding whether to purchase the Toothpaste Products. Had Plaintiff and members of the New York Subclass known the Toothpaste Products did not have the quality, ingredients, and standards as advertised by Defendant and contained (or had a material risk of containing) heavy metals, including lead and mercury, they would not have purchased the Toothpaste Products.

34

138.    Defendant's conduct caused Plaintiff and the New York Subclass to suffer actual damages when they purchased the Toothpaste Products that were worth less than the price paid and that they would not have purchased at all had they known the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury.

139.    As a direct and proximate result of Defendant's violation of GBL section 350, Plaintiff and the New York Subclass have been injured, and that harm will continue unless Defendant is enjoined from further omitting the true quality, ingredients, standards, and suitability of its Toothpaste Products, including but not limited to the presence of heavy metals, including lead and mercury.

140.    Pursuant to GBL section 350-D, Plaintiff and the New York Subclass seek injunctive relief,  declaratory relief, full refund, actual and punitive damages or $500 (whichever is greater), statutory damages of three times the actual damages (up to $10,000), and attorneys' fees.

## COUNT THREE
**Violations of Minnesota Unlawul Trade Practices Act, Minn. Stat. §325D.13, *et seq*.,
(On Behalf of Plaintiff Brower and the Minnesota Subclass)**

141.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

142.    Defendant is a "person" within the meaning of the Minnesota Unlawful Trade Practices Act ("MUTPA").

143.    Defendant violated the MUTPA by knowingly failing to disclose the Omissions.

144.    Defendant knew or should have known the Toothpaste Products and their ingredients were not of the true quality advertised because they contained (or had a material risk of containing) heavy metals, including lead and mercury.

145.    Defendant's pattern of knowing concealment, Omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and the Minnesota Subclass with respect to the Toothpaste Products' quality, ingredients, standards, and suitability for consumption.

146.    Defendant intended for Plaintiff and the Minnesota Subclass to rely on its Omissions, concealment, implied warranties, and/or deceptions regarding the Toothpaste Products' quality, ingredients, standards, and suitability for consumption.

147.    Defendant's conduct and Omissions described herein occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the consuming public.

148.    Defendant was under a duty to disclose the Omissions because Defendant undertook the disclosure of information about the Toothpaste Products on the Toothpaste Products' packaging.

149.    Defendant failed to discharge its duty to disclose the Omissions.

150.    The facts concealed, omitted, or not disclosed by Defendant were material in that Plaintiff, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Toothpaste Products. Had Plaintiff and the Minnesota Subclass known the Toothpaste Products did not have the quality advertised by Defendant, they would not have purchased the Toothpaste Products or paid the premium price.

151.    Defendant's unlawful conduct is continuing, with no indication that it intends to cease this fraudulent course of conduct.

152.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Minnesota Subclass suffered actual damages by: (1) paying a premium price for the Toothpaste Products they reasonably believed did not contain (or have a material risk of containing) heavy

metals, including lead and mercury; (2) purchasing the Toothpaste Products they would not have

purchased had the Omissions been disclosed; and/or (3) receiving the Toothpaste Products that

were worthless because they contained or risked containing heavy metals, including lead and

mercury.

153.    Plaintiff and the members of the Minnesota Subclass would not have purchased the

Toothpaste Products at all had they known that Toothpaste Products do not conform to the

packaging.

154.    Pursuant to Minnesota Statute sections 8.31, subdivision 3a, and 325D.15, Plaintiff

and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees,

costs, and any other just and proper relief available thereunder for Defendant's violations of the

MUTPA.

**<u>COUNT FOUR</u>**
**Violations of Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.44, *et seq*., (On Behalf of Plaintiff Brower and the Minnesota Subclass)**

155.    Plaintiff incorporates by reference and realleges each and every allegation

contained above, as though fully set forth herein.

156.    Defendant is a "person" within the meaning of the Minnesota Uniform Deceptive

Trade Practices Act ("MUDTPA").

157.    Defendant willingly engaged in deceptive trade practices, in violation of the

MUDTPA, by failing to disclose the Omissions.

158.    Defendant knew or should have known the Toothpaste Products contained (or had

a material risk of containing) heavy metals, including lead and mercury.

159.    Defendant's Omissions, concealment, and other deceptive conduct were likely to

deceive or cause misunderstanding and did in fact deceive Plaintiff and the Minnesota Subclass

with respect to the Toothpaste Products' quality, ingredients, standards, and suitability for consumption.

160.    Defendant intended that Plaintiff and the Minnesota Subclass would rely on its Omissions, concealment, and/or deceptions regarding the Toothpaste Products' quality, ingredients, standards, and suitability for consumption.

161.    Defendant's conduct and Omissions described herein occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the consuming public.

162.    The facts concealed or not disclosed by Defendant were material facts in that Plaintiff, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Toothpaste Products. Had Plaintiff and the Minnesota Subclass known the Toothpaste Products did not have the quality advertised by Defendant, they would not have purchased the Toothpaste Products.

163.    Defendant intended that Plaintiff and the Minnesota Subclass would rely on Defendant's Omissions, concealment, and other deceptive conduct when purchasing the Toothpaste Products, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

164.    Defendant's unlawful conduct is continuing, with no indication it intends to cease this fraudulent course of conduct.

165.    Defendant was under a duty to disclose the Omissions because Defendant undertook the disclosure of information about the Toothpaste Products on the Toothpaste Products' packaging.

166.    Defendant failed to discharge its duty to disclose the Omissions about the Toothpaste Products.

167.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Minnesota Subclass suffered actual damages by: (1) paying a premium price for Products they reasonably believed did not contain (or have a material risk of containing) heavy metals, including lead and mercury; (2) purchasing Products they would not have purchased had Defendant's Omissions been disclosed; and/or (3) receiving Products that were worthless because they contained or risked containing heavy metals, including lead and mercury.

168.    Plaintiff and the members of the Minnesota Subclass would not have purchased the Toothpaste Products at all had they known of the Omissions.

169.    Pursuant to Minnesota Statute sections 8.31, subdivision 3a, and 325D.45, Plaintiff and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MUDTPA.

**<u>COUNT FIVE</u>**
**Violations of Minnesota False Statement in Advertising Act, Minn. Stat. §325F.67, *et seq*.,**
**(On Behalf of Plaintiff Brower and the Minnesota Subclass)**

170.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

171.    Plaintiff and the Minnesota Subclass purchased "goods," specifically the Toothpaste Products discussed herein, and are a "person" within the meaning of the False Statement in Advertising Act ("FSAA").

172.    Plaintiff and the Minnesota Subclass purchased the Toothpaste Products because of the Omissions asserted on the packaging that were made, published, disseminated, circulated, and placed before the public by Defendant.

173.    By engaging in the conduct as described herein, Defendant continues to violate

Minnesota Statute section 325F.67.

174.    Defendant's Omissions and use of other deceptive business practices include, by way of example, representations regarding the Toothpaste Products' quality, ingredients, standards, and suitability for consumption.

175.    Defendant knew or should have known the Toothpaste Products did not have the quality, ingredients, standards, and suitability for consumption described above because they included undisclosed (or material risk of) heavy metals, including lead and mercury.

176.    The Omissions were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and the Minnesota Subclass with respect to the Toothpaste Products' quality, ingredients, standards, and suitability for consumption.

177.    Defendant's conduct and Omissions described herein occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

178.    The Omissions were made to customers in Minnesota, including Plaintiff and the Minnesota Subclass, thus the cause of action serves the public benefit of informing Minnesota consumers that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury.

179.    The facts concealed, omitted, or not disclosed by Defendant were material in that Plaintiff, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Toothpaste Products. Had Plaintiff and the Minnesota Subclass known the Toothpaste Products did not have the quality as advertised by Defendant, they would not have purchased the Toothpaste Products or paid the premium price.

180.     Defendant intended that Plaintiff and the Minnesota Subclass would rely on the deception by purchasing the Toothpaste Products, unaware of the Omissions and other undisclosed material facts. This conduct constitutes consumer fraud.

181.     Defendant's unlawful conduct is continuing, with no indication that it intends to cease this fraudulent course of conduct.

182.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Minnesota Subclass suffered actual damages by: (1) paying a premium price for the Toothpaste Products they reasonably believed did not contain (or have a material risk of containing) heavy metals, including lead and mercury; (2) purchasing the Toothpaste Products they would not have purchased had Defendant's Omissions been disclosed; and/or (3) receiving the Toothpaste Products that were worthless because they contained or risked containing heavy metals, including lead and mercury.

183.     Plaintiff and the members of the Minnesota Subclass would not have purchased the Toothpaste Products at all had they known of the presence or material risk of heavy metals, including lead and mercury.

184.     Pursuant to Minnesota Statute sections 8.31, subdivision 3a, and 325F.67, Plaintiff and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the FSAA.

### COUNT SIX
**Violations of Minnesota Consumer Fraud Act, Minn. Stat. §325F.69, *et seq*.,**
**(On Behalf of Plaintiff Brower and the Minnesota Subclass)**

185.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

186.    Plaintiff at all times relevant hereto was a citizen of the State of Minnesota.

187.    Defendant is a "person" within the meaning of the Minnesota Prevention of Consumer Fraud Act ("MPCFA").

188.    The Omissions were made in connection with the sale of the Toothpaste Products to Plaintiff and the Minnesota Subclass.

189.    Defendant knowingly acted, used, and employed fraud, false pretenses, and deceptive practices in connection with the sale of the Toothpaste Products. Specifically, Defendant failed to disclose the Toothpaste Products contained levels or material risk of heavy metals, including lead and mercury.

190.    Defendant knew or should have known the Toothpaste Products did not have the quality reasonable consumers expected because they included undisclosed (or the material risk of) heavy metals, including lead and mercury, that do not conform to the packaging. Defendant intended for Plaintiff and the Minnesota Subclass to rely on the Toothpaste Products' packaging in deciding whether to purchase the Toothpaste Products.

191.    Defendant's unfair or deceptive acts or practices were likely to deceive reasonable consumers about the Toothpaste Products' quality, ingredients, standards, and suitability for consumption, and, by extension, the true value of the Toothpaste Products.

192.    Plaintiff and the Minnesota Subclass relied on, and were in fact deceived by, Defendant's Omissions with respect to the Toothpaste Products' quality, ingredients, standards, and suitability for consumption in deciding to purchase them over competitors' toothpaste products.

193.    The facts concealed, omitted, or not disclosed by Defendant were material in that Plaintiff, the Minnesota Subclass, and any reasonable consumer would have considered them in

deciding whether to purchase the Toothpaste Products. Had Plaintiff and the Minnesota Subclass known the Toothpaste Products did not have the quality advertised by Defendant, they would not have purchased the Toothpaste Products or paid the premium price.

194.    Defendant's Omissions were made to customers in Minnesota, including Plaintiff and the Minnesota Subclass, thus the cause of action serves the public benefit of informing Minnesota consumers that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury.

195.    Defendant's unlawful conduct is continuing, with no indication that it intends to cease this fraudulent course of conduct.

196.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Minnesota Subclass suffered actual damages by: (1) paying a premium price for the Toothpaste Products they reasonably believed did not contain (or have a material risk of containing) heavy metals, including lead and mercury; (2) purchasing the Toothpaste Products they would not have purchased had Defendant's Omissions been disclosed; and/or (3) receiving the Toothpaste Products that were worthless because they contained or risked containing heavy metals, including lead and mercury.

197.    Plaintiff and the members of the Minnesota Subclass would not have purchased the Toothpaste Products at all had they known of the presence of heavy metals, including lead and mercury.

198.    Pursuant to Minnesota Statute sections 8.31, subdivision 3a, and 325F.69, Plaintiff and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the MPCFA.

## COUNT SEVEN
### Fraud by Omission
### (On behalf of Plaintiff Brower and the Classes)

199.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

200.    Plaintiff and the Class Members and Defendant acted within the context of a business transaction when Plaintiff and the Class Members purchased the Toothpaste Products for household use, and not for resale.

201.    Plaintiff and the Class Members were ordinary non-business consumers.

202.    Defendant knew or should have known the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury.

203.    Defendant knowingly concealed from and failed to disclose to Plaintiff and the Class members, that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury.

204.    As a trusted oral hygiene manufacturer, Defendant is in a special position of trust upon which consumers rely.

205.    Defendant was under a duty to disclose to Plaintiff and the members of the Class the true quality, ingredients, standards, and suitability for consumption of the Toothpaste Products because:

    a.    Defendant was in a superior position to know the true state of facts about its products;

    b.    Defendant was in a superior position to know the actual ingredients, characteristics, standards, and suitability for consumption of the Toothpaste Products for regular household use by consumers; and

    c.   Defendant knew that Plaintiff and the members of the Class could not reasonably have been expected to learn or discover that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury, without Defendant disclosing it on the Toothpaste Products' packaging.

206.    Defendant failed to discharge its duty to disclose the presence of heavy metals, including lead and mercury, in its Toothpaste Products.

207.    Defendant actively concealed or failed to disclose facts about the Toothpaste Products' quality, ingredients, standards, and suitability for consumption and intended that Plaintiff and the Classes would rely on its Omissions, concealment, and other deceptive conduct regarding the Toothpaste Products' quality, ingredients, standards, and suitability for consumption when purchasing the Toothpaste Products, unaware of the undisclosed material facts.

208.    Defendant's Omissions, concealment, and other deceptive conduct were made to deceive reasonable consumers about the Toothpaste Products' quality, ingredients, standards, and suitability for consumption. Plaintiff and the Classes relied on, and were in fact deceived by, Defendant's Omissions, concealment, and other deceptive conduct with respect to the Toothpaste Products' quality, ingredients, standards, and suitability for consumption.

209.    Defendant's Omissions, concealment, and other deceptive conduct were made to deceive reasonable consumers about the Toothpaste Products' quality, ingredients, standards, and suitability for consumption. Plaintiff and the Classes relied on, and were in fact deceived by, Defendant's Omissions, concealment, and other deceptive conduct with respect to the Toothpaste Products' quality, ingredients, standards, and suitability for consumption.

210.    Defendant knows its customers trust the quality of its products and expect the Toothpaste Products to be free of heavy metals, including lead and mercury. Defendant also knows

that certain consumers seek out and wish to purchase Toothpaste Products that are free of contaminants and that these consumers will pay more for Toothpaste Products that they believe possess these qualities. Indeed, Defendant has intentionally and knowingly positioned itself in the market as one of the top manufacturers of oral hygiene products, including the Toothpaste Products.

211.    The facts concealed or not disclosed by Defendant were material in that Plaintiff, the Classes, and other reasonable consumers would have considered them when deciding whether to purchase the Toothpaste Products. Had Plaintiff and the Classes known the Toothpaste Products did not have the quality, ingredients, standards, and suitability for consumption as advertised by Defendant and contained (or had a material risk of containing) heavy metals, including lead and mercury, they would not have purchased the Toothpaste Products or paid a premium price.

212.    Defendant knowingly concealed that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury, with the intent to defraud and deceive Plaintiff and the Classes.

213.    As a direct and proximate result of Defendant's Omissions, concealment, and other deceptive conduct, Plaintiff and the Classes suffered actual damages in that they purchased Toothpaste Products that were worth less than the price they paid and that they would not have purchased at all had they known the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury.

214.    Plaintiff and the Classes seek actual damages, injunctive, and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT EIGHT
### Unjust Enrichment
### (On behalf of Plaintiff Brower and the Classes)

215.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

216.    Substantial benefits have been conferred on Defendant by Plaintiff and the members of the Class through the purchase of the Toothpaste Products. Defendant knowingly and willfully accepted and enjoyed these benefits.

217.    Defendant either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Toothpaste Products would not contain heavy metals, including lead and mercury. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

218.    Defendant was obligated to disclose the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury, because:

    a.    Defendant had exclusive knowledge that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury; and

    b.    Defendant actively concealed the presence of heavy metals, including lead and mercury, from Plaintiff and the Classes.

219.    Defendant's acceptance and retention of these benefits of the payments from Plaintiff and the Classes under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the Classes.

220.    Plaintiff and the Classes are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

221.    Plaintiff and the Classes seek actual damages, injunctive and declaratory relief, statutory damages, attorneys' fees, costs, and any other just and proper relief available under the laws.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully respect that the Court:

a)    Certify the Classes, and appoint Plaintiff and her counsel to represent the Classes;

b)    Find that Defendant engaged in the unlawful conduct as alleged herein and enjoin Defendant from engaging in such conduct;

c)    Enter a monetary judgment in favor of Plaintiff and the Classes to compensate her for the injuries suffered, together with pre-judgment and post-judgment interest, punitive damages, and penalties where appropriate;

d)    Require Defendant to rectify all damages caused by its misconduct;

e)    Award Plaintiff and the Classes reasonable attorneys' fees and costs of suit, as allowed by law; and

f)    Award such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

**Dated:** April 22, 2025                    Respectfully submitted,

*/s/ Lori G. Feldman*
Lori G. Feldman
GEORGE FELDMAN MCDONALD, PLLC
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
Facsimile: (888) 421-4173
E-Mail: lfeldman@4-justice.com

48

E-Service: eService@4-justice.com

Rebecca A. Peterson*
Catherine A. Peterson*
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (612) 778-9530
Facsimile: (888) 421-4173
E-Mail: rpeterson@4-justice.com
E-Service: eService@4-justice.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman*
Catherine Y.N. Gannon*
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
E-Mail: steve@hbsslaw.com
E-Mail: catherineg@hbsslaw.com

WEXLER BOLEY & ELGERSMA LLP
Kenneth A. Wexler*
Kara A. Elgersma*
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
E-Mail: kaw@wbe-llp.com
E-Mail: kae@wbe-llp.com

*Attorneys for Plaintiff and the Proposed Classes*

*Pro hac vice application forthcoming