# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **REBECCA BROWER, JAMAL RASHED, BRIAN VINEZEANO, AMY TOLDO ALQADRI, LORA GRODNICK, JOHN BOYD, BRENDA GAUNA, CHARLES SMITH, WALTER TRIESCH, LYN SCOTT, AND JOSE PERALTA,** individually and on behalf of themselves and all others similarly situated, | **CASE NO: 1:25-CV-03348**<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |
| *Plaintiffs*, |  |
| v. |  |
| COLGATE-PALMOLIVE COMPANY, |  |
| *Defendant*. |  |

Plaintiffs Rebecca Brower, Jamal Rashed, Brian Vinezeano, Amy Toldo Alqadri, Lora Grodnick, John Boyd, Brenda Gauna, Charles Smith, Walter Triesch, Lyn Scott, and Jose Peralta (collectively, "Plaintiffs"), by their counsel, on their own behalf and on behalf of all others similarly situated, bring this Second Amended Class Action Complaint against Defendant Colgate-Palmolive Company ("Colgate" or "Defendant"). The following facts are alleged based upon personal knowledge, where applicable, information and belief, and the investigation of counsel:

## NATURE OF THE ACTION

1.    Heavy metals are known to pose significant and adverse health risks and consequences to humans. It is well-recognized that there are no safe levels of human exposure to

1

any of the heavy metals, including lead and mercury.[1] Exposure to heavy metals, including lead and mercury, can cause negative health effects, such as various cancers, gastric and vascular disorders, liver, kidney, and brain damage, miscarriages, and reproductive disorders:[2]



---

[1] Transcript from Public Meeting, *Closer to Zero Action Plan: Impacts of Toxic Element Exposure and Nutrition at Different Crucial Developmental Stages for Babies and Young Children* (Nov. 18, 2021), available at https://www.fda.gov/media/155396/download?attachment at 32, 72, 179 (last accessed August 6, 2025) ("Closer to Zero Public Meeting Transcript"); *FDA Webinar: Action Levels for Lead in Food Intended for Babies and Young Children: Draft Guidance*, at 5 (March 2, 2023), available at https://www.fda.gov/media/166188/download (last accessed August 6, 2025) ("Although we may not be able to say the reference level is a safe level, it is a level we could rely on as a benchmark to measure exposure to foods."); *see also* Kevin Loria, *Congressional Report Finds More Problems With Heavy Metals in Baby Food*, Consumer Reports (Sept. 29, 2021, updated Oct. 20, 2021), available at https://www.consumerreports.org/food-safety/problems-with-heavy-metals-in-baby-food-congressional-report-a6400080224/#:~:text=%E2%80%9CThere%20is%20no%20safe%20level,research%20and%20testing%20at%20CR (last accessed August 6, 2025); *see, e.g.*, World Health Organization, *Lead Poisoning*, Sept. 27, 2024, available at https://who.int/news-room/fact-sheets/detail/lead-poisoning-and-health (last accessed August 6, 2025) (hereinafter "WHO Lead Poisoning").

[2] Anirban Goutam Mukherjee, et al., *Heavy Metal and Metalloid Contamination in Food and Emerging Technologies for Its Detection*, Sustainability, Jan. 9, 2023, 15(2), available at https://www.mdpi.com/2071-1050/15/2/1195 (last accessed August 6, 2025).

2.      Despite this, Defendant sold products with alarmingly high levels of lead and mercury with no warning to the intended consumer audience of children and adults.  Reasonable consumers would want to know about the presence of toxins in any product, especially one that is used multiple times a day and put directly into their bodies such as toothpaste.

3.       Exposure to any source of heavy metals should be avoided and minimized, and disclosure of the presence of heavy metals in products intended to be used every day, multiple times a day, is presumptively material.

4.      Consumers, including parents and other caregivers, reasonably believe that the toothpaste they purchase for themselves and their children will *not* have detectable levels of heavy metals, such as lead and mercury. Further, reasonable consumers would expect a company to disclose if a product does have detectable levels of heavy metals. This is particularly true when the products are manufactured, marketed, and sold by a company like Defendant who claims to be the "most trusted brand in the world."[3]

5.      Reasonable consumers, including Plaintiffs, trusted Defendant to sell products without detectable levels of heavy metals especially as there was no disclosure and Defendant made contrary promises. This trust was violated.

6.      A recent report published by Lead Safe Mama, LLC, a lead-poisoning prevention and consumer goods safety advocate,[4] found that certain toothpaste and tooth powder products –

---

[3]  Colgate, *Mission: History and Purpose*, available at https://www.colgate.com/en-us/mission/history-and-purpose (last accessed August 6, 2025) (hereinafter "Mission: History and Purpose").

[4] *See* Lead Safe Mama, *Chart Comparing the Toxicant Profiles of Popular Toothpaste and Tooth Powder Products Tested by an Independent, Third-Party Lab in 2025*, available at https://tamararubin.com/2025/01/toothpaste-chart/#comments (last accessed August 6, 2025) (hereinafter "Lead Safe Mama Chart" and attached hereto as Exhibit 1).

including Defendant's Colgate Watermelon Burst Toothpaste with Fluoride (for Kids) and Colgate

Total Active Prevention Whitening Toothpaste – contain lead and mercury.

| Product (Testing by LSM) | Lead (ppb) | Mercury (ppb) |
|---|---|---|
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids) | 302.1 ppb | 6.9 ppb |
| Colgate Total Active Prevention Whitening Fluoride Toothpaste | 539 ppb | 10.4 ppb |

7.    Plaintiffs' testing also confirmed the presence of detectable levels of heavy metals

in the Toothpaste Products:[5]

| Product (Testing by Plaintiffs) | Lead (ppb) | Mercury (ppb) |
|---|---|---|
| Colgate Total Active Prevention Advanced Whitening Toothpaste | 476 ppb | < 5 ppb |
| Colgate Total Whitening Toothpaste[6] | 625.4 ppb | < 5 ppb |
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids) | 241.3 ppb | < 5 ppb |
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids) | 254.9 ppb | 7.86 ppb |
| Colgate Total Whitening Toothpaste[7] | 615.42 ppb | < 5 ppb |

---

[5] As used herein, "Toothpaste Products" collectively refers to Colgate Watermelon Burst Toothpaste with Fluoride (for Kids), Colgate Total Whitening Toothpaste, Colgate Total Active Prevention Advanced Whitening Toothpaste, Colgate Total Active Prevention Whitening Toothpaste, Colgate MaxFresh with Whitening Toothpaste, Colgate Triple Action Toothpaste, and Colgate Baking Soda & Peroxide Whitening Toothpaste. Discovery may reveal additional toothpaste products by Defendant that contain lead and/or mercury and/or other heavy metals, including but not limited to cadmium and/or arsenic. Plaintiffs reserve their right to amend and include any such additional products and/or heavy metals in this action.

[6] This testing represents results from product purchased by Plaintiff Rebecca Brower.

[7] This testing represents results from product purchased by Plaintiff Amy Toldo Alqadri.

| Product (Testing by Plaintiffs) | Lead (ppb) | Mercury (ppb) |
|---|---|---|
| Colgate Total Whitening Toothpaste[8] | 620.4 ppb | < 5 ppb |
| Colgate Total Whitening Toothpaste[9] | 721.2 ppb | < 5 ppb |
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids)[10] | 279.5 ppb | 5.74 ppb |
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids)[11] | 278.2 ppb | 5.63 ppb |
| Colgate MaxFresh with Whitening Toothpaste[12] | 462.9 ppb | 16.14 ppb |
| Colgate Total Active Prevention Toothpaste[13] | 464.6 ppb | 7.86 ppb |
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids)[14] | 253.8 ppb | 5.43 ppb |
| Colgate Total Active Prevention Whitening Toothpaste | 337 ppb | < 5 ppb |
| Colgate Triple Action Toothpaste | 442.9 ppb | 15.88 ppb |
| Colgate Triple Action Toothpaste[15] | 589.2 ppb | 14.41 ppb |
| Colgate Baking Soda & Peroxide Whitening Toothpaste[16] | 718.7 ppb | 12.28 ppb |
| Colgate Total Advanced Prevention Whitening Toothpaste[17] | 308.6 ppb | < 4 ppb |

[8] This testing represents results from product purchased by Plaintiff Amy Toldo Alqadri.

[9] This testing represents results from product purchased by Plaintiff Amy Toldo Alqadri.

[10] This testing represents results from product purchased by Plaintiff Lora Grodnick.

[11] This testing represents results from product purchased by Plaintiff Lora Grodnick.

[12] This testing represents results from product purchased by Plaintiff Charles Smith.

[13] This testing represents results from product purchased by Plaintiff Brenda Gauna.

[14] This testing represents results from product purchased by Plaintiff Brenda Gauna.

[15] This testing represents results from product purchased by Plaintiff Walter Triesch.

[16] This testing represents results from product purchased by Plaintiff Walter Triesch.

[17] This testing represents results from product purchased by Plaintiff Jose Peralta.

| Product (Testing by Plaintiffs) | Lead (ppb) | Mercury (ppb) |
|---|---|---|
| Colgate Total Active Prevention Whitening Toothpaste | 358.6 ppb | < 4 ppb |
| Colgate Total Active Prevention Whitening Toothpaste | 406.4 ppb | < 4 ppb |

8.      Defendant fails to disclose that the Toothpaste Products contain (or have a material risk of containing) heavy metals, including lead and mercury. Nowhere on the Toothpaste Products' packaging is it disclosed that they contain (or have a material risk of containing) heavy metals, including significant levels of lead (collectively, the "Omissions").

9.      Further, because of Defendant's misrepresentations and partial misrepresentations, with no disclosures as to the presence or risk of significant levels of heavy metals in the Toothpaste Products, Plaintiffs did not expect the Toothpaste Products to contain heavy metals.

10.     Defendant's Total toothpaste line packaging promises it offers "Whole Mouth Health" and that it is "Responsibly Made." ("Total Misrepresentations").

11.     "Whole Mouth Health" is further reinforced on the packaging, which only highlights all the benefits, but not the real risks, associated with the inclusion of high levels of lead and other heavy metals: "Protects teeth, tongue, cheeks, [and] gums," and "Fights bacteria on teeth, tongue, cheeks, [and] gums.":







12.     The "Responsibly Made" promise implies that Colgate uses proper quality control measures in manufacturing the products, including policies to control the presence of heavy metals and regular testing.

13.     Additional packaging statements further contradict the presence of harmful heavy metals such as lead and mercury (collectively, with the Total Misrepresentations, the "Misrepresentations"):

a.  "Helps Repair Early Enamel Damage," "Helps Reverse Early Gum Damage," "Helps Prevent Plaque Bacteria," and "Fights Tartar."



b.  "Clinically Proven . . . Enamel Protection;" and



c.  "Clean Mint," "Freshness," and "Releases Pure Oxygen Bubbles for a Clean, Fresh Sensation".





14.     The inclusion or real risk of high levels of lead and mercury contradict and impede the central function of the Toothpaste Products. The Toothpaste Products are meant to prevent unhealthy mouths and teeth and encourage oral health in both children and adults. Lead and mercury provide no such benefits and instead pose health risks to both children and adults.

15.    Based on the messaging and overall impression communicated by the packaging, including the Misrepresentations and material Omissions, no reasonable consumer, including Plaintiffs, could expect or understand the Toothpaste Products contained or risked containing high levels of lead or other heavy metals.

16.    No reasonable consumer purchasing toothpaste or seeing Defendant's representations or partial misrepresentations would expect the Toothpaste Products to contain heavy metals. Furthermore, reasonable consumers, like Plaintiffs, would consider the inclusion of heavy metals a material fact when considering what oral hygiene products to purchase.

17.    Defendant intended for consumers to rely on the Misrepresentations, partial misrepresentations, Omissions, concealment, and other deceptive conduct regarding the Toothpaste Products' quality, ingredients, standards, and suitability for use. Defendant's business practices, including the Misrepresentations and Omissions, were deceptive, misleading, unfair, and/or false because, among other things, the Toothpaste Products contained undisclosed toxic heavy metals.

18.    Defendant knows its customers trust the quality of its products and expect the Toothpaste Products to be properly and safely manufactured and to not contain or risk containing alarming levels of heavy metals.

19.    Defendant also knows that certain consumers will seek out and wish to purchase Toothpaste Products that do not have detectable levels of contaminants such as heavy metals and that these consumers will pay more for Toothpaste Products that they believe possess these qualities. Indeed, Defendant has intentionally and knowingly positioned itself in the market as one of the top manufacturers of oral hygiene products, including the Toothpaste Products.

20.     Plaintiffs bring this class action against Defendant for unfair, misleading, and deceptive business practices, including the Misrepresentations and the Omissions, that violate consumer protection laws. Plaintiffs seek injunctive and monetary relief on behalf of the proposed Class, including (i) requiring full disclosure of all heavy metals in Defendant's marketing, advertising, and packaging; (ii) requiring testing of all ingredients and final Toothpaste Products for heavy metals; and (iii) restoring monies to the members of the proposed Class. Through this action, Plaintiffs assert claims for violations of New York, Minnesota, California, Illinois, New Jersey, and Arizona consumer statutes, fraud by omission, and unjust enrichment, seeking monetary damages, injunctive relief, and all other relief as authorized in equity or by law.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d)(2), because at least one Class Member is of diverse state citizenship from Defendant, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. Defendant sells its Toothpaste Products through major retailers from coast to coast in the United States and, as such, Class Members are citizens of numerous diverse states outside of New York and Delaware.

22.     The Southern District of New York has personal jurisdiction over Defendant as Defendant is headquartered in this District and conducts substantial business in this State and in this District through its headquarters and sale of products, including the Toothpaste Products.

23.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant maintains its principal place of business in this District and because a substantial part of the events, misrepresentations, partial misrepresentations, and/or Omissions giving rise to the deceptive

conduct alleged in this Second Amended Class Action Complaint occurred in, were directed to, and emanated from this District.

## PARTIES

24.    Plaintiff Rebecca Brower ("Plaintiff Brower") is, and at all times relevant, has been a citizen and resident of the state of Minnesota, residing in Minneapolis, in Hennepin County, Minnesota. Plaintiff Brower purchased Defendant's Toothpaste Products, including Colgate Total Whitening Toothpaste, from approximately 2000 until December 2024, from Target locations in Minneapolis, Minnesota.

25.    Toothpaste Product purchased by Plaintiff Brower was submitted for testing. Test results from a Toothpaste Product purchased by Plaintiff Brower showed the presence of lead at 625.4 ppb.

26.    Plaintiff Brower believed she was purchasing oral hygiene products that were nontoxic and without detectable levels of heavy metals, including lead and mercury. During the time she purchased and used the Products, and due to the Misrepresentations, partial misrepresentations, and Omissions, she was unaware the Toothpaste Products contained (or had a material risk of containing) significant levels of lead and mercury. If Defendant had disclosed that the Toothpaste Products contained (or had a material risk of containing) heavy metals including lead and mercury; that Defendant inadequately tested, or never tested, for heavy metals, in its ingredients and/or finished Toothpaste Products; or that Defendant sold Toothpaste Products that failed to meet its internal standards, Plaintiff Brower would not have purchased any of the Toothpaste Products or otherwise would have paid less for them.

27.    Plaintiff Jamal Rashed ("Plaintiff Rashed") is, and at all times relevant, has been a citizen and resident of the state of New York, residing in Queens, in Queens County, New York.

Plaintiff Rashed has regularly purchased many of Defendant's Toothpaste Products, including but not limited to Colgate Total Active Prevention Whitening Fluoride Toothpaste, for at least the last ten years, including throughout the period between January 2022 and April 2025.

28.     Plaintiff Rashed believed he was purchasing oral hygiene products that were nontoxic and without detectable levels of heavy metals, including lead and mercury. During the time he purchased and used the Products, and due to the Misrepresentations, partial misrepresentations, and Omissions, he was unaware the Toothpaste Products contained (or had a material risk of containing) significant levels of lead and mercury.  If Defendant had disclosed that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury; that Defendant inadequately tested, or never tested, for heavy metals in its ingredients and/or finished Toothpaste Products; or that Defendant sold Toothpaste Products that failed to meet its internal standards, Plaintiff Rashed would not have purchased any of the Toothpaste Products or otherwise would have paid less for them.

29.     Plaintiff Brian Vinezeano ("Plaintiff Vinezeano") is, and at all times relevant, has been a citizen and resident of the state of Illinois, residing in Bensonville in DuPage County, Illinois. Plaintiff Vinezeano has regularly purchased many of Defendant's Toothpaste Products, including but not limited to Colgate Total Active Prevention Whitening Toothpaste, for at least the last ten years, including throughout the period between January 2022 and April 2025.

30.     Plaintiff Vinezeano believed he was purchasing oral hygiene products that were nontoxic and without detectable levels of heavy metals, including lead and mercury. During the time he purchased and used the Products, and due to the Misrepresentations, partial misrepresentations, and Omissions, he was unaware the Toothpaste Products contained (or had a material risk of containing) significant levels of lead and mercury. If Defendant had disclosed that

the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury; that Defendant inadequately tested, or never tested, for heavy metals in its ingredients and/or finished Toothpaste Products; or that Defendant sold Toothpaste Products that failed to meet its internal standards, Plaintiff Vinezeano would not have purchased any of the Toothpaste Products or otherwise would have paid less for them.

31.     Plaintiff Amy Toldo Alqadri ("Plaintiff Alqadri") is, and at all times relevant, has been a citizen and resident of the state of New York, residing in Shirley, in Suffolk County, New York. Plaintiff Alqadri purchased Defendant's Toothpaste Products, including Colgate Total Whitening Toothpaste and Colgate Total Whitening Active Prevention Toothpaste, for herself and her children, from approximately 2015 until 2025, from BJ's Wholesale Club in Bellport, New York.

32.     Toothpaste Products purchased by Plaintiff Alqadri were submitted for testing. Test results from Toothpaste Products purchased by Plaintiff Alqadri showed the presence of lead at 721.2 ppb, 620.4 ppb, and 615.42 ppb.

33.     Images of a Toothpaste Product purchased by Plaintiff Alqadri are below:





34.     Plaintiff Alqadri believed she was purchasing oral hygiene products that were nontoxic and without detectable levels of heavy metals, including lead and mercury. During the time she purchased and used the Products, and due to the Misrepresentations, partial misrepresentations, and Omissions, she was unaware the Toothpaste Products contained (or had a material risk of containing) significant levels of lead and mercury.  If Defendant had disclosed that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury; that Defendant inadequately tested, or never tested, for heavy metals in its ingredients and/or finished Toothpaste Products; or that Defendant sold Toothpaste Products that failed to meet its internal standards, Plaintiff Alqadri would not have purchased any of the Toothpaste Products or otherwise would have paid less for them.

35.     Plaintiff Lora Grodnick ("Plaintiff Grodnick") is, and at all times relevant, has been a citizen and resident of the state of New Jersey, residing in Skillman in Somerset County, New Jersey. Plaintiff Grodnick purchased Defendant's Toothpaste Products, including Colgate Watermelon Burst Toothpaste for her children, from approximately 2020 until 2025, from Target in West Windsor, New Jersey; Wegmans in West Windsor, New Jersey; CVS in Princeton, New Jersey; and Amazon.com.

36.     Toothpaste Products purchased by Plaintiff Grodnick were submitted for testing. Test results for Toothpaste Products purchased by Plaintiff Grodnick show the presence of lead at 279.5 ppb and 278.2 ppb and of mercury at 5.74 ppb and 5.63 ppb.



37.    Plaintiff Grodnick believed she was purchasing oral hygiene products that were nontoxic and without detectable levels of heavy metals, including lead and mercury. During the time she purchased and used the Products, and due to the Misrepresentations, partial misrepresentations and Omissions by Defendant, she was unaware the Toothpaste Products contained (or had a material risk of containing) significant levels of heavy metals, including lead and mercury. If Defendant had disclosed that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury; that Defendant inadequately tested, or never tested for heavy metals, in its ingredients and/or finished Toothpaste Products; or that Defendant sold Toothpaste Products that failed to meet its internal standards, Plaintiff Grodnick would not have purchased any of the Toothpaste Products or otherwise would have paid less for them.

38.    Plaintiff Brenda Gauna ("Plaintiff Gauna") is, and at all times relevant, has been a citizen and resident of the state of Arizona, residing in Yuma in Yuma County, Arizona. Plaintiff Gauna purchased Defendant's Toothpaste, including Colgate Watermelon Burst Toothpaste and Colgate Total Active Prevention Toothpaste, from approximately 2020 until 2025, from Walmart, CVS, and Walgreens in Yuma, Arizona.

39.    Toothpaste Products purchased by Plaintiff Gauna were submitted for testing. Test results from Toothpaste Products purchased by Plaintiff Gauna showed the presence of lead at 464.6 ppb and 253.8 ppb and of mercury at 7.86 ppb and 5.43 ppb.



40.    Plaintiff Gauna believed she was purchasing oral hygiene products that were nontoxic and without detectable levels of heavy metals, including lead and mercury. During the time she purchased and used the Products, and due to the Misrepresentations, partial misrepresentations, and Omissions, she was unaware the Toothpaste Products contained (or had a material risk of containing) significant levels of lead and mercury. If Defendant had disclosed that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury; that Defendant inadequately tested, or never tested, for heavy metals in its ingredients and/or finished Toothpaste Products; or that Defendant sold Toothpaste Products that failed to meet its internal standards, Plaintiff Gauna would not have purchased any of the Toothpaste Products or otherwise would have paid less for them.

41.    Plaintiff Charles Smith ("Plaintiff Smith") is, and at all times relevant, has been a citizen and resident of the state of Illinois, residing in North Aurora, in Kane County, Illinois.

Plaintiff Smith purchased Defendant's Toothpaste, including Colgate MaxFresh with Whitening Toothpaste, from approximately January 2021 until March 2025, from Walmart, Dollar Tree, and Target in North Aurora, Illinois and Aurora, Illinois.

42.    Toothpaste Product purchased by Plaintiff Smith was submitted for testing. Test results from a Toothpaste Product purchased by Plaintiff Smith showed the presence of lead at 462.9 ppb and of mercury at 16.14 ppb.



43.    Plaintiff Smith believed he was purchasing oral hygiene products that were nontoxic and without detectable levels of heavy metals, including lead and mercury. During the time he purchased and used the Products, and due to the Misrepresentations, partial misrepresentations, and Omissions, he was unaware the Toothpaste Products contained (or had a material risk of containing) significant levels of lead and mercury. If Defendant had disclosed that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury; that Defendant inadequately tested, or never tested, for heavy metals in its

ingredients and/or finished Toothpaste Products; or that Defendant sold Toothpaste Products that failed to meet its internal standards, Plaintiff Smith would not have purchased any of the Toothpaste Products or otherwise would have paid less for them.

44.    Plaintiff John Boyd ("Plaintiff Boyd") is, and at all times relevant, has been a citizen and resident of the state of California, residing in Los Angeles in Los Angeles County, California. Plaintiff Boyd regularly purchased Defendant's Toothpaste Products for at least the last ten years. Plaintiff Boyd purchased many of Defendant's Toothpaste Products, including Colgate Total Whitening Toothpaste.

45.    Plaintiff Boyd believed that he was purchasing oral hygiene products that were nontoxic and without detectable levels of heavy metals, including lead and mercury. During the time he purchased and used the Products, and due to the Misrepresentations, partial misrepresentations, and Omissions, he was unaware that the Toothpaste Products contained (or had a material risk of containing) significant levels of lead and mercury. If Defendant had disclosed that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury; that Defendant inadequately tested, or never tested, for heavy metals in its ingredients and/or finished Toothpaste Products; or that Defendant sold Toothpaste Products that failed to meet its internal standards, Plaintiff Boyd would not have purchased any of the Toothpaste Products or otherwise would have paid less for them.

46.    Plaintiff Walter Triesch ("Plaintiff Triesch") is, and at all times relevant, has been a citizen and resident of the state of New York, residing in Bethpage in Nassau County, New York. Plaintiff Triesch purchased Defendant's Toothpaste Products, including Colgate Triple Action Toothpaste, Colgate Baking Soda & Peroxide Whitening Toothpaste, and Colgate Total Active

Prevention Whitening Toothpaste, within the past three years from ShopRite and Walgreens in Bethpage, New York and Walmart in Farmingdale or Levittown, New York.

47.    Images of Toothpaste Products purchased by Plaintiff Triesch are below:



48.    Toothpaste Products purchased by Plaintiff Triesch were submitted for testing. Test results from Toothpaste Products purchased by Plaintiff Triesch showed the presence of lead at 589.2 ppb and 718.7 ppb and of mercury at 14.41 ppb and 12.28 ppb.

49.    Plaintiff Triesch believed he was purchasing oral hygiene products that were nontoxic and without detectable levels of heavy metals, including lead and mercury. During the time he purchased and used the Products, and due to the Misrepresentations, partial misrepresentations, and Omissions, he was unaware the Toothpaste Products contained (or had a material risk of containing) significant levels of lead and mercury. If Defendant had disclosed that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury; that Defendant inadequately tested, or never tested, for heavy metals in its ingredients and/or finished Toothpaste Products; or that Defendant sold Toothpaste Products that failed to meet its internal standards, Plaintiff Triesch would not have purchased any of the Toothpaste Products or otherwise would have paid less for them.

50.     Plaintiff Lyn Scott ("Plaintiff Scott") is, and at all times relevant, has been a citizen and resident of the state of California, residing in Carson, in Los Angeles County, California. Plaintiff Scott purchased Defendant's Toothpaste, including Colgate Total Advanced Whitening Toothpaste, from approximately July 2023 to January 2024, from Walmart in Carson, California.

51.     Plaintiff Scott believed she was purchasing oral hygiene products that were nontoxic and without detectable levels of heavy metals, including lead and mercury. During the time she purchased and used the Products, and due to the Misrepresentations, partial misrepresentations, and Omissions, she was unaware the Toothpaste Products contained (or had a material risk of containing) significant levels of lead and mercury. If Defendant had disclosed that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury; that Defendant inadequately tested, or never tested, for heavy metals in its ingredients and/or finished Toothpaste Products; or that Defendant sold Toothpaste Products that failed to meet its internal standards, Plaintiff Scott would not have purchased any of the Toothpaste Products or otherwise would have paid less for them.

52.     Plaintiff Jose Peralta ("Plaintiff Peralta") is, and at all times relevant, has been a citizen and resident of the state of California, residing in Palmdale in Los Angeles County, California. Plaintiff Triesch purchased Defendant's Toothpaste Products, including Colgate Total Advanced Prevention Whitening Toothpaste, for at least the past four years, from Costco in Lancaster, California; Walmart in Palmdale, California; and Stater Bros. in Palmdale, California.

53.     An image of a Toothpaste Product purchased by Plaintiff Peralta is below:



54.     A Toothpaste Product purchased by Plaintiff Peralta was submitted for testing. Test results from a Toothpaste Product purchased by Plaintiff Peralta showed the presence of lead at 308.6 ppb.

55.     Plaintiff Peralta believed he was purchasing oral hygiene products that were nontoxic and without detectable levels of heavy metals, including lead and mercury. During the time he purchased and used the Products, and due to the Misrepresentations, partial misrepresentations, and Omissions, he was unaware the Toothpaste Products contained (or had a material risk of containing) significant levels of lead and mercury. If Defendant had disclosed that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury; that Defendant inadequately tested, or never tested, for heavy metals in its ingredients and/or finished Toothpaste Products; or that Defendant sold Toothpaste Products that

failed to meet its internal standards, Plaintiff Peralta would not have purchased any of the Toothpaste Products or otherwise would have paid less for them.

56.     Plaintiffs relied on the Toothpaste Products' packaging, misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, which were prepared, reviewed, and/or approved by Defendant and its agents at its headquarters in New York and disseminated by Defendant and its agents through the packaging. The Omissions were material content that a reasonable consumer would consider important when purchasing the Toothpaste Products, and the Misrepresentations and partial misrepresentations were misleading, unfair, and deceptive based on the inclusion and/or risk of significant levels of lead and mercury.

57.     Defendant Colgate-Palmolive Company is a citizen of the states of Delaware and New York, as it is incorporated in the state of Delaware and its principal place of business is located at 300 Park Avenue, New York, New York. Defendant packages, labels, markets, advertises, formulates, manufactures, distributes, and sells its Toothpaste Products throughout the United States, including New York.

58.     Defendant knowingly created, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive packaging and related marketing for the Toothpaste Products that did not disclose the presence or risk of heavy metals, including lead and mercury. Defendant is also responsible for sourcing ingredients, manufacturing the Toothpaste Products, and conducting all relevant quality assurance protocols, including testing of the ingredients and finished products.

59.     The Toothpaste Products, at a minimum, include:

a.   Colgate Watermelon Burst Toothpaste (for Kids);



b.   Colgate Total Whitening Toothpaste;



c.   Colgate Total Active Prevention Advanced Whitening Toothpaste;



d.   Colgate Total Active Prevention Whitening Toothpaste;



e.   Colgate Total Active Prevention Toothpaste;



f.   Colgate MaxFresh with Whitening Toothpaste;



g.   Colgate Triple Action Toothpaste; and



h.   Colgate Baking Soda & Peroxide Whitening Toothpaste.



## FACTUAL ALLEGATIONS

I.   **Defendant's Presence in the Oral Hygiene and Toothpaste Market**

60.    Defendant is the largest toothpaste brand in the United States.[18] In 2024, Defendant earned over $20 billion in net sales and a gross profit of $12.16 billion.[19]

61.    In 2021, Worldpanel by Kantar found that the Colgate brand was the "Fastest Growing Oral Care Brand of the Decade" and ranked second out of the "Top 25 Most Chosen Global FMCG [(fast-moving consumer goods)] Brands."[20]

62.    The popularity of Defendant's Toothpaste Products is directly tied to consumers' trust in the Colgate brand, as evidenced by Defendant's own statements.[21]

63.    Defendant represents that "[e]very single ingredient [it] use[s] is completely safe for you, your family, and the environment" and that it "test[s] each one carefully, at every stage of

---

[18]    Zippia, *Largest Toothpaste Brands*, Apr. 25, 2023, available at https://www.zippia.com/advice/largest-toothpaste-brands/ (last accessed August 6, 2025).

[19] Colgate-Palmolive Investor, *Colgate Announces 4th Quarter and Full Year 2024 Results*, Jan. 31, 2025, available at https://investor.colgatepalmolive.com/news-releases/news-release-details/colgate-announces-4th-quarter-and-full-year-2024-results (last accessed August 6, 2025).

[20] Kantar, *Brand Footprint 2022*, available at https://kantar.turtl.co/story/brand-footprint-2022-p/page/4/4 and https://kantar.turtl.co/story/brand-footprint-2022-p/page/6/6 (last accessed August 6, 2025).

[21] Mission: History and Purpose, *supra*; Colgate-Palmolive, *What's in a Colgate Product? Consumer Trust Rooted in Ingredient Transparency*, Jan. 2022, available at https://www.colgatepalmolive.com/en-us/who-we-are/stories/consumer-trust-ingredient-transparency (last accessed August 6, 2025).

the product lifecycle."[22] Defendant further represents and guarantees that its ingredients "meet [Defendant's] strict safety standards and all applicable government regulations everywhere they are sold around the world."[23]

64.    As the leading provider of oral hygiene products in the United States, Defendant knows its customers trust the quality of its oral hygiene products, including the Toothpaste Products. In touting its "ingredient transparency" and use of SmartLabel on its products, Defendant has stated:

> We know our consumers are increasingly looking for more information about the products they choose. For over two hundred years, our consumers have trusted that Colgate-Palmolive products are safe & effective and also delight the senses– whether that's how they smell, how they taste, or how they feel.
>
> This trust is rooted in transparency about the ingredients within each product. We empower people with knowledge so they feel confident when choosing our products. We not only share the ingredients within each product, but also the purpose behind each ingredient, so people can understand the why behind the what.[24]

65.    Further, Defendant knows reasonable consumers expect the Toothpaste Products to not have detectable levels of heavy metals, including lead and mercury.

---

[22] Colgate, *Science and Innovation: Ingredients*, available at https://www.colgate.com/en-us/mission/science-and-innovation/ingredients (last accessed August 6, 2025) (hereinafter "Science and Innovation: Ingredients").

[23] Colgate-Palmolive, *Sustainability: Ingredient Safety Policy*, available at https://www.colgatepalmolive.com/en-us/sustainability/our-sustainability-policies/ingredient-safety (last accessed August 6, 2025) (hereinafter "Sustainability: Ingredient Safety Policy").

[24] Colgate-Palmolive, *The Gamechanger for Ingredient Transparency? SmartLabel*, March 28, 2022, available at https://www.colgatepalmolive.com/en-us/who-we-are/stories/ingredient-information-on-smartlabel-empowers-sustainable-choices (last accessed August 6, 2025).

66.     According to a survey conducted by Newsweek and Statista, Defendant ranked third in the consumer goods industry as one of the World's Most Trusted Companies in 2024.[25]

67.     Defendant is aware of the reliance and trust its consumers place upon it and calls itself the "most trusted brand in the world."[26] Defendant has even published an article titled, "What's in a Colgate Product? Consumer Trust Rooted in Ingredient Transparency."[27]

## II.    The Heavy Metals in the Toothpaste Products Are Material to Reasonable Consumers

68.     Although Defendant misleadingly causes consumers to believe the Toothpaste Products do not contain heavy metals due to the Misrepresentations, partial misrepresentations, the Omissions, concealment, and other deceptive conduct, the Toothpaste Products do in fact contain undisclosed, detectable levels of heavy metals, including lead and mercury, which is material information to reasonable consumers.

69.     Plaintiffs' counsel had samples of the Toothpaste Products, including products specifically purchased by the Plaintiffs, tested. That testing confirmed the presence of undisclosed heavy metals:

| Product | Lead (ppb) | Mercury (ppb) |
|---|---|---|
| Colgate Total Whitening Toothpaste[28] | 625.4 ppb | < 5 ppb |
| Colgate Total Active Prevention Advanced Whitening Toothpaste | 476 ppb | < 5 ppb |

---

[25]     Newsweek, *World's Most Trustworthy Companies 2024*, available at https://rankings.newsweek.com/worlds-most-trustworthy-companies-2024 (last accessed August 6, 2025).

[26] Mission: History and Purpose, *supra*.

[27]    Colgate-Palmolive*, What's in a Colgate Product? Consumer Trust Rooted in Ingredient Transparency*, Jan. 2022, available at https://www.colgatepalmolive.com/en-us/who-we-are/stories/consumer-trust-ingredient-transparency (last accessed August 6, 2025).

[28] This testing represents results from product purchased by Plaintiff Brower.

| Product | Lead (ppb) | Mercury (ppb) |
|---|---|---|
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids) | 241.3 ppb | < 5 ppb |
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids) | 254.9 ppb | 7.86 ppb |
| Colgate Total Whitening Toothpaste[29] | 615.42 ppb | < 5 ppb |
| Colgate Total Whitening Toothpaste[30] | 620.4 ppb | < 5 ppb |
| Colgate Total Whitening Toothpaste[31] | 721.2 ppb | < 5 ppb |
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids)[32] | 279.5 ppb | 5.74 ppb |
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids)[33] | 278.2 ppb | 5.63 ppb |
| Colgate MaxFresh with Whitening Toothpaste[34] | 462.9 ppb | 16.14 ppb |
| Colgate Total Active Prevention Toothpaste[35] | 464.6 ppb | 7.86 ppb |
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids)[36] | 253.8 ppb | 5.43 ppb |
| Colgate Total Active Prevention Whitening Toothpaste | 337 ppb | <5 ppb |
| Colgate Triple Action Toothpaste | 442.9 ppb | 15.88 ppb |
| Colgate Triple Action Toothpaste[37] | 589.2 ppb | 14.41 ppb |

---

[29] This testing represents results from product purchased by Plaintiff Alqadri.

[30] This testing represents results from product purchased by Plaintiff Alqadri.

[31] This testing represents results from product purchased by Plaintiff Alqadri.

[32] This testing represents results from product purchased by Plaintiff Grodnick.

[33] This testing represents results from product purchased by Plaintiff Grodnick.

[34] This testing represents results from product purchased by Plaintiff Smith.

[35] This testing represents results from product purchased by Plaintiff Gauna.

[36] This testing represents results from product purchased by Plaintiff Gauna.

[37] This testing represents results from product purchased by Plaintiff Triesch.

| Product | Lead (ppb) | Mercury (ppb) |
|---|---|---|
| Colgate Baking Soda & Peroxide Whitening Toothpaste[38] | 718.7 ppb | 12.28 ppb |
| Colgate Total Active Prevention Whitening Toothpaste | 358.6 ppb | < 4 ppb |
| Colgate Total Active Prevention Whitening Toothpaste | 406.4 ppb | < 4 ppb |

70.     Testing conducted by lead-poisoning prevention and consumer goods safety advocate Lead Safe Mama, LLC ("LSM") in March 2025 also confirmed the presence of heavy metals in popular toothpaste and tooth powder products, including Defendant's Toothpaste Products.[39]

71.     In April 2025, LSM published its testing results that showed two of Defendant's products, Colgate Watermelon Burst Toothpaste with Fluoride (for Kids) and Colgate Total Active Prevention Whitening Toothpaste with Fluoride, contained extremely high levels of lead and mercury.[40]

| Product | Lead (ppb) | Mercury (ppb) |
|---|---|---|
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids) | 302.1 ppb | 6.9 ppb |
| Colgate Total Active Prevention Whitening Toothpaste with Fluoride | 539 ppb | 10.4 ppb |

---

[38] This testing represents results from product purchased by Plaintiff Triesch.

[39] *See* Exhibit 1 (Lead Safe Mama Chart), *supra*.

[40] *See id.*; *see also* Lab Results from Purity Laboratories for Toothpaste Products from Lead Safe Mama attached hereto as Exhibit 2.

72.     The levels of lead, in particular, are significantly high and far exceed the action level set by the U.S. Environmental Protection Agency ("EPA") of 15 parts per billion ("ppb") for public water that requires immediate action.[41]

73.     Regardless of level, though, as stated herein, no level of heavy metals is safe.[42]

74.     Moreover, the inclusion or real risk of high levels of lead and mercury contradict and impede the central function of the Toothpaste Products.  These products are meant to prevent unhealthy mouths and teeth and encourage oral health in both children and adults. Lead and mercury provide no such benefits and instead pose health risks to both children and adults.

75.     Based on the Misrepresentations, partial misrepresentations, and Omissions, and other deceptive conduct, reasonable consumers, including Plaintiffs, would not expect heavy metals to be present in the Toothpaste Products.

76.     Plaintiffs' expectations are consistent with reasonable consumers as shown by a Consumer Survey conducted by Plaintiffs' counsel that showed, based on the label, only 4.1% of

---

[41] FACS, *Guide to PPB and "Safe" Lead Levels in Water: Understanding the Standards*, Mar. 16, 2022, available at https://facs.com/blog/guide-to-ppb-and-safe-lead-levels-in-water-understanding-the-standards/#:~:text=There%20is%20no%20safe%20level%20of%20lead.,include%20replacement%20of%20lead%20plumbing (last accessed August 6, 2025).

[42] Closer to Zero Public Meeting Transcript at 32, 72, 179; *FDA Webinar: Action Levels for Lead in Food Intended for Babies and Young Children: Draft Guidance*, at 5 (March 2, 2023), available at https://www.fda.gov/media/166188/download (last accessed August 6, 2025); Kevin Loria, *Congressional Report Finds More Problems With Heavy Metals in Baby Food*, Consumer Reports (Sept. 29, 2021, updated Oct. 20, 2021), available at https://www.consumerreports.org/food-safety/problems-with-heavy-metals-in-baby-food-congressional-report-a6400080224/#:~:text=%E2%80%9CThere%20is%20no%20safe%20level,research%20and%20testing%20at%20CR (last accessed August 6, 2025).

respondents would expect to find lead in the Toothpaste Products and only 2.7% would expect to find mercury in the Toothpaste Products.[43]

77.    Further, reasonable consumers would not be able to detect the presence of heavy metals in the Toothpaste Products without conducting their own scientific tests or reviewing scientific testing.

78.    Accordingly, reasonable consumers must and do rely on Defendant to honestly report what its Toothpaste Products contain.

79.    Plaintiffs relied on the Products' packaging, Misrepresentations, partial misrepresentations, and Omissions when making their purchasing decisions.

80.    The Consumer Survey supports the importance that reasonable consumers place on the presence or risk of heavy metals in toothpaste:

| Consumer Survey | Very Important | Important | Not at all important |
|---|---|---|---|
| How important, if at all, would it be to your purchasing decision if the toothpaste you were considering purchasing contained, or risked containing, detectable levels of lead? | 67.3% | 28.8% | 3.9% |
| How important, if at all, would it be to your purchasing decision if the toothpaste you were considering purchasing contained, or risked containing, detectable levels of mercury? | 72.0% | 22.9% | 5.1% |

---

[43] Plaintiffs recently conducted a nationwide consumer survey ("Consumer Survey") of 410 respondents, including respondents from New York, Illinois, California, Minnesota, New Jersey, and Arizona, who had purchased toothpaste within the year preceding completion of the survey.

### III.    Defendant Has Actively Concealed the Truth About its Toothpaste Products From Consumers

81.    Defendant actively and knowingly concealed from and failed to disclose to consumers, including Plaintiffs and the Class, that its Toothpaste Products contain or materially risk containing heavy metals, including lead and mercury.

82.    Defendant actively and knowingly concealed and failed to disclose material facts to Plaintiffs and other consumers about the negative health effects of its Toothpaste Products.

83.    Defendant also knew of the formulation and ingredients of the Toothpaste Products yet failed to disclose the presence or material risk of heavy metals in the Toothpaste Products. Despite Defendant's claims that it "test[s] each [ingredient] carefully, at every stage of the product lifecycle[,]"[44] its Toothpaste Products are "[r]esponsibly made[,]"[45] and its ingredients "meet [Defendant's] strict safety standards and all applicable government regulations everywhere they are sold around the world[,]"[46] Defendant knowingly failed to adequately monitor or test its finished Toothpaste Products and ingredients, failed to responsibly manufacture them, and failed to adhere to internal safety standards.

84.    Defendant knowingly and actively concealed the material facts from consumers because it knew consumers cared about the Toothpaste Products' quality, ingredients, standards, and suitability for use, and if consumers were to learn the truth about Defendant's claims, it would negatively affect Defendant's finances.

---

[44] Science and Innovation: Ingredients, *supra*.

[45] *Id*.

[46] Sustainability: Ingredient Safety Policy, *supra*.

85.     Defendant knew or should have known of the negative health effects caused by exposure to heavy metals, yet knowingly and actively concealed the presence or material risk of heavy metals in the Toothpaste Products.

86.     The knowing and active concealment of these material facts render the Toothpaste Products' packaging deceptive, misleading, and unfair because without full disclosure, reasonable consumers, including Plaintiffs and the Class, believe the Toothpaste Products to be of a certain quality and suitable for use when they are not.

87.     Plaintiffs and the Class Members made purchases they would not have made or paid a premium price for the Toothpaste Products had they known the truth based on Defendant's active concealment, Omissions, Misrepresentations, and partial representations regarding the presence or material risk of heavy metals in the Toothpaste Products.

88.     Defendant charged, and Plaintiffs purchased the Toothpaste Products, paying a premium price for the Toothpaste Products despite the availability of comparable, lesser-priced toothpaste products from other toothpaste manufacturers:

| Colgate Toothpaste Product | Price/ Ounce | Competitor Toothpaste Product | Price/ Ounce |
|---|---|---|---|
| Colgate Triple Action Toothpaste | $0.55 | Ultra Brite Advanced Whitening Toothpaste | $0.17 |
| Colgate Baking Soda & Peroxide Whitening Toothpaste | $0.62 | Aim Cavity Protection Toothpaste | $0.18 |
| Colgate MaxFresh with Whitening Toothpaste | $0.79 | Arm & Hammer Advance White Toothpaste | $0.67 |
| Colgate Watermelon Burst Toothpaste (for Kids) | $0.87 | Trader Joe's Toothpaste | $0.67 |
| Colgate Total Active Prevention Whitening Toothpaste | $0.98 | Up & Up Whitening Toothpaste | $0.67 |
| Colgate Total Active Prevention Toothpaste | $0.98 | Up & Up Complete Protection Toothpaste | $0.67 |

| Colgate Toothpaste Product | Price/ Ounce | Competitor Toothpaste Product | Price/ Ounce |
|---|---|---|---|
| Colgate Total Active Prevention Advanced Whitening Toothpaste | $1.57 | | |

89.     The facts concealed, omitted, or not disclosed by Defendant were material such that reasonable consumers, including Plaintiffs and the Class, would have considered them when deciding whether to purchase the Toothpaste Products. Had Plaintiffs known the truth, they would not have purchased the Toothpaste Products or paid the premium price.

**IV.    Due to the Presence and Material Risk of Heavy Metals, the Misrepresentations, Partial Misrepresentations, and Omissions Make the Packaging Materially Misleading**

90.     Testing conducted by Plaintiffs and LSM show the Toothpaste Products contain detectable levels of both lead and mercury.

| Product (Testing by Plaintiffs) | Lead (ppb) | Mercury (ppb) |
|---|---|---|
| Colgate Total Active Prevention Advanced Whitening Toothpaste | 476 ppb | < 5 ppb |
| Colgate Total Whitening Toothpaste[47] | 625.4 ppb | < 5 ppb |
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids) | 241.3 ppb | < 5 ppb |
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids) | 254.9 ppb | 7.86 ppb |
| Colgate Total Whitening Toothpaste[48] | 615.42 ppb | < 5 ppb |
| Colgate Total Whitening Toothpaste[49] | 620.4 ppb | < 5 ppb |

---

[47] This testing represents results from product purchased by Plaintiff Brower.

[48] This testing represents results from product purchased by Plaintiff Alqadri.

[49] This testing represents results from product purchased by Plaintiff Alqadri.

| Product (Testing by Plaintiffs) | Lead (ppb) | Mercury (ppb) |
|---|---|---|
| Colgate Total Whitening Toothpaste[50] | 721.2 ppb | < 5 ppb |
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids)[51] | 279.5 ppb | 5.74 ppb |
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids)[52] | 278.2 ppb | 5.63 ppb |
| Colgate MaxFresh with Whitening Toothpaste[53] | 462.9 ppb | 16.14 ppb |
| Colgate Total Active Prevention Toothpaste[54] | 464.6 ppb | 7.86 ppb |
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids)[55] | 253.8 ppb | 5.43 ppb |
| Colgate Total Active Prevention Whitening Toothpaste | 337 ppb | <5 ppb |
| Colgate Triple Action Toothpaste | 442.9 ppb | 15.88 ppb |
| Colgate Triple Action Toothpaste[56] | 589.2 ppb | 14.41 ppb |
| Colgate Baking Soda & Peroxide Whitening Toothpaste[57] | 718.7 ppb | 12.28 ppb |
| Colgate Total Active Prevention Whitening Toothpaste | 358.6 ppb | < 4 ppb |
| Colgate Total Active Prevention Whitening Toothpaste | 406.4 ppb | < 4 ppb |

[50] This testing represents results from product purchased by Plaintiff Alqadri.

[51] This testing represents results from product purchased by Plaintiff Grodnick.

[52] This testing represents results from product purchased by Plaintiff Grodnick.

[53] This testing represents results from product purchased by Plaintiff Smith.

[54] This testing represents results from product purchased by Plaintiff Gauna.

[55] This testing represents results from product purchased by Plaintiff Gauna.

[56] This testing represents results from product purchased by Plaintiff Triesch.

[57] This testing represents results from product purchased by Plaintiff Triesch.

| Product (Testing by LSM) | Lead (ppb) | Mercury (ppb) |
|---|---|---|
| Colgate Watermelon Burst Toothpaste with Fluoride (for Kids) | 302.1 ppb | 6.9 ppb |
| Colgate Total Active Prevention Whitening Fluoride Toothpaste | 539 ppb | 10.4 ppb |

91.     Government agencies and other experts acknowledge and agree there are no known safe levels of heavy metals:

- Conrad Choiniere, Director of the Office of Analytics and Outreach in the U.S. Food and Drug Administration's ("FDA") Center for Food Safety and Applied Nutrition: "However overall exposure adds up because many of the foods we eat contain these contaminants in small amounts. This is not to say that we should not be concerned. On the contrary, for the contaminants we are discussing today, we have not identified safe levels of exposure for developmental outcomes."[58]

- Dr. Aparna Bole, pediatrician speaking on behalf of the American Academy of Pediatrics ("AAP"): "There is no known safe level of exposure to these metals for children. Exposure to toxic elements has a disproportionate effect on infants and toddlers because their brains are rapidly developing, especially during their first 1,000 days."[59]

- Dr. Karagas, Professor and Chair of the Department of Epidemiology at the Geisel School of Medicine at Dartmouth College: "Arsenic, cadmium, mercury and lead, shown here, circled in these red circles, they do not have any known physiologic essential function in the body and there is no known safe level to our knowledge."[60]

92.     Heavy metals are neurotoxins, or poisons, which affect the nervous system.[61]

---

[58] Closer to Zero Public Meeting Transcript at 32.

[59] *Id*. at 179.

[60] *Id*. at 72.

[61] *See*, *e.g.*, U.S. House of Representatives, Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Staff Report, *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, at 2 (Feb. 4, 2021), available at https://oversightdemocrats.house.gov/sites/evo-subsites/democrats-oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed August 6, 2025) (hereinafter "Congressional Committee Report") ("The Food and Drug

93.     With respect to children, exposure to these heavy metals "diminish[es] quality of life, reduce[s] academic achievement, and disturb[s] behavior, with profound consequences for the welfare and productivity of entire societies."[62] Heavy metals can harm the "developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder ('ADHD')."[63] Even in trace amounts, heavy metals can alter the developing brain and erode a child's intelligence quotient ("IQ").[64]

94.     Due to their smaller physical size and still-developing brain and organs, toddlers are particularly susceptible to the toxic effects of heavy metals because "[t]hey also absorb more of the heavy metals that get into their bodies than adults do."[65]

95.     Of additional concern to developing children are the health risks related to simultaneous exposure to multiple heavy metals as "co-exposures can have interactive adverse effects."[66] Heavy metals disturb the body's metabolism and cause "significant changes in various

Administration and the World Health Organization have declared them dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects.").

[62] Healthy Babies Bright Futures, *What's in My Baby's Food?*, Oct. 2019, at 13, available at https://hbbf.org/sites/default/files/2022-12/BabyFoodReport_ENGLISH_R6_0.pdf (last accessed August 6, 2025) (hereinafter "HBBF Report").

[63] *Id.* at 6.

[64] *See* Congressional Committee Report, *supra*, at 2.

[65] Jesse Hirsch, *Heavy Metals in Baby Food: What You Need to Know*, Consumer Reports, Aug. 16, 2018, updated June 27, 2023, available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed August 6, 2025) (internal citation omitted) ("Consumer Reports: Heavy Metals in Baby Food").

[66] Rachel Morello-Frosch, et al., *Environmental Chemicals in an Urban Population of Pregnant Women and Their Newborns from San Francisco* at 2, Environmental Science & Technology, Nov. 15, 2016; 50(22),12464-12472, available at https://stacks.cdc.gov/view/cdc/80511 (last accessed August 6, 2025).

biological processes such as cell adhesion, intra- and inter-cellular signaling, protein folding, maturation, apoptosis, ionic transportation, enzyme regulation, and release of neurotransmitters."[67]

96.    According to Victor Villarreal, Ph.D., Assistant Professor in the Department of Educational Psychology at the University of Texas at San Antonio who has studied the effects of heavy metals on childhood development, "[t]he effects of early exposure to heavy metals can have long-lasting impacts that may be impossible to reverse."[68]

97.    Research continues to confirm that exposures to heavy metals cause "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[69]

98.    As Dr. James E. Rogers, the director of food safety research and testing at Consumer Reports, has said "[t]*here is no safe level of heavy metals*, so the goal should be to have no measurable levels of any heavy metal in baby and toddler foods."[70] This rings particularly true when considering that generally, it is recommended that children and adults brush their teeth twice a day.[71]

---

[67] Monisha Jaishankar, et al., *Toxicity, Mechanism and Health Effects of Some Heavy Metals* at 62, Interdisciplinary Toxicology, Nov. 14, 2014, 7(2), 60–72, available at https://doi.org/10.2478/intox-2014-0009 (last accessed August 6, 2025).

[68] Consumer Reports: Heavy Metals in Baby Food, *supra*.

[69] HBBF Report, *supra*, at 1.

[70] Congressional Report Finds More Problems with Heavy Metals in Baby Food, *supra* (emphasis added).

[71] *See*, *e.g.*, HeadStart.gov, *Toothbrushing*, available at https://headstart.gov/browse/tag/toothbrushing (last accessed August 6, 2025); American Dental Association, *Toothbrushes*, available at https://www.ada.org/resources/ada-library/oral-health-topics/toothbrushes#:~:text=The%20American%20Dental%20Association%20recommends,caries%20and%20remineralization%20of%20teeth (last accessed August 6, 2025).

99.    The FDA and the World Health Organization ("WHO") have declared heavy metals "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[72]

100.    The health effects associated with exposure to heavy metals are not limited to infants and young children. Exposure to heavy metals, even in small amounts, can lead to life-long effects. Heavy metals can remain in the human body for years and as a result, can accumulate in the body, such as in the kidneys and other internal organs, increasing their risk to a person over time.[73]

101.    Because heavy metals can bioaccumulate in the body, even regular consumption of small amounts can increase the material risk of various health issues, including bladder, lung, and skin cancer; cognitive and reproductive problems; and type 2 diabetes.[74]

102.    Exposure to heavy metals has also been shown to have long-lasting effects on cardiovascular toxicity, hypertension, arrhythmia, atherosclerosis,[75] as well as gastrointestinal and kidney dysfunction, nervous system disorders, skin lesions, vascular damage, immune system dysfunction, birth defects, and cancer.[76]

---

[72] Congressional Committee Report, *supra*, at 2.

[73] *See id*.

[74] *See id*.

[75] Pan Ziwei, Gong Tingyu, and Ping Liang, *Heavy Metal Exposure and Cardiovascular Disease*, Circulation Research, Apr. 25, 2024, available at https://www.ahajournals.org/doi/epub/10.1161/CIRCRESAHA.123.323617 (last accessed August 6, 2025).

[76] Mahdi Balali-Mood, Kobra Naseri, Zoya Tahergorabi, Mohammad Reza Khazdair, Mahmood Sadeghi, *Toxic Mechanisms of Five Heavy Metals: Mercury, Lead, Chromium, Cadmium, and Arsenic*, Frontiers in Pharmacology, Apr. 12, 2021, available at https://www.frontiersin.org/journals/pharmacology/articles/10.3389/fphar.2021.643972/full (last accessed August 6, 2025).

103.    The heavy metals in the Toothpaste Products have the potential to cause not only adverse health effects, but also to pollute the environment. The lead and mercury in the Toothpaste Products have been scientifically shown to bioaccumulate in the environment: "The daily use of toothpastes containing heavy metals can be a threat to the environment since they can *bioaccumulate and reach toxic proportions*, affecting water, soil, and living organisms."[77]

### A. Negative Health Effects of Lead

104.    Lead is a highly toxic heavy metal, identified as a carcinogen, whose harmful effects cannot be reversed or remediated due to its accumulation in the body over time.[78]

105.    No amount of lead is safe for human exposure or consumption, according to the FDA, Centers for Disease Control and Prevention ("CDC"), AAP, and WHO.[79]

---

[77] K. Chengappa, A. Rao, R. Shenoy, M. Pai, P. Jodalli, A. B.R., *Heavy metal content of over-the-counter toothpastes—a systematic review in vitro studies*, Frontiers in Dental Medicine, Mar. 26, 2025; 6:1543972, available at https://pmc.ncbi.nlm.nih.gov/articles/PMC11979237/ (last accessed August 6, 2025) (emphasis added).

[78] *See* Consumer Reports: Heavy Metals in Baby Food; *ToxFAQs for Lead*, Agency for Toxic Substances and Disease Registry, available at https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=93&toxid=22 (last accessed August 6, 2025).

[79] *See* FDA, *Lead in Food and Foodwares* (current as of Jan. 6, 2025), available at https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares#:~:text=Although%20no%20safe%20level%20for,blood%20(%C2%B5g%20%2FdL) (last accessed August 6, 2025); CDC, *Childhood Lead Poisoning Prevention: CDC Updates Blood Lead Reference Value* (Apr. 2, 2024), https://www.cdc.gov/lead-prevention/php/news-features/updates-blood-lead-reference-value.html (last accessed August 6, 2025); American Academy of Pediatrics, *Lead Exposure in Children* (last updated Jan. 2, 2025), available at https://www.aap.org/en/patient-care/lead-exposure/lead-exposure-in-children/#:~:text=How%20Much%20Lead%20is%20Safe,Prevention%20recommends%20evaluation%20and%20intervention (last accessed August 6, 2025); WHO Lead Poisoning, *supra*; *see also* USA Today, *FDA: Recalled Applesauce Pouches Had Elevated Lead Levels and Another Possible Contaminant* (Jan. 5, 2024, updated Jan. 9, 2024), available at https://www.usatoday.com/story/money/food/2024/01/05/applesauce-pouch-recall-contamination-spreads/72121869007/ (last accessed August 6, 2025).

106.    This exposure risk has long been recognized. In 1978, because of concerns over exposure risks to lead, the U.S. banned lead-based paint use in residential homes,[80] which is notable given that paint is not a product intended to be put directly into the body or bloodstream.

107.    Exposure to lead can cause cancer, neuropathy and brain damage, hypertension, decreased renal function, increased blood pressure, and gastrointestinal and cardiovascular effects. It can also cause reduced fetal growth or lower birth weights.[81]



---

[80] *Childhood Lead Poisoning Prevention: About Lead in Paint*, CDC (March 26, 2025), available at https://www.cdc.gov/lead-prevention/prevention/paint.html (last accessed August 6, 2025).

[81] Geneva Environment Network, *Environmental and Health Impacts of Lead*, last updated Oct. 17, 2024, available at https://www.genevaenvironmentnetwork.org/resources/updates/lead-poisoning-prevention/ (last accessed August 6, 2025).

108.    The EPA has found that "[l]ead can affect almost every organ and system in your body. Children six years old and younger are more susceptible to the effects of lead."[82]

109.    For children, "[e]ven low levels of lead in blood of children can result in: behavior and learning problems, lower IQ and hyperactivity, slowed growth, hearing problems, [and] anemia."[83]

110.    Lead can also be transmitted from pregnant women to their babies during pregnancy because "[l]ead can accumulate in our bodies over time... During pregnancy, lead is released from the mother's bones... and can pass from the mother exposing the fetus or the breastfeeding infant to lead."[84] This can result in "miscarriage, stillbirth, premature birth, and low birth weight infants."[85]

111.    Lead is also harmful to adult health, and exposure to lead in adults is associated with increased blood pressure, increased risk of hypertension, reduced fetal growth in pregnant women, damage to reproductive organs, cognitive decline, heart disease, and worsened kidney function.[86]

---

[82] EPA, *Learn About Lead*, last updated Dec. 5, 2024, available at https://www.epa.gov/lead/learn-about-lead (last accessed August 6, 2025).

[83] *Id.*

[84] *Id.*

[85] T. Bhasin, Y. Lamture, M. Kumar, R. Dhamecha, *Unveiling the Health Ramini factions of Lead Poisoning: A Narrative Review,* Cureus, Oct. 9, 2023; 15(1):e46727, available at https://pmc.ncbi.nlm.nih.gov/articles/PMC10631288/ (last accessed August 6, 2025).

[86] *NTP Monograph: Health Effects of Low-Level Lead*, U.S. Department of Health and Human Services, National Toxicology Program, June 2012, available at https://ntp.niehs.nih.gov/sites/default/files/ntp/ohat/lead/final/monographhealtheffectslowlevellead_newissn_508.pdf (last accessed August 6, 2025); A. Spivey, *The Weight of Lead: Effects Add Up in Adults*, Environ. Health Perspectives, Jan. 1, 2007, 115(1): A30-A36, available at https://ehp.niehs.nih.gov/doi/10.1289/ehp.115-a30 (last accessed August 6, 2025); *Lead vs. Lead-Free Solder: Which is Better for PCB Manufacturing?* Wevolver, Jan. 31, 2023, available at https://www.wevolver.com/article/lead-free-solder-vs-lead-solder (last accessed August 6, 2025).



112.    Because exposure to lead builds up in the human body over time, it can disrupt neurological, skeletal, reproductive, hematopoietic, renal, and cardiovascular systems.[87]

---

[87] Collin, M. Samuel, et al., *Bioaccumulation of Lead (Pb) and Its Effects on Human: A Review*, Journal of Hazardous Material Advances, Aug. 2022, (7), available at https://www.sciencedirect.com/science/article/pii/S277241662200050X?via%3Dihub (last accessed August 6, 2025).

113.    Even "[r]epeated low-level exposure [to lead] over a prolonged period" can result in clinical symptoms including "[p]ersistent vomiting, encephalopathy, lethargy, delirium and coma[.]"[88] Lead exposure is also associated with an increase in dental cavities.[89]

114.    Despite Defendant's Misrepresentations, partial misrepresentations, Omissions, and overall packaging impression that communicate the Toothpaste Products are properly and safely manufactured and do not contain or risk containing high levels of heavy metals, laboratory tests show Defendant sold Toothpaste Products containing undisclosed lead levels as high as 302.1 ppb, 279.5 ppb, 278.2 ppb, and 254.9 ppb in a product meant for children, and 721.2 ppb, 718.7 ppb, 625.4 ppb, 620.4 ppb, and 615.42 ppb in a product intended for adults.

### B. Negative Health Effects of Mercury

115.    The EPA has found that mercury exposure "can harm the brain, heart, kidneys, lungs, and immune system of people of all ages."[90]

116.    Similar to lead, "[e]xposure to mercury – even in small amounts – may cause serious health problems, and is a threat to the development of the child in utero and early in life."[91]

117.    Scientific studies have found that mercury "can cause disorders such as various cancers; endothelial dysfunction; gastric and vascular disorders; liver, kidney, and brain damage;

---

[88] Taanvi Bhasin, et al., *Unveiling the Health Ramifications of Lead Poisoning: A Narrative Review*, Cureus, Oct. 9, 2023, 15(10), available at https://www.cureus.com/articles/184381-unveiling-the-health-ramifications-of-lead-poisoning-a-narrative-review#!/ (last accessed August 6, 2025).

[89] Moss ME, Lanphear BP, Auinger P. Association of dental caries and blood lead levels. JAMA. 1999 Jun 23-30;281(24):2294-8. doi: 10.1001/jama.281.24.2294. PMID: 10386553 available at https://pubmed.ncbi.nlm.nih.gov/10386553/ (last accessed August 6, 2025) ("Environmental lead exposure is associated with an increased prevalence of dental caries in the US population.").

[90] EPA, *Basic Information about Mercury*, available at https://www.epa.gov/mercury/basic-information-about-mercury (last accessed August 6, 2025).

[91] World Health Organization, *Mercury and Health*, available at https://www.who.int/news-room/fact-sheets/detail/mercury-and-health (last accessed August 6, 2025).

hormonal imbalances, miscarriages, and reproductive disorders; skin lesions; vision damage; and even death."[92]

118.    Mercury has no known "positive functionality in the human body, and even at low concentrations, it can have harmful long-term health effects, causing headaches, limb pain, tooth loss, or general weakness."[93]

119.    Mercury increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed in utero. Exposure to mercury has been linked to higher risk of lower IQ scores and intellectual disability.[94]

120.    Mercury exposure at two and three years of age has been positively associated with autistic behaviors among pre-school age children.[95]

121.    Despite Defendant's misrepresentations, partial misrepresentations, Omissions, and overall packaging impression that communicates the Toothpaste Products are properly and safely manufactured and do not contain or risk containing detectable levels of heavy metals, laboratory tests show Defendant sold Toothpaste Products containing undisclosed mercury levels as high as 7.86 ppb, 6.9 ppb, and 5.74 ppb in a product meant for children, and 16.14 ppb, 15.88 ppb, and 14.41 ppb in a product intended for adults.

---

[92] A. Charkiewicz, W. Omeljaniuk, M. Garley, J. Niklinski, *Mercury Exposure and Health Effects: What Do We Really Know?*, Int'l Journal of Molecular Science, Mar. 5, 2025, 26(5), 2326, available at https://www.mdpi.com/1422-0067/26/5/2326 (last accessed August 6, 2025).

[93] *Id.*

[94] *See* HBBF Report, *supra*, at 14.

[95] *See* Congressional Committee Report, *supra*, at 12-13.

### C. Fluoride is associated with higher levels of toxic contamination

122.    Higher concentrations of fluoride are associated with greater contamination by toxins such as lead and mercury because the toxins may be required to maintain electroneutrality of fluoride.[96]

123.    In fact, fluorides actually increase lead concentrations in humans.[97] "Fluoride and lead can interact in the human body, potentially affecting lead levels in blood and bone, and potentially impacting health outcomes."[98] Water treated with fluoride strongly associates with elevated blood lead levels, double that of communities with non-fluoridated water.[99]

---

[96] Guth, S., et al. Toxicity of fluoride: critical evaluation of evidence for human developmental neurotoxicity in epidemiological studies, animal experiments and in vitro analyses. Arch Toxicol. 2020 May;94(5):1375-1415. doi: 10.1007/s00204-020-02725-2. Epub 2020 May 8. PMID: 32382957;       PMCID:       PMC7261729,       available       at https://pmc.ncbi.nlm.nih.gov/articles/PMC7261729/ (last accessed August 6, 2025) ("To maintain electroneutrality, (drinking) water with higher concentrations of endemically occurring fluoride must contain higher concentrations of positive ions to balance out the fluoride. This may affect the pH of the water or result in greater contamination by electropositive water contaminants, for example aluminum, zinc, arsenic, lead, mercury, and other metals and metalloids.").

[97] Sawan, R.M., et al. Fluoride increases lead concentrations in whole blood and in calcified tissues from lead-exposed rats. Toxicology. 2010 Apr 30;271(1-2):21-6. doi: 10.1016/j.tox.2010.02.002. Epub 2010 Feb 25. PMID: 20188782, available at https://pubmed.ncbi.nlm.nih.gov/20188782/ (last accessed August 6, 2025).

[98] *Id.* ("Specifically, studies suggest that fluoride can increase lead concentrations in animals exposed to lead, and that the type of fluoride used in water treatment (silicofluorides) may be associated with higher blood lead levels in children.").

[99] Masters, R.D., Coplan M.J., Hone, B.T., Dykes, J.E. Association of silicofluoride treated water with elevated blood lead. Neurotoxicology. 2000 Dec;21(6):1091-100. PMID: 11233755, available at https://pubmed.ncbi.nlm.nih.gov/11233755/ (last accessed August 6, 2025) ("there was a consistently significant association of SiF [silicon tetrafluoride] treated community water and elevated blood lead."); Coplan MJ, Patch SC, Masters RD, Bachman MS. Confirmation of and explanations for elevated blood lead and other disorders in children exposed to water disinfection and    fluoridation    chemicals.    Neurotoxicology.    2007    Sep;28(5):1032-42.    doi: 10.1016/j.neuro.2007.02.012.    Epub    2007    Mar    1.    PMID:    17420053,    available    at https://pubmed.ncbi.nlm.nih.gov/17420053/ (last accessed August 6, 2025) (communities with silicofluoride treated water associated with the "[p]revalence of children with elevated blood lead" about double that of non-fluoridated communities).

124.    Thus, fluoridated water may intensify blood and tissue lead levels, including in children.[100]

## V.    Defendant's Toothpaste Products Can Be Manufactured Without Heavy Metals

125.    Defendant could have manufactured its Toothpaste Products to be free of lead and mercury, or at the very least, to contain non-detectable levels of the same. In fact, some of Defendant's competitors have manufactured toothpaste products with non-detectable levels of lead and mercury.[101]

126.    Five toothpaste products tested by LSM found to have less than 5 ppb of lead and mercury include: (1) Dr. Brown's Baby Toothpaste; (2) Kids' Spry Tooth Gel with Xylitol; (3) Pegciz Toothpaste (Foam); (4) Orajel Training Toothpaste; and (5) Miessence Toothpaste.[102]

127.    In the products tested by LSM, Defendant's Toothpaste Products were categorized as containing the highest amounts of lead, with levels at 200 ppb and above.[103]

## VI.    Defendant's Packaging Misled Reasonable Consumers Based on the Misrepresentations, Partial Misrepresentations, Omissions, and Overall Impression of the Packaging

128.    The Toothpaste Products' packaging communications misled and deceived reasonable consumers because Defendant omitted that the Toothpaste Products contained or had a material risk of containing heavy metals, while representing the Toothpaste Products' benefits to oral health.

---

[100] Moms against fluoridation.org, "Fluoride, Chloramine & Lead: Bad for people, pipes and planet!," April 30, 2016, available at https://momsagainstfluoridation.org/sites/default/files/pdf-documents/FluorideChloramineLead_2_2.pdf (last accessed August 6, 2025) ("Fluoridated water supplies accelerate the destruction of plumbing infrastructure and increase blood & tissue lead levels in children.").

[101] *See* Ex. 1.

[102] *See id.*

[103] *Id.*

129.    Based on Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations, the Omissions, and overall impression given by the packaging, no reasonable consumer could expect or understand the Toothpaste Products contained or had a material risk of containing heavy metals such as lead and mercury.

130.    The Toothpaste Products' packaging communications include, but are not limited to:

  a. "Whole Mouth Health" that is misleading and contradicts the presence of heavy metals.



b.  "Protects teeth, tongue, cheeks, [and] gums" that is misleading and contradicts the presence of heavy metals, especially high levels of lead.



c.  "Helps Repair Early Enamel Damage," "Helps Reverse Early Gum Damage," "Helps Prevent Plaque Bacteria," and "Fights Tartar" that gives an overall impression that harmful levels of lead would not be included.



d.  "Clinically Proven . . . Enamel Protection" that is misleading and contradicts the presence of heavy metals, especially high levels of lead.

 

e.  "Clean Mint" that is misleading and contradicts the presence of heavy metals, especially high levels of lead.



f.  "Freshness" that is misleading and contradicts the presence of heavy metals, especially high levels of lead.

  

g.  "Releases Pure Oxygen Bubbles for a Clean, Fresh Sensation" that are misleading and contradicts the presence of heavy metals, especially high levels of lead.



h.  "Responsibly Made" that is misleading and contradicts the presence of heavy metals, especially high levels of lead.



131.    The Misrepresentations and Omissions  misleadingly convey to consumers that the Toothpaste Products are of a high quality and have certain characteristics they do not actually possess.

132.    Defendant misleadingly causes consumers to believe its Toothpaste Products do not contain (or have a material risk of containing) heavy metals, including lead and mercury, due to

the material Omissions, and Misrepresentations and partial misrepresentations, when in fact the Toothpaste Products do contain (or have a material risk of containing) both lead and mercury.

133.    Whether the Toothpaste Products contain heavy metals is material information to reasonable consumers, including Plaintiffs.

134.    The Consumer Survey supports the importance that reasonable consumers place on the presence or risk of heavy metals in toothpaste:

| Consumer Survey | Very Important | Important | Not at all important |
|---|---|---|---|
| How important, if at all, would it be to your purchasing decision if the toothpaste you were considering purchasing contained, or risked containing, detectable levels of lead? | 67.3% | 28.8% | 3.9% |
| How important, if at all, would it be to your purchasing decision if the toothpaste you were considering purchasing contained, or risked containing, detectable levels of mercury? | 72.0% | 22.9% | 5.1% |

135.    Defendant wrongfully failed to disclose to reasonable consumers material information regarding the presence of (or material risk of) heavy metals in the Toothpaste Products.

136.    Due to the overall impression of the packaging, misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, particularly in conjunction with Defendant's representations that "every single ingredient" used is "completely safe" and tested "at every stage of the product life cycle," reasonable consumers, like Plaintiffs, would not suspect the presence of heavy metals in the Toothpaste Products. Unlike Defendant, reasonable consumers are not able to independently detect the presence of heavy metals in the Toothpaste Products and are generally without the means to conduct their own scientific tests on the Toothpaste Products.

137.    Moreover, information regarding the presence of heavy metals in the Toothpaste Products is in the exclusive possession of Defendant and not available to consumers. Defendant chose to not disclose such information to consumers and thus actively concealed the presence and risk of heavy metals in the Toothpaste Products.

138.    Reasonable consumers must and do rely on Defendant to honestly report what its Toothpaste Products contain.

139.    Based on the failure to disclose the presence (or material risk) of heavy metals on the Toothpaste Products' packaging, no reasonable consumer would expect, suspect, or understand that the Toothpaste Products contained or had a material risk of containing heavy metals.

140.    In light of Defendant's statements regarding the quality of the Toothpaste Products, including its supposed comprehensive quality controls, Defendant knew or should have known the Toothpaste Products contained or had a material risk of containing heavy metals.

141.    Defendant had a duty to ensure the Toothpaste Products were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

142.    Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive packaging based on the material misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions.

143.    Defendant knew that properly and sufficiently monitoring the Toothpaste Products for heavy metals was not only important, but critical.

144.    Defendant knew or should have known it could control the levels of heavy metals in the Toothpaste Products by requiring proper monitoring and testing for heavy metals, including lead and mercury, at manufacturing and packaging stages, and effecting changes when needed.

Indeed, Defendant purports to "test each [ingredient] carefully, at every stage of the product lifecycle – from the development lab to the store shelf, and even to your bathroom at home."[104]

145.    The misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, are material and reasonably likely to deceive reasonable consumers, such as Plaintiffs, in their purchasing decisions. This is especially true considering Defendant's long-standing campaign built on trust.

146.    The misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, make the Toothpaste Products' packaging deceptive based on the presence or risk of significant levels heavy metals in the Toothpaste Products. Reasonable consumers, like Plaintiffs, would consider the presence or risk of heavy metals in the Toothpaste Products a material fact when considering which oral hygiene products to purchase.

147.    Defendant knew, yet failed to disclose, that it was not sufficiently or adequately monitoring or testing the finished Toothpaste Products or ingredients used in the Toothpaste Products for heavy metals.

148.    The misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, were misleading due to Defendant's failure to sufficiently or adequately monitor or test for and disclose the presence (or material risk) of heavy metals in the Toothpaste Products.

149.    Defendant knew or should have known that the Toothpaste Products contained or may contain levels of heavy metals that were not disclosed on the packaging.

150.    Defendant knew or should have known that reasonable consumers, including Plaintiffs, expected Defendant to not only sufficiently monitor and test the finished Toothpaste

---

[104] Science and Innovation: Ingredients, *supra*.

Products and their ingredients for heavy metals to ensure the quality of the Toothpaste Products, but to also disclose the presence or risk of heavy metals.

151.    Such expectations about monitoring and testing toothpaste for heavy metals are consistent with the results of the Consumer Survey:

| Consumer Survey | Yes | No |
|---|---|---|
| Would you expect a company to disclose if there were detectable levels, or risk, of lead in toothpaste? | 92.6% | 7.4% |
| Would you expect a company to disclose if there were detectable levels, or risk, of mercury in toothpaste? | 91.3% | 8.7% |
| In your opinion, should a company disclose lead testing results to consumers? | 92.4% | 7.6% |
| In your opinion, should a company disclose mercury testing results to consumers? | 92.2% | 7.8% |

152.    Further, Defendant knew or should have known that reasonable consumers paid higher prices, or paid any price at all, for the Toothpaste Products and expected Defendant to sufficiently test and monitor the Toothpaste Products for the presence of heavy metals.

153.    The Misrepresentations, partial misrepresentations, and Omissions are material and render the Toothpaste Products' packaging deceptive because without full disclosure, reasonable consumers, such as Plaintiffs, believe the Toothpaste Products do not contain or have a material risk of containing heavy metals.

154.    The Consumer Survey supports such expectations: based on the label, only 4.1% of respondents would expect to find lead and just 2.7% would expect to find mercury in the Toothpaste Products.

155.    The misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, were intended to and did, in fact, cause consumers like Plaintiffs and the other Class Members to purchase products they would not have if the true quality

and ingredients were disclosed or for which they would not have paid a premium price, or any price at all.

156.    Defendant charged, and Plaintiffs and the Class embers paid, a premium price for the Toothpaste Products:

| Colgate Toothpaste Product | Price/ Ounce | Competitor Toothpaste Product | Price/ Ounce |
|---|---|---|---|
| Colgate Triple Action Toothpaste | $0.55 | Ultra Brite Advanced Whitening Toothpaste | $0.17 |
| Colgate Baking Soda & Peroxide Whitening Toothpaste | $0.62 | Aim Cavity Protection Toothpaste | $0.18 |
| Colgate MaxFresh with Whitening Toothpaste | $0.79 | Arm & Hammer Advance White Toothpaste | $0.67 |
| Colgate Watermelon Burst Toothpaste (for Kids) | $0.87 | Trader Joe's Toothpaste | $0.67 |
| Colgate Total Active Prevention Whitening Toothpaste | $0.98 | Up & Up Whitening Toothpaste | $0.67 |
| Colgate Total Active Prevention Toothpaste | $0.98 | Up & Up Complete Protection Toothpaste | $0.67 |
| Colgate Total Active Prevention Advanced Whitening Toothpaste | $1.57 | | |

157.    As a result of Defendant's deceptive, unfair, and misleading misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, and the overall impression created by the Toothpaste Products' packaging, Defendant was able to generate substantial sales, which allowed Defendant to reap enormous profits from Plaintiffs and similarly situated consumers who paid the purchase price or premium for the Toothpaste Products that were not as advertised.

158.    Plaintiffs and other reasonable consumers would not have purchased the Toothpaste Products or would have paid less for them but for the misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions.

159.    Additionally, Defendant claims that "[e]very single ingredient [it] use[s] is completely safe for you, your family, and the environment" and that it "test[s] each one carefully, at every stage of the product lifecycle."[105] Defendant also claims its products are "[r]esponsibly made."[106] The ingredients are further said to "meet [Defendant's] strict safety standards and all applicable government regulations everywhere they are sold around the world."[107]

160.    Defendant also claims that it is "committed to reduc[ing] [its] environmental impact."[108]

## CLASS ALLEGATIONS

161.    Plaintiffs bring this action individually and on behalf of the following Classes pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (3), and (c)(4):

**Nationwide Class**: All persons who, from the beginning of the applicable statute of limitations period to the present, purchased the Toothpaste Products in the United States for household use, and not for resale (the "Nationwide Class").

**New York Subclass**: All persons who, from the beginning of the applicable statute of limitations period to the present, purchased the Toothpaste Products in New York for household use, and not for resale (the "New York Subclass").

**Minnesota Subclass**: All persons who, from the beginning of the applicable statute of limitations period to the present, purchased the Toothpaste Products in Minnesota for household use, and not for resale (the "Minnesota Subclass").

**Illinois Subclass:**  All persons who, from the beginning of the applicable statute of limitations period to the present, purchased the Toothpaste Products in Illinois for household use, and not for resale (the "Illinois Subclass").

**New Jersey Subclass:**  All persons who, from the beginning of the applicable statute of limitations period to the present, purchased the Toothpaste Products in New Jersey for household use, and not for resale (the "New Jersey Subclass").

---

[105] Science and Innovation: Ingredients, *supra*.

[106] *Id*.

[107] Sustainability: Ingredient Safety Policy, *supra*.

[108] Colgate, *Mission: Environmental Impact*, available at https://www.colgate.com/en-us/mission/environmental-impact (last accessed August 6, 2025).

**Arizona Subclass:** All persons who, from the beginning of the applicable statute of limitations period to the present, purchased the Toothpaste Products in Arizona for household use, and not for resale (the "Arizona Subclass").

**California Subclass:** All persons who, from the beginning of the applicable statute of limitations period to the present, purchased the Toothpaste Products in California for household use, and not for resale (the "California Subclass").

162.    Members of the Nationwide Class and the New York, Minnesota, Illinois, Arizona, New Jersey, and California Subclasses are sometimes, where appropriate, referred to herein collectively as "Class Members" or the "Classes."

163.    Excluded from the Classes are Defendant, any of Defendant's parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, or co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

164.    This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation, and the Class Members are easily ascertainable.

165.    **Numerosity**: The Class Members are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to the parties and Court.

166.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the other Class Members, and those questions predominate over any questions that may affect individual Class Members. Questions of law and fact common to Plaintiffs and the Classes include, but are not limited to, the following:

a.  whether the misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, were misleading;

b.  whether the misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, were unfair,

c.  whether the misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, were material to a reasonable consumer;

d.  whether Defendant had knowledge that the misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, were material, false, deceptive, and misleading;

e.  whether Defendant owed a duty to disclose;

f.  whether Defendant knew or should have known that the Toothpaste Products contained or may contain significant levels of heavy metals, including lead and/or mercury;

g.  whether Defendant failed to disclose that the Toothpaste Products contained or may contain significant levels of heavy metals, including lead and/or mercury;

h.  whether Defendant had exclusive knowledge of the Omissions;

i.  whether Plaintiffs could have reasonably discovered the Omissions;

j.  whether Defendant violated New York state laws;

k.  whether Defendant violated Minnesota state laws;

l.  whether Defendant violated Illinois state laws;

m.  whether Defendant violated Arizona state laws;

n.  whether Defendant violated New Jersey state laws;

o.  whether Defendant violated California state laws;

p.  whether Defendant engaged in unfair trade practices;

q.  whether Defendant engaged in false advertising;

r.  whether Defendant made fraudulent omissions;

s.  whether Defendant made fraudulent misrepresentations by omissions;

t.  whether Plaintiffs and the Class Members are entitled to actual, statutory, and punitive damages; and

u.  whether Plaintiffs and the Class Members are entitled to declaratory and injunctive relief.

167.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of all the Class Members. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

168.    **Typicality**: Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and the Class Members sustained damages as a result of Defendant's uniform wrongful conduct during transactions with them.

169.    **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Classes, and there are no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class Members and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the Class Members.

170.    **Risks of Prosecuting Separate Actions**: This case is appropriate for certification because prosecution of separate actions would risk either inconsistent adjudications which would

establish incompatible standards of conduct for Defendant or would be dispositive of the interests of members of the Classes.

171.    **Policies Generally Applicable to the Classes**: This case is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Plaintiffs and Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's practices challenged herein apply to and affect the Class Members uniformly, and Plaintiffs' challenge to those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on individual facts or law applicable only to Plaintiffs.

172.    **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class Members. The injuries suffered by each Class Member are relatively small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct. Absent a class action, it would be virtually impossible for the Class Members to obtain effective relief from Defendant. Even if Class Members could sustain individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties, including the Court, and would require duplicative consideration of the common legal and factual issues presented here. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court.

**COUNT ONE**
**Violations of New York's Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349**
**Against Defendant**
**(On Behalf of Plaintiffs Rashed and Triesch and the New York Subclass)**

173.    Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

174.    New York General Business Law ("GBL") section 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

175.    In its advertising and sale of goods throughout New York, Defendant conducts business and trade within the meaning of GBL section 349.

176.    Defendant violated GBL section 349 by deceptively and misleadingly omitting that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury.

177.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, active concealment, and other deceptive conduct described herein, intentionally marketed that the Toothpaste Products were of a particular standard, grade, or quality, and suitable for use when they in fact contained (or had a material risk of containing) heavy metals, including lead and mercury.

178.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, active concealment, and other deceptive conduct described herein, were directed at the consumer public at-large as they repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

179.    The facts concealed or not disclosed by Defendant were material in that Plaintiff and the New York Subclass, and other reasonable consumers, would have considered them in deciding whether to purchase the Toothpaste Products. Had Plaintiffs and members of the New

York Subclass known the Toothpaste Products did not have the quality, ingredients, standards, and suitability for use as advertised by Defendant and contained (or had a material risk of containing) heavy metals, including lead and mercury, they would not have purchased the Toothpaste Products or paid a premium price.

180.    Defendant charged, and Plaintiffs and the New York Subclass purchased the Toothpaste Products and paid, a premium for the Toothpaste Products despite the availability of comparable, lesser-priced toothpaste products from other toothpaste manufacturers.

181.    Defendant alone possessed the information that was material to Plaintiffs and the New York Subclass and failed to disclose such material information to consumers.

182.    Defendant has engaged and continues to engage in deceptive conduct in violation of GBL section 349.

183.    The misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, active concealment, and other deceptive conduct describe herein, caused Plaintiffs and the New York Subclass to suffer injury in the form of actual damages when they purchased the Toothpaste Products that were worth less than the price paid and that they would not have purchased at all had they known the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury.

184.    Defendant intended for Plaintiffs and the New York Subclass to rely on its misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, active concealment, and other deceptive conduct described herein, regarding the Toothpaste Products' quality, ingredients, standards, and suitability for use when purchasing the Toothpaste Products, unaware of the undisclosed material facts.

185.    As a direct and proximate result of these violations, Plaintiffs, the New York Subclass, and other reasonable consumers have been harmed, and that harm will continue unless Defendant is enjoined from further omitting the true quality, ingredients, standards, and suitability for use of the Toothpaste Products.

186.    Pursuant to GBL sections 349(h) and 350-D, Plaintiffs and the New York Subclass seek injunctive relief, declaratory relief, full refund, compensatory and punitive damages, actual damages or $50 (whichever is greater), statutory and treble damages, and attorneys' fees.

## COUNT TWO
### Violations of New York False Advertising Law, N.Y. Gen. Bus. Law § 350
### (On Behalf of Plaintiffs Rashed and Triesch and the New York Subclass)

187.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

188.    New York General Business Law ("GBL") section 350 prohibits false advertising in the conduct of any business, trade, or commerce.

189.    Pursuant to GBL section 350, false advertising is defined as "advertising, including labeling, or a commodity… if such advertising is misleading in a material respect. … [considering] representations made by statement, word [or] design [and] the extent to which the advertising fails to reveal facts material in the light of such representations."

190.    Defendant knew or should have known the Toothpaste Products did not have the quality, ingredients, standards, and suitability for use as described above because they contained (or had a material risk of containing) undisclosed levels of heavy metals, including lead and mercury.

191.    Defendant purposely misrepresented, actively concealed, and did not disclose material facts regarding the presence of heavy metals, including lead and mercury, to consumers, such as Plaintiffs and the New York Subclass.

192.    The facts concealed or not disclosed by Defendant were material in that Plaintiffs, the New York Subclass, and other reasonable consumers would have considered them when deciding whether to purchase the Toothpaste Products. Had Plaintiffs and members of the New York Subclass known the Toothpaste Products did not have the quality, ingredients, and standards as advertised by Defendant and contained (or had a material risk of containing) heavy metals, including lead and mercury, they would not have purchased the Toothpaste Products or paid a premium price.

193.    Defendant charged, and Plaintiffs and the New York Subclass purchased the Toothpaste Products and paid, a premium price for the Toothpaste Products despite the availability of comparable, lesser-priced toothpaste products from other toothpaste manufacturers.

194.    Defendant's conduct caused Plaintiffs and the New York Subclass to suffer actual damages when they purchased the Toothpaste Products that were worth less than the price paid and that they would not have purchased at all had they known the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury.

195.    As a direct and proximate result of Defendant's violation of GBL section 350, Plaintiffs and the New York Subclass have been injured, and that harm will continue unless Defendant is enjoined from further omitting the true quality, ingredients, standards, and suitability of its Toothpaste Products, including but not limited to the presence of heavy metals, including lead and mercury.

196.    Pursuant to GBL section 350-D, Plaintiffs and the New York Subclass seek injunctive relief, declaratory relief, full refund, actual and punitive damages or $500 (whichever is greater), statutory damages of three times the actual damages (up to $10,000), and attorneys' fees.

**COUNT THREE**
**Violations of Minnesota Unlawful Trade Practices Act, Minn. Stat. §325D.13, *et seq*.,**
**(On Behalf of Plaintiff Brower and the Minnesota Subclass)**

197.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

198.    Defendant is a "person" within the meaning of the Minnesota Unlawful Trade Practices Act ("MUTPA").

199.    Defendant violated the MUTPA by knowingly failing to disclose the Omissions.

200.    Defendant knew or should have known the Toothpaste Products and their ingredients were not of the true quality advertised because they contained (or had a material risk of containing) heavy metals, including lead and mercury.

201.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, active concealment, and other deceptive conduct described herein were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and the Minnesota Subclass with respect to the Toothpaste Products' quality, ingredients, standards, and suitability for use.

202.    Defendant intended for Plaintiff and the Minnesota Subclass to rely on its misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, concealment, implied warranties, and/or deceptions regarding the Toothpaste Products' quality, ingredients, standards, and suitability for use.

203.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, active concealment, and other deceptive conduct described herein occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the consuming public.

204.    Defendant was under a duty to disclose the Omissions because Defendant undertook the disclosure of information about the Toothpaste Products on the Toothpaste Products' packaging.

205.    Defendant failed to discharge its duty to disclose the Omissions.

206.    The facts misrepresented, actively concealed, omitted, or not disclosed by Defendant were material in that Plaintiff, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Toothpaste Products. Had Plaintiff and the Minnesota Subclass known the Toothpaste Products did not have the quality advertised by Defendant, they would not have purchased the Toothpaste Products or paid the premium price.

207.    Defendant charged, and Plaintiff and the Minnesota Subclass members purchased the Toothpaste Products and paid, a premium for the Toothpaste Products despite the availability of comparable, lesser-priced toothpaste products from other toothpaste manufacturers.

208.    Defendant's unlawful conduct is continuing, with no indication that it intends to cease this fraudulent course of conduct.

209.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Minnesota Subclass suffered actual damages by: (1) paying a premium price for the Toothpaste Products they reasonably believed did not contain (or have a material risk of containing) heavy metals, including lead and mercury; (2) purchasing the Toothpaste Products they would not have

66

purchased had the Omissions been disclosed; and/or (3) receiving the Toothpaste Products that were worthless because they contained or risked containing heavy metals, including lead and mercury.

210.    Plaintiff and the members of the Minnesota Subclass would not have purchased the Toothpaste Products at all had they known that Toothpaste Products do not conform to the packaging.

211.    Pursuant to Minnesota Statute sections 8.31, subdivision 3a, and 325D.15, Plaintiff and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the MUTPA.

**COUNT FOUR**
**Violations of Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.44, *et seq*., (On Behalf of Plaintiff Brower and the Minnesota Subclass)**

212.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

213.    Defendant is a "person" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA").

214.    Defendant willingly engaged in deceptive trade practices, in violation of the MUDTPA, by failing to disclose the Omissions.

215.    Defendant knew or should have known the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury.

216.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, active concealment, and other deceptive conduct described herein were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and the

Minnesota Subclass with respect to the Toothpaste Products' quality, ingredients, standards, and suitability for use.

217.    Defendant intended that Plaintiff and the Minnesota Subclass would rely on its misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, concealment, and/or deceptions regarding the Toothpaste Products' quality, ingredients, standards, and suitability for use.

218.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, active concealment, and other deceptive conduct described herein occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the consuming public.

219.    The facts concealed or not disclosed by Defendant were material facts in that Plaintiff, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Toothpaste Products. Had Plaintiff and the Minnesota Subclass known the Toothpaste Products did not have the quality advertised by Defendant, they would not have purchased the Toothpaste Products or paid a premium price.

220.    Defendant charged, and Plaintiff and the Minnesota Subclass members purchased the Toothpaste Products and paid, a premium price for the Toothpaste Products despite the availability of comparable, lesser-priced toothpaste products from other toothpaste manufacturers.

221.    Defendant intended that Plaintiff and the Minnesota Subclass would rely on Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, active concealment, and other deceptive conduct described herein when purchasing the Toothpaste Products, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

222.    Defendant's unlawful conduct is continuing, with no indication it intends to cease this fraudulent course of conduct.

223.    Defendant was under a duty to disclose the Omissions because Defendant undertook the disclosure of information about the Toothpaste Products on the Toothpaste Products' packaging.

224.    Defendant failed to discharge its duty to disclose the Omissions about the Toothpaste Products.

225.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Minnesota Subclass suffered actual damages by: (1) paying a premium price for Products they reasonably believed did not contain (or have a material risk of containing) heavy metals, including lead and mercury; (2) purchasing Toothpaste Products they would not have purchased had Defendant's Omissions been disclosed; and/or (3) receiving Toothpaste Products that were worthless because they contained or risked containing heavy metals, including lead and mercury.

226.    Plaintiff and the members of the Minnesota Subclass would not have purchased the Toothpaste Products at all had they known of the Omissions.

227.    Pursuant to Minnesota Statute sections 8.31, subdivision 3a, and 325D.45, Plaintiff and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MUDTPA.

## <u>COUNT FIVE</u>
### Violations of Minnesota False Statement in Advertising Act, Minn. Stat. §325F.67, *et seq*., (On Behalf of Plaintiff Brower and the Minnesota Subclass)

228.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

229.    Plaintiff and the Minnesota Subclass purchased "goods," specifically the Toothpaste Products discussed herein, and are a "person" within the meaning of the False Statement in Advertising Act ("FSAA").

230.    Plaintiff and the Minnesota Subclass purchased the Toothpaste Products because of the misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, asserted on the packaging that were made, published, disseminated, circulated, and placed before the public by Defendant.

231.    By engaging in the conduct as described herein, Defendant continues to violate Minnesota Statute section 325F.67.

232.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, active concealment, and use of other deceptive business practices described herein, include, by way of example, representations regarding the Toothpaste Products' quality, ingredients, standards, and suitability for use.

233.    Defendant knew or should have known the Toothpaste Products did not have the quality, ingredients, standards, and suitability for use described above because they contained (or materially risked) undisclosed heavy metals, including lead and mercury.

234.    The misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and the Minnesota Subclass with respect to the Toothpaste Products' quality, ingredients, standards, and suitability for use.

235.    Defendant's conduct, such as the misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, described herein occurred repeatedly in

Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

236.    The    misrepresentations    and    partial    misrepresentations,    including    the Misrepresentations Omissions, were made to customers in Minnesota, including Plaintiff and the Minnesota Subclass, thus the cause of action serves the public benefit of informing Minnesota consumers that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury.

237.    The facts concealed, omitted, or not disclosed by Defendant were material in that Plaintiff, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Toothpaste Products. Had Plaintiff and the Minnesota Subclass known the Toothpaste Products did not have the quality as advertised by Defendant, they would not have purchased the Toothpaste Products or paid the premium price.

238.    Defendant charged, and Plaintiff and the Minnesota Subclass members purchased the Toothpaste Products and paid, a premium price for the Toothpaste Products despite the availability of comparable, lesser-priced toothpaste products from other toothpaste manufacturers.

239.    Defendant intended that Plaintiff and the Minnesota Subclass would rely on the deception by purchasing the Toothpaste Products, unaware of the misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions and other undisclosed material facts. This conduct constitutes consumer fraud.

240.    Defendant's unlawful conduct is continuing, with no indication that it intends to cease this fraudulent course of conduct.

241.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Minnesota Subclass suffered actual damages by: (1) paying a premium price for the Toothpaste

Products they reasonably believed did not contain (or have a material risk of containing) heavy metals, including lead and mercury; (2) purchasing the Toothpaste Products they would not have purchased had Defendant's Omissions been disclosed; and/or (3) receiving the Toothpaste Products that were worthless because they contained or risked containing heavy metals, including lead and mercury.

242.    Plaintiff and the members of the Minnesota Subclass would not have purchased the Toothpaste Products at all had they known of the presence or material risk of heavy metals, including lead and mercury.

243.    Pursuant to Minnesota Statute sections 8.31, subdivision 3a, and 325F.67, Plaintiff and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the FSAA.

## <u>COUNT SIX</u>
### Violations of Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §325F.69, *et seq*., (On Behalf of Plaintiff Brower and the Minnesota Subclass)

244.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

245.    Plaintiff at all times relevant hereto was a citizen of the State of Minnesota.

246.    Defendant is a "person" within the meaning of the Minnesota Prevention of Consumer Fraud Act ("MPCFA").

247.    The misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, active concealment, and other deceptive conduct described herein were made in connection with the sale of the Toothpaste Products to Plaintiff and the Minnesota Subclass.

248.    Defendant knowingly acted, used, and employed fraud, false pretenses, and deceptive practices in connection with the sale of the Toothpaste Products. Specifically, Defendant failed to disclose the Toothpaste Products contained levels or material risk of heavy metals, including lead and mercury.

249.    Defendant knew or should have known the Toothpaste Products did not have the quality reasonable consumers expected because they included undisclosed (or the material risk of) significant levels of lead and mercury, that do not conform to the packaging. Defendant intended for Plaintiff and the Minnesota Subclass to rely on the Toothpaste Products' packaging in deciding whether to purchase the Toothpaste Products.

250.    Defendant's unfair or deceptive acts or practices were likely to deceive reasonable consumers about the Toothpaste Products' quality, ingredients, standards, and suitability for use, and, by extension, the true value of the Toothpaste Products.

251.    Plaintiff and the Minnesota Subclass relied on, and were in fact deceived by, Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions, active concealment, and other deceptive conduct described herein with respect to the Toothpaste Products' quality, ingredients, standards, and suitability for use in deciding to purchase them over competitors' toothpaste products.

252.    The facts concealed, omitted, or not disclosed by Defendant were material in that Plaintiff, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Toothpaste Products. Had Plaintiff and the Minnesota Subclass known the Toothpaste Products did not have the quality advertised by Defendant, they would not have purchased the Toothpaste Products or paid the premium price.

253.    Defendant charged, and Plaintiff and the Minnesota Subclass members purchased the Toothpaste Products and paid, a premium price for the Toothpaste Products despite the availability of comparable, lesser-priced toothpaste products from other toothpaste manufacturers.

254.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, were made to customers in Minnesota, including Plaintiff and the Minnesota Subclass, thus the cause of action serves the public benefit of informing Minnesota consumers that the Toothpaste Products contained (or had a material risk of containing) significant levels of lead and mercury.

255.    Defendant's unlawful conduct is continuing, with no indication that it intends to cease this fraudulent course of conduct.

256.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Minnesota Subclass suffered actual damages by: (1) paying a premium price for the Toothpaste Products they reasonably believed did not contain (or have a material risk of containing) heavy metals, including lead and mercury; (2) purchasing the Toothpaste Products they would not have purchased had Defendant's Omissions been disclosed; and/or (3) receiving the Toothpaste Products that were worthless because they contained or risked containing heavy metals, including lead and mercury.

257.    Plaintiff and the members of the Minnesota Subclass would not have purchased the Toothpaste Products at all had they known of the presence of heavy metals, including lead and mercury.

258.    Pursuant to Minnesota Statute sections 8.31, subdivision 3a, and 325F.69, Plaintiff and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees,

costs, and any other just and proper relief available thereunder for Defendant's violations of the MPCFA.

## COUNT SEVEN
### Violations of Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. §505/1, *et seq.*, (On Behalf of Plaintiffs Vinezeano and Smith and the Illinois Subclass)

259.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

260.    Plaintiffs and each of the members of the Illinois Subclass are "persons" within the meaning of 815 Ill. Comp. Stat. §505/1(c).

261.    Defendant is a "person" within the meaning of 815 Ill. Comp. Stat. §505/1(c).

262.    The Toothpaste Products are "merchandise" within the meaning of 815 Ill. Comp. Stat. §505/1(b).

263.    Plaintiffs and each Illinois Subclass Member's purchase of Defendant's Toothpaste Products constituted a sale of merchandise within the meaning of 815 Ill. Comp. Stat. §505/1(d).

264.    The conduct described herein constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §505/1, *et seq.* ("ICFA").

265.    Defendant engaged in a deceptive, unfair, and misleading act or practice in violation of ICFA by knowingly concealing, omitting, or failing to disclose the Toothpaste Products' true quality, ingredients, and suitability for use.

266.    Defendant's deceptive acts and practices are continuing.

267.    Defendant intended for Plaintiffs and the Illinois Subclass members to rely on and accept as true the Toothpaste Products' misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, and overall impression of the packaging in deciding whether to purchase the Toothpaste Products, and at what price.

268.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein were likely to deceive consumers with respect to the Toothpaste Products' quality, ingredients, and suitability for use.

269.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein were likely to cause consumers to purchase and/or overpay for the Toothpaste Products.

270.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein occurred before Plaintiffs and the Illinois Subclass decided to purchase the Toothpaste Products.

271.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein did in fact deceive Plaintiffs and the Illinois Subclass members with respect to the Toothpaste Products' quality, ingredients, and suitability for use.

272.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein did in fact deceive and cause Plaintiffs and the Illinois Subclass to purchase and overpay for the Toothpaste Products.

273.    Defendant charged, and Plaintiffs and the Illinois Subclass members purchased the Toothpaste Products and paid, a premium price for the Toothpaste Products despite the availability of comparable, lesser-priced toothpaste products from other toothpaste manufacturers.

274.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein repeatedly occurred in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

275.    The facts concealed, omitted, or not disclosed by Defendant that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury, that do not conform to the packaging are material facts because Plaintiff, the Illinois Subclass, and any reasonable consumer would have considered those facts important in deciding whether to purchase the Toothpaste Products, and at what price.

276.    If Plaintiff and the Illinois Subclass had known that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury, they would not have paid the price premium they paid for the Toothpaste Products.

277.    If Plaintiff and the Illinois Subclass had known that the Toothpaste Products did not in fact match the quality and ingredients described above, they would not have purchased the Toothpaste Products at all.

278.    As a result of Defendant's conduct, Plaintiff and the Illinois Subclass members have suffered actual damages by: (1) paying a premium price for Toothpaste Products they reasonably believed did not contain (or had a material risk of containing) heavy metals, including lead and mercury; (2) purchasing Toothpaste Products they would not have purchased had Defendant's Omissions been disclosed; and/or (3) receiving Toothpaste Products that were worthless because they contain or risk containing heavy metals, including lead and mercury.

279.    As a result of Defendant's conduct, Plaintiff and the Illinois Subclass have suffered actual damages, in that they purchased Toothpaste Products that they would not have purchased at

all if they had knowledge of the misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein.

280.    As a direct and proximate result of the deceptive, misleading, unfair, and unconscionable practices of the Defendant set forth above, Plaintiff and the Illinois Subclass members are entitled to actual damages, compensatory damages, penalties, attorneys' fees, and costs, as set forth in Section 10a of the ICFA.

281.    Defendant's deceptive, misleading, unfair, and unconscionable practices set forth above were done willfully, wantonly, and maliciously, entitling Plaintiff and the Illinois Subclass to an award of punitive damages.

**<u>COUNT EIGHT</u>**
**Violations of Arizona Consumer Fraud Act, Ariz. Rev. Stat. §44-1521, *et seq*.,**
**(On behalf of Plaintiff Gauna and the Arizona Subclass)**

282.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

283.    Plaintiff, each of the Arizona Subclass members, and Defendant are "persons" within the meaning of Arizona Revised Statute section 44-1521.

284.    The Toothpaste Products are "merchandise" within the meaning of Arizona Revised Statute section 44-1521.

285.    Plaintiff and each Arizona Subclass Member's purchase of Defendant's Toothpaste Products constituted a sale of merchandise within the meaning of Arizona Revised Statute section 44-1521.

286.    The conduct described herein constitutes a violation of the Arizona Consumer Fraud Act, Arizona Revised Statute section 44-1521, *et seq*. ("ACFA").

287.    Defendant engaged in deceptive, unfair, and misleading acts or practices in violation of the ACFA by knowingly concealing, omitting, or failing to disclose the Toothpaste Products' true quality, ingredients, and suitability for use.

288.    Defendant's acts or practices are continuing.

289.    Defendant intended for Plaintiff and the Arizona Subclass members to rely on and accept as true the Products' packaging and the misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, in deciding whether to purchase the Toothpaste Products, and at what price.

290.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein were likely to deceive consumers with respect to the Toothpaste Products' quality, ingredients, and suitability for use.

291.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein were likely to cause consumers to purchase and/or overpay for the Toothpaste Products.

292.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein occurred before Plaintiffs and the Arizona Subclass decided to purchase the Toothpaste Products.

293.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and

misleading conduct described herein did in fact deceive Plaintiff and the Arizona Subclass members with respect to the Toothpaste Products' quality, ingredients, and suitability for use.

294.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein did in fact deceive and cause Plaintiff and the Arizona Subclass to purchase and overpay for the Toothpaste Products.

295.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein repeatedly occurred in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

296.    The facts concealed, omitted, or not disclosed by Defendant that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury, that do not conform to the packaging are material facts because Plaintiff, the Arizona Subclass, and any reasonable consumer would have considered those facts important in deciding whether to purchase the Toothpaste Products, and at what price.

297.    If Plaintiff and the Arizona Subclass had known that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury, they would not have purchased or paid the price premium they paid for the Toothpaste Products.

298.    Defendant charged, and Plaintiff and Arizona Subclass members purchased the Toothpaste Products and paid, a premium price for the Toothpaste Products despite the availability of comparable, lesser-priced toothpaste products from other toothpaste manufacturers.

299.    If Plaintiff and the Arizona Subclass had known that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury, that do not conform to the packaging, they would not have purchased the Toothpaste Products at all.

300.    As a result of Defendant's conduct, Plaintiff and the Arizona Subclass members have suffered actual damages by: (1) paying a premium price for Toothpaste Products they reasonably believed did not contain (or had a material risk of containing) heavy metals, including lead and mercury; (2) purchasing Toothpaste Products they would not have purchased had Defendant's Omissions been disclosed; and/or (3) receiving Toothpaste Products that were worthless because they contain or risk containing heavy metals, including lead and mercury.

301.    As a direct and proximate result of the deceptive, misleading, unfair, and unconscionable practices of the Defendant set forth above, Plaintiff and the Arizona Subclass members seek monetary relief against Defendant in an amount to be determined at trial, as well as punitive damages because of Defendant's willful violation of the ACFA.

302.    Plaintiff also seeks an order enjoining Defendant's deceptive, misleading, unfair, and unconscionable acts or practices, attorneys' fees, and any other just and proper relief available under the ACFA.

## COUNT NINE
**Violations of New Jersey Consumer Fraud Act, N.J. Rev. Stat. § 56:8-1, *et seq*.,**
**(On behalf of Plaintiff Grodnick and the New Jersey Subclass)**

303.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

304.    Plaintiff, each of the New Jersey Subclass members, and Defendant are "persons" within the meaning of New Jersey Revised Statute section 56:8-1(d).

305.    The Toothpaste Products are "merchandise" within the meaning of New Jersey Revised Statute section 56:8-1(c).

306.    Plaintiff and each New Jersey Subclass Member's purchase of Defendant's Toothpaste Products constituted a sale of merchandise within the meaning of New Jersey Revised Statute section 56:8-1(e).

307.    The conduct described herein constitutes a violation of the New Jersey Consumer Fraud Act, New Jersey Revised Statute section 56:8-1, *et seq*. ("NJCFA").

308.    Defendant engaged in a deceptive, unfair, and misleading act or practice in violation of NJCFA by knowingly concealing, omitting, or failing to disclose the Toothpaste Products' true quality, ingredients, and suitability for use.

309.    Defendant's deceptive acts or practices are continuing.

310.    Defendant intended for Plaintiff and the New Jersey Subclass members to rely on and accept as true the Products' packaging and misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, in deciding whether to purchase the Toothpaste Products, and at what price.

311.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein were likely to deceive consumers with respect to the Toothpaste Products' quality, ingredients, and suitability for use.

312.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein were likely to cause consumers to purchase and/or overpay for the Toothpaste Products.

313.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and

misleading conduct described herein occurred before Plaintiffs and the New Jersey Subclass decided to purchase the Toothpaste Products.

314.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein did in fact deceive Plaintiff and the New Jersey Subclass members with respect to the Toothpaste Products' quality, ingredients, and suitability for use.

315.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein did in fact deceive and cause Plaintiff and the New Jersey Subclass to purchase and overpay for the Toothpaste Products.

316.    Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein repeatedly occurred in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

317.    The facts concealed, omitted, or not disclosed by Defendant that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury, that do not conform to the packaging are material facts because Plaintiff, the New Jersey Subclass, and any reasonable consumer would have considered those facts important in deciding whether to purchase the Toothpaste Products, and at what price.

318.    If Plaintiff and the New Jersey Subclass had known that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury, they would not have paid the price premium they paid for the Toothpaste Products.

319.    Defendant charged, and Plaintiff and the New Jersey Subclass members purchased the Toothpaste Products and paid, a premium price for the Toothpaste Products despite the availability of comparable, lesser-priced toothpaste products from other toothpaste manufacturers.

320.    If Plaintiff and the New Jersey Subclass had known that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury, that do not conform to the packaging, they would not have purchased the Toothpaste Products at all.

321.    As a result of Defendant's conduct, Plaintiff and the New Jersey Subclass members have suffered actual damages by: (1) paying a premium price for Toothpaste Products they reasonably believed did not contain (or had a material risk of containing) heavy metals, including lead and mercury; (2) purchasing Toothpaste Products they would not have purchased had Defendant's Omissions been disclosed; and/or (3) receiving Toothpaste Products that were worthless because they contain or risk containing heavy metals, including lead and mercury.

322.    As a direct and proximate result of the deceptive, misleading, unfair, and unconscionable practices of the Defendant set forth above, Plaintiff and the New Jersey Subclass members seek monetary relief against Defendant in an amount to be determined at trial, as well as punitive damages because of Defendant's willful violation of the NJCFA.

323.    Plaintiff also seeks an order enjoining Defendant's deceptive, misleading, unfair, and unconscionable acts or practices, attorneys' fees, and any other just and proper relief available under the NJCFA.

### COUNT TEN
**Violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.,**
**(On behalf of Plaintiffs Boyd, Scott, and Peralta and the California Subclass)**

324.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

325.    Plaintiffs and each member of the California Subclass is a "consumer," as that term is defined in California Civil Code section 1761(d).

326.    The Toothpaste Products are "goods," as that term is defined in California Civil Code section 1761(a).

327.    Defendant is a "person" as that term is defined in California Civil Code section 1761(c).

328.    Plaintiffs' and each California Subclass Member's purchases of the Toothpaste Products constituted a "transaction" as that term is defined in California Civil Code section 1761(e).

329.    Defendant's conduct alleged herein violates the following provisions of California's Consumers Legal Remedies Act ("CLRA"):

a)  California Civil Code section 1770(a)(5), by failing to make any mention of the presence (or risk) of heavy metals in the Toothpaste Products;

b)  California Civil Code section 1770(a)(7), by knowingly, recklessly, and/or representing that the Toothpaste Products were of a particular standard, quality, or grade, when they were of another;

c)  California Civil Code section 1770(a)(9), by knowingly, recklessly, and/or intentionally advertising the Toothpaste Products with intent not to sell them as advertised; and

d)  California Civil Code section 1770(a)(16), by representing that the Toothpaste Products have been supplied in accordance with previous statements when they have not.

330.    Defendant profited from the sale of the misleadingly, falsely, deceptively, and unlawfully advertised Toothpaste Products to unsuspecting consumers. Specifically, Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations, Omissions,

active concealment, and other deceptive, unfair, and misleading conduct described herein misleadingly marketed to reasonable consumers that the Toothpaste Products did not contain or risk containing heavy metals.

331.    Defendant made both misrepresentations and partial misrepresentations, including the Misrepresentations, that required it to fully disclose the presence and material risk of heavy metals in the Toothpaste Products.

332.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

333.    On June 26, 2025, Plaintiff Boyd sent Defendant a letter on behalf of himself and all other United States citizens, including the California Subclass, who purchased the Toothpaste Products demanding that Defendant rectify the problems stated herein. Defendant has failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within the prescribed thirty-day time period for written notice pursuant to California Civil Code section 1782. In accordance with California Civil Code section 1782(b), Plaintiff Boyd and the California Subclass are entitled, under California Civil Code section 17880, to recover and obtain the following relief for Defendant's violations of California Civil Code sections 1770(5), (7), (9), and (16):

      a.    Actual damages under California Civil Code section 1780(a)(1);

      b.    Restitution of property under California Civil Code section 1780(a)(3);

      c.    Punitive damages under California Civil Code section 1780(a)(4); and

      d.    Any other relief the Court deems proper under California Civil Code section 1780(a)(5).

334.    Plaintiffs and the California Subclass seek injunctive relief as permitted under California Civil Code section 1780(a)(2).

335.    As a direct and proximate result of these violations, Plaintiffs and the California Subclass have been harmed, and that harm will continue unless Defendant is enjoined from using the Misrepresentations, partial misrepresentations, Omissions, concealment, and other deceptive conduct in any manner in connection with the advertising and sale of the Toothpaste Products.

336.    Plaintiffs and the California Subclass seek an award of attorneys' fees pursuant to, *inter alia*, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

### <u>COUNT ELEVEN</u>
**Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.,**
**(On behalf of Plaintiffs Boyd, Scott, and Peralta and the California Subclass)**

337.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

338.    The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

*Fraudulent*

339.    A statement or practice is fraudulent under the UCL if it is likely to deceive a significant portion of the public, applying an objective reasonable consumer test.

340.    As set forth herein, Defendant's material misrepresentations and partial statements, including the Misrepresentations, related to the Toothpaste Products are likely to deceive reasonable consumers and the public. Specifically, Defendant's misrepresentations and partial misrepresentations, including the Misrepresentations, and Omissions, active concealment, and other deceptive, unfair, and misleading conduct described herein misleadingly marketed to reasonable consumers that the Toothpaste Products did not contain or risk containing heavy metals.

*Unlawful*

341.    As alleged herein, Defendant has advertised the Toothpaste Products with misrepresentations and partial misrepresentations, including the Misrepresentations, such that Defendant's actions violate at least the CLRA, California Business & Professions Code sections 1750, *et seq.* and any other applicable laws described herein.

*Unfair*

342.    Defendant's conduct with respect to the packaging, advertising, marketing, and sale of the Toothpaste Products was unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

343.    Defendant's conduct with respect to the packaging, advertising, marketing, and sale of the Toothpaste Products is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to the CLRA.

344.    Defendant's conduct with respect to the packaging, advertising, marketing, and sale of the Toothpaste Products is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers themselves can reasonably avoid. Specifically, the increase in profits obtained by Defendant through the misleading packaging does not outweigh the harm to Plaintiffs and members of the California Subclass who were deceived into purchasing the Toothpaste Products unaware that they contain heavy metals and are of the type that can increase the risk of detriment to the health of children and adults. Consumers could not have reasonably avoided the harm because this would have required that they conduct their own research into the heavy metal content of the Toothpaste Products, which could only feasibly be revealed by laboratory testing, which is not a reasonable

expectation. Further, the harm could have easily been avoided by Defendant as the costs would be minimal to indicate to consumers that the Toothpaste Products contain heavy metals or that these toxins can accumulate over time in the body to the point where detrimental health effects can occur.

345.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Toothpaste Products to unsuspecting consumers.

346.    Plaintiffs and other members of the California Subclass are likely to continue to be damaged by Defendant's unlawful, unfair, and/or fraudulent acts or practices because Defendant continues to disseminate misleading information. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

347.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other members of the California Subclass. Plaintiffs suffered injury in fact as a result of Defendant's unlawful conduct.

348.    Defendant charged, and Plaintiffs and California Subclass members purchased the Toothpaste Products and paid, a premium price for the Toothpaste Products despite the availability of comparable, lesser-priced toothpaste products from other toothpaste manufacturers.

349.    In accordance with California Business & Professions Code section 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices.

350.    Plaintiffs also seek an order for the restitution of all monies from the sale of the Toothpaste Products that were unjustly acquired through acts of unlawful competition.

351.    Because Plaintiffs' claims under the "unfair" prong of the UCL sweep more broadly than her claims under the CLRA or UCL's "fraudulent" prong, Plaintiffs' legal remedies are inadequate to fully compensate Plaintiffs for all of Defendant's behavior.

**COUNT TWELVE**
**Fraud by Omission**
**(On behalf of Plaintiffs and the Classes)**

352.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

353.    Plaintiffs and the Class Members and Defendant acted within the context of a business transaction when Plaintiffs and the Class Members purchased the Toothpaste Products for household use, and not for resale.

354.    Plaintiffs and the Class Members were ordinary non-business consumers.

355.    Defendant knew or should have known the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury.

356.    Defendant knowingly concealed from and failed to disclose to Plaintiffs and the Class members, that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury.

357.    As a trusted oral hygiene manufacturer, Defendant is in a special position of trust upon which consumers rely.

358.    Defendant was under a duty to disclose to Plaintiffs and the members of the Class the true quality, ingredients, standards, and suitability for use of the Toothpaste Products because:

   a.    Defendant was in a superior position to know the true state of facts about its Toothpaste Products;

   b.    Defendant was in a superior position to know the Toothpaste Products' actual ingredients, characteristics, standards, and suitability for regular household use by consumers; and

c.   Defendant knew that Plaintiffs and the members of the Class could not reasonably have been expected to learn or discover that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury, without Defendant disclosing it on the Toothpaste Products' packaging.

359.   Defendant failed to discharge its duty to disclose the presence of heavy metals, including lead and mercury, in its Toothpaste Products.

360.   Defendant actively concealed or failed to disclose facts about the Toothpaste Products' quality, ingredients, standards, and suitability for use and intended that Plaintiffs and the Classes would rely on its Omissions, concealment, and other deceptive conduct described herein regarding the Toothpaste Products' quality, ingredients, standards, and suitability for use when purchasing the Toothpaste Products, unaware of the undisclosed material facts.

361.   Defendant's Omissions, concealment, and other deceptive conduct described herein were made to deceive reasonable consumers about the Toothpaste Products' quality, ingredients, standards, and suitability for use. Plaintiffs and the Classes relied on, and were in fact deceived by, Defendant's Omissions, concealment, and other deceptive conduct described herein with respect to the Toothpaste Products' quality, ingredients, standards, and suitability for use.

362.   Defendant knows its customers trust the quality of its products and expect the Toothpaste Products to not have detectable levels of heavy metals, including lead and mercury. Defendant also knows that certain consumers seek out and wish to purchase toothpaste products that do not have detectable levels of contaminants such as heavy metals and that these consumers will pay more for toothpaste products that they believe possess these qualities. Indeed, Defendant has intentionally and knowingly positioned itself in the market as one of the top manufacturers of oral hygiene products, including the Toothpaste Products.

363.    The facts concealed or not disclosed by Defendant were material in that Plaintiffs, the Classes, and other reasonable consumers would have considered them when deciding whether to purchase the Toothpaste Products. Had Plaintiffs and the Classes known the Toothpaste Products did not have the quality, ingredients, standards, and suitability for use as advertised by Defendant and contained (or had a material risk of containing) heavy metals, including lead and mercury, they would not have purchased the Toothpaste Products or paid a premium price.

364.    Defendant charged, and Plaintiffs purchased the Toothpaste Products and paid, a premium price for the Toothpaste Products despite the availability of comparable, lesser-priced toothpaste products from other toothpaste manufacturers.

365.    Defendant knowingly concealed that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury, with the intent to defraud and deceive Plaintiffs and the Classes.

366.    As a direct and proximate result of Defendant's Omissions, concealment, and other deceptive conduct described herein, Plaintiffs and the Classes suffered actual damages in that they purchased Toothpaste Products that were worth less than the price they paid and that they would not have purchased at all had they known the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury.

367.    Plaintiffs and the Classes seek actual damages, injunctive, and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT THIRTEEN**
**Unjust Enrichment**
**(On behalf of Plaintiffs and the Classes)**

368.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

369.    Substantial benefits have been conferred on Defendant by Plaintiffs and the members of the Class through the purchase of the Toothpaste Products. Defendant knowingly and willfully accepted and enjoyed these benefits.

370.    Defendant either knew or should have known that the payments rendered by Plaintiffs were given and received with the expectation that the Toothpaste Products would not contain heavy metals, including lead and mercury. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

371.    Defendant was obligated to disclose the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury, because:

    a.    Defendant had exclusive knowledge that the Toothpaste Products contained (or had a material risk of containing) heavy metals, including lead and mercury; and

    b.    Defendant actively concealed the presence of heavy metals, including lead and mercury, in the Toothpaste Products from Plaintiff and the Classes.

372.    Defendant's acceptance and retention of these benefits of the payments from Plaintiffs and the Classes under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Classes.

373.    Plaintiffs and the Classes are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

374.    Plaintiffs and the Classes seek actual damages, injunctive and declaratory relief, statutory damages, attorneys' fees, costs, and any other just and proper relief available under the laws.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court:

a)    Certify the Classes, and appoint Plaintiffs and their counsel to represent the Classes;

b)    Find that Defendant engaged in unlawful conduct as alleged herein and enjoin Defendant from engaging in such conduct;

c)    Enter a monetary judgment in favor of Plaintiffs and the Classes to compensate them for the injuries suffered, together with pre-judgment and post-judgment interest, punitive damages, and statutory damages and penalties where appropriate;

d)    Require Defendant to rectify all damages caused by its misconduct;

e)    Award Plaintiffs and the Classes reasonable attorneys' fees and costs of suit, as allowed by law; and

f)    Award such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

**Dated:** August 7, 2025                    Respectfully submitted,

*/s  Rebecca Peterson*
Rebecca A. Peterson (*Pro Hac Vice*)
Krista K. Freier
Catherine A. Peterson
GEORGE FELDMAN MCDONALD, PLLC
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (612) 778-9530
Facsimile: (888) 421-4173
E-Mail: rpeterson@4-justice.com
E-Mail: kfreier@4-justice.com
E-Mail: cpeterson@4-justice.com
E-Service: eService@4-justice.com

GEORGE FELDMAN MCDONALD, PLLC
Lori G. Feldman (*Admitted in S.D.N.Y.*)
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
Facsimile: (888) 421-4173
E-Mail: lfeldman@4-justice.com
E-Service: eService@4-justice.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman (*Pro Hac Vice*)
Meredith Simons (*Pro Hac Vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
E-Mail: steve@hbsslaw.com
E-Mail: merediths@hbsslaw.com

WEXLER BOLEY & ELGERSMA LLP
Kenneth A. Wexler (*Pro Hac Vice*)
Kara A. Elgersma (*Pro Hac Vice*)
311 S. Wacker Drive, Suite 5450
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
E-Mail: kaw@wbe-llp.com
E-Mail: kae@wbe-llp.com

JANOVE PLLC
Raphael Janove
500 7th Avenue, 8th Floor
New York, NY 10018
Telephone: (646) 347-3940
E-Mail: raphael@janove.law

MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
Alexander E. Wolf
280 South Beverly Drive, Penthouse
Beverly Hills, CA 90212
Telephone: (872) 365-7060
E-Mail: awolf@milberg.com

MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
Gary M. Klinger
William J. Edelman
227 West Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
E-Mail: gklinger@milberg.com
E-Mail: wedelman@milberg.com

*Attorneys for Plaintiffs and the Proposed Classes*