UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REBECCA BROWER, *et al.*, *on behalf of themselves and all others similarly situated*,

Plaintiffs,

-v-

COLGATE-PALMOTIVE CO.,

Defendant.

25-CV-3348 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs Rebecca Brower, Jamal Rashed, Brian Vinezeano, Amy Toldo Alqadri, Lora Grodnick, John Boyd, Brenda Gauna, Charles Smith, Walter Triesch, Lyn Scott, and Jose Peralta (collectively, "Plaintiffs"), on their own behalf and on behalf of all others similarly situated, bring this Second Amended Class Action Complaint ("SAC") against Defendant Colgate-Palmolive Company ("Colgate").  Colgate moves to dismiss Plaintiffs' SAC in its entirety pursuant to Rules 8(a), 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that follow, Colgate's motion to dismiss is granted in part and denied in part.

I.      **Background**

A.      **Factual Background**

The following factual allegations are taken from the SAC and presumed true for the purpose of resolving Colgate's motion to dismiss.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

Colgate is the largest toothpaste brand in the United States, with over $20 billion in net sales and a gross profit of over $12 billion in 2024.  (ECF No. 37 ("SAC") ¶ 60.)  Plaintiffs allege that Colgate's marketing represents that its toothpaste:  "Protects teeth, tongue, cheeks,

[and] gums"; "Helps Reverse Early Gum Damage"; "Releases Pure Oxygen Bubbles for a Clean, Fresh Sensation"; and is "Responsibly Made." (*Id.* ¶ 130.) Accordingly, Plaintiffs and other reasonable consumers believed that Colgate's various toothpaste products at issue[1] (the "Products") were of a certain quality and suitable for use. (*Id.* ¶ 86.)

However, Plaintiffs allege that the Products contained or risked containing heavy metals, including lead and mercury (*id.* ¶¶ 6-7, 69-71, 90), that are harmful to consumers (*id.* ¶¶ 91-124). According to Plaintiffs, Colgate knew or should have known about the presence of heavy metals in the Products but did not disclose its knowledge to consumers. (*Id.* ¶¶ 58, 137, 144; *see also id.* ¶¶ 81-85.) Moreover, Plaintiffs assert that Colgate did not disclose to consumers that it was not sufficiently or adequately testing the Products or ingredients for heavy metals. (*Id.* ¶ 147.) According to Plaintiffs, Colgate's misrepresentations and omissions were material, and Colgate purposefully hid the true nature of the Products from Plaintiffs and other consumers. (*Id.* ¶¶ 3, 16, 68-89, 128-39.)

### B.    Procedural Background

Plaintiffs commenced this action on April 22, 2025. (ECF No. 1.) On August 7, 2025, Plaintiffs filed the operative complaint asserting a total of thirteen claims on behalf of named Plaintiffs, a putative nationwide class, and putative subclasses in New York, Minnesota, Illinois, New Jersey, Arizona, and California. (*See* SAC.) The SAC alleges eleven state law counts including violations of: (1) New York's deceptive acts and practices, N.Y. Gen. Bus. Law § 349; (2) New York False Advertising Law, N.Y. Gen. Bus. Law § 350; (3) Minnesota's Unlawful

---

[1] The products at issue include: Colgate Watermelon Burst Toothpaste with Fluoride (for Kids), Colgate Total Whitening Toothpaste, Colgate Total Active Prevention Advanced Whitening Toothpaste, Colgate Total Active Prevention Whitening Toothpaste, Colgate Total Active Prevention Toothpaste, Colgate MaxFresh with Whitening Toothpaste, Colgate Triple Action Toothpaste, and Colgate Baking Soda & Peroxide Whitening Toothpaste. (SAC ¶ 59.)

2

Trade Practices Act, Minn. Stat. § 325D.13, *et seq*.; (4) Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, *et seq*.; (5) Minnesota's False Statement in Advertising Act, Minn. Stat. § 325F.67, *et seq*.; (6) Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69, *et seq*.; (7) Illinois's Consumer Fraud Act, 815 Ill. Comp. Stat. § 505/1, *et seq*.; (8) Arizona's Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521; (9) New Jersey's Consumer Fraud Act, N.J. Rev. Stat. § 56:8-1, *et seq*.; (10) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.; and (11) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.  (*See id*.)  Plaintiffs also allege common law fraud by omission and unjust enrichment claims.  (*Id.*)

On September 8, 2025, Colgate filed its motion to dismiss Plaintiffs' SAC (ECF No. 45), along with an accompanying memorandum of law (ECF No. 46 ("Mem.").)  On October 22, 2025, Plaintiffs filed their opposition brief (ECF No. 51 ("Opp."), and Colgate filed its reply on November 21, 2025 (ECF No. 54 ("Repl.").)

II.    **Legal Standards**

A.    **Rule 12(b)(1): Standing**

Under Federal Rule of Civil Procedure 12(b)(1), a claim must be dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Article III of the Constitution makes clear that a district court has power to adjudicate only live "[c]ases" or "[c]ontroversies." *See Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. New York State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021) (quoting U.S. Const. art. III).  That means that a plaintiff must "allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  To establish standing, a "plaintiff must have (1) suffered an injury in fact, (2)

3

that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

A plaintiff bears the burden of establishing its standing by a preponderance of the evidence. *See Makarova*, 201 F.3d at 113. "In assessing the plaintiff's assertion of standing, '[courts] accept as true all material allegations of the complaint[] and . . . construe the complaint in favor of the complaining party.'" *Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.à.r.l*, 790 F.3d 411, 417 (2d Cir. 2015) (quoting *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)). But courts may also consider evidence outside of the pleadings in assessing a Rule 12(b)(1) motion. *Id.* at 417; *Makarova*, 201 F.3d at 113; *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013) ("[U]nder Rule 12(b)(1), [the court is] permitted to rely on non-conclusory, non-hearsay statements outside the pleadings." (citation omitted)).

### B.      Rule 12(b)(6): Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must "accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)) (internal brackets omitted). But the court shall not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right of relief above the speculative level," *Twombly*, 550 U.S. at 555,

4

and "[t]his standard requires that the complaint allege 'more than a sheer possibility that a defendant has acted unlawfully' and more than 'facts that are merely consistent with a defendant's liability,'" *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 180 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  "Applying this standard is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"In deciding a Rule 12(b)(6) motion, the Court may consider the following materials: (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, . . . [and (4)] facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (footnotes omitted), *aff'd sub nom. Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir. 2005).  "Where a document is referenced in a complaint, the documents control and this Court need not accept as true the allegations in the amended complaint." *Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016) (cleaned up).

### C.      Rule 9(b): Heightened Pleading Standard

"Claims sounding in fraud must satisfy the heightened pleading standards of . . . Rule 9(b)." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022).  "Under Rule 9(b)'s particularity requirement, the plaintiff must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are

5

fraudulent." *Id.* (quotation marks omitted). "Rule 9(b) also requires plaintiffs to 'allege facts that give rise to a strong inference of fraudulent intent.'" *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 156 (S.D.N.Y. 2022) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).

## III.    Discussion

Colgate seeks dismissal on several grounds, including that: (1) Plaintiffs' claims are preempted by the Federal Food, Drug, and Cosmetic Act (the "FDCA"); (2) Plaintiffs do not have standing to assert certain of their claims; (3) Plaintiffs fail to state claims; and (4) certain of Plaintiffs' individual claims are time-barred. (*See generally* Mem.)

### A.    Express Preemption

Colgate argues that the Products are subject to extensive regulation by the Food and Drug Administration and the related preemption statutes of the FDCA. (Mem. at 19.) Two statutes are relevant to this analysis. The first, 21 U.S.C. § 379r(a) of the FDCA, contains an express preemption provision for over-the-counter ("OTC") drugs such as the Products. 21 U.S.C. § 379r(a) states that "no State or political subdivision of a State may establish or continue in effect any requirement . . . (1) that relates to the regulation of [an OTC] drug . . . ; and (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under [the FDCA]." 21 U.S.C. § 379r(a); *see also Monsanto Co. v. Durnell*, No. 24-1068, slip. op. at 9 (U.S. June 25, 2026) (examining whether Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136v(b), preempts a Missouri state-law failure-to-warn claim as imposing labeling requirements "in addition to or different from" those federally required, and noting that FIFRA's preemption provision serves to achieve uniformity in labeling). The second, 21 U.S.C. § 352(a)(1), prohibits the labeling or packaging of OTC drugs in a false or misleading way.

Plaintiffs' affirmative misrepresentation claims are not expressly preempted. The FDCA prohibits drugs and cosmetics from being labeled or packaged in a false or misleading manner. *See* 21 U.S.C. § 352(a)(1). Plaintiffs allege that Colgate falsely represented the Products as promoting "Whole Mouth Health", "Protect[ing] teeth, tongue, cheeks [and] gums," and being "Responsibly Made" (SAC ¶ 130 (quotation marks omitted)), despite allegedly containing lead and other heavy metals, substances that Plaintiffs contend directly contradict the labels' affirmative representations (*see id.* ¶¶ 135-36). In substance, Plaintiffs allege that Colgate's labeling is false or misleading under standards that parallel the FDCA itself. Accordingly, their claims seek to enforce requirements identical to, not different from or in addition to, those imposed by federal law. *See Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 320, 323 (S.D.N.Y. 2017) (holding that claims alleging misleading whitening representations were not expressly preempted because they paralleled the FDCA's prohibition on false or misleading labeling).

It is true, as Colgate notes, that as OTC anticaries drugs containing stannous fluoride, the Products are also governed by the FDA's Anticaries Drug Products for Over-the-Counter Human Use (the "Anticaries Monograph").[2] (Mem. at 19.) That monograph "establish[es] conditions under which OTC anticaries drug products . . . are generally recognized as safe and effective and

---

[2] Colgate also argues that certain products at issue—namely the "Total Products"—are subject not only to the Anticaries Monograph but also to the Antigingivitis Advance Notice of Proposed Rulemaking ("ANPR"). (Mem. at 20.) The Court rejects this argument. The Antigingivitis ANPR is an advance notice of proposed rulemaking, not a final statute or regulation, and therefore carries no preemptive force under § 379r. *See Cross v. Haleon US, Inc.*, No. 24-CV-09325, 2025 WL 2019930, at *2 (C.D. Cal. Jul. 11, 2025) (rejecting identical argument and holding that an ANPR is only "an advance notice proposed rulemaking . . . , not a statute or final regulation"). Colgate has identified no authority construing the Antigingivitis ANPR to have preemptive effect, and this Court declines to be the first. Accordingly, the Court gives the Antigingivitis ANPR no weight in its analysis.

not misbranded." *See* Anticaries Drug Products for Over-The-Counter Human Use; Final Monograph ("Anticaries Monograph"), 60 Fed. Reg. 52474, 52506 (Oct. 6, 1995) (codified at 21 C.F.R. pt. 355).

But the Anticaries Monograph does not resolve the issue presented here. The Anticaries Monograph merely permits the sale—without a new drug application—of products containing one of the approved active ingredients and authorizes certain decay-prevention claims specified by the FDA. *See Canale*, 258 F. Supp. 3d at 321. It does not broadly immunize all advertising or labeling statements made by manufacturers, nor does it address the specific representations challenged by Plaintiff. *Compare Dean v. Colgate-Palmolive Co.*, No. 15-CV-107, 2015 WL 3999313, at *10 (C.D. Cal. June 17, 2015) ("[T]he monograph in question does not refer to whitening toothpaste at all; it concerns over-the-counter anti-cavity drug products—which may be used in toothpastes—and when such products can be recognized (and labeled) as safe and effective."), *with Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 373 (S.D.N.Y. 2014) (finding claims preempted where plaintiffs' challenged statements were expressly endorsed by the FDA monograph regarding fluoride's anticaries benefits). Put differently, the Anticaries Monograph does not authorize unrelated or otherwise misleading claims. As the court explained in *Canale v. Colgate-Palmolive*, "[t]hat a toothpaste contains sodium fluoride, an active ingredient approved under the monograph, and therefore may advertise its cavity-preventing qualities, does not, for example, permit its manufacturer to make misleading claims about that toothpaste's ability to clear acne." 258 F. Supp. 3d at 323.

Plaintiffs' omission-based theory stands on different footing. Although the Second Circuit has not directly addressed whether omission claims are expressly preempted under the FDCA, several district courts have concluded that such claims are preempted where federal law

does not independently require the omitted disclosure.  The reasoning of these courts is instructive.  In *Navarro v. Walgreens Boots Alliance*, for example, the court held that claims premised on failure to disclose possible benzene contamination in an OTC drug product were expressly preempted because "to the extent Plaintiff's claims are based on allegations that Walgreens should have warned about the presence of benzene on Walgreen's [] product labels, that theory is [] preempted because it would be an 'addition' not required by federal law."  No. 24-CV-290, 2025 WL 1411406, at *11 (E.D. Cal. May 15, 2025), *report & recommendation adopted*, 2025 WL 3485004 (E.D. Cal. Dec. 4, 2025); *see also White v. Tom's of Maine, Inc.*, No. 25-CV-00662, 2026 WL 686269, at *4-5 (E.D.N.Y. Mar. 11, 2026) (distinguishing between an omission theory and a misrepresentation theory and concluding that plaintiff's omission theory was expressly preempted); *Bojko v. Pierre Fabre USA Inc.*, No. 22-CV-6728, 2023 WL 4204663, at *4-5 (N.D. Ill. June 27, 2023) (distinguishing claims challenging affirmative representations from claims seeking disclosure of contaminants not required to be listed under federal law).  The logic applies with equal force here.

Again, the FDCA preempts any state-law requirement that is "different from" or "in addition to" federal requirements.  21 U.S.C. § 379r(a).  Because federal law imposes no obligation to disclose the presence of heavy metal contaminants anywhere on the label, any state-law claim premised on that omission creates requirements beyond those imposed by federal law and is expressly preempted.[3]  The comprehensive and granular nature of the Anticaries

---

[3] Apart from the preemption issues affecting their omission-based theories, most of Plaintiffs' state-law fraud-by-omission claims independently fail because the statutory schemes require allegations of knowledge.  Plaintiffs do not plead the requisite knowledge on the part of Colgate with the particularity required under Rule 9(b).  The SAC alleges only, in conclusory fashion, that Colgate "knew or should have known the [Toothpastes] contained or had a material risk of containing heavy metals." (SAC ¶ 140; *see also id.* ¶¶ 149, 190.)  Such allegations are insufficient to establish knowledge.  *See In re Sling Media Slingbox Advert, Litig.*, 202 F. Supp.

9

Monograph provides the full scope of what the FDA has required.  The monograph does not merely touch on toothpaste labeling in passing.  Rather, it prescribes with considerable specificity the required active ingredient disclosures, warning language, directions for use, indications, and format requirements for anticaries drug products.  This level of regulatory detail reflects a considered exercise of the FDA's comprehensive authority over OTC drug labeling. The Court does not suggest, as Plaintiffs fear (Opp. at 18), that FDA silence is always tantamount to a conscious decision that no warning is required.  But where the FDA has constructed an elaborate labeling framework specifying labeling requirements, and heavy metal disclosures appear nowhere in that framework, the inference that the agency made a considered judgment about label content is substantially stronger than in cases where the regulatory scheme merely touches on the relevant product category.  *See Bowling*, 65 F.Supp.3d at 376 ("This case might be different if the FDA had issued *no* guidance as to dental hygiene products, making it possible to conclude that [the mouthwash] falls beyond the scope of federal regulation entirely.") To allow state omission claims to supplement this comprehensive scheme would be to substitute judicial judgment for agency judgment in precisely the domain Congress assigned to the FDA.

---

3d 352, 359-60 (S.D.N.Y. 2016) (dismissing New York state law claim where the court was "left speculating" as to whether the defendant possessed the allegedly omitted information at the time of purchase); *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1076 (N.D. Cal. 2014) (concluding that an omission under applicable California state law constitutes fraud or deceit where defendant has exclusive knowledge); *Song v. Champion Petfoods USA, Inc.*, No. 18-CV-3205, 2020 WL 7624861, at *11 (D. Minn. Dec. 22, 2020), *aff'd*, 27 F.4th 1339 (8th Cir. 2022) (dismissing claim involving trace heavy metals in food, explaining that the Minnesota Supreme Court has "only applied the special-knowledge theory in one case, in which a bank that had actual knowledge that one of its depositors was irretrievably insolvent and thus engaging in fraud by entering into a contract with the plaintiff" (quotation marks omitted)); *Spera v. Samsung Elecs. Am., Inc.*, No. 12-CV-5412, 2014 WL 1334256, at *7 (D.N.J. Apr. 2, 2014) (dismissing consumer fraud because plaintiffs failed to state sufficient facts to show that defendant knew of alleged defects prior to sale).  At most, Plaintiffs allege only that Colgate "knew of the formulation and ingredients" of the Products.  (SAC ¶ 83.)

Plaintiffs place substantial reliance on *Canale,* which they contend forecloses preemption of their omission claims.  (*See* Opp. at 18.)  However, *Canale* involved only a challenge to an affirmative misrepresentation that Colgate's Optic White toothpaste "deeply whiten[s]" teeth. 258 F. Supp. 3d at 316 (quotation marks omitted).  The court's preemption analysis was narrow: It asked whether the monograph immunized that voluntary affirmative statement from state law challenge and answered no, reasoning that the monograph does not "immunize any other representation made by the products' manufacture" beyond those specifically governed by its terms.  *Id.* at 321.  That holding is entirely correct as applied to affirmative misrepresentations, and this Court does not contradict it.

Plaintiffs similarly rely on *Clinger v. Edgewell Personal Care Brands*, which requires more careful analysis, as it did directly address omission-based claims in the context of an FDA monograph drug.  No. 21-CV-1040, 2023 WL 2477499 (D. Conn. Mar. 13, 2023).  Although the *Clinger* court correctly recited the full text of § 379r(a) and acknowledged that the FDCA preempts state law requirements that are either "different from" or "in addition to" federal requirements, its application of that framework addressed only the former prong.  *See id.* at *9 (quoting *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 35-36 (2d Cir. 2020)).  When the court turned to the merits of the express preemption question, it asked only whether the relevant FDA regulations foreclosed the plaintiffs' proposed benzene warning, that is, whether requiring such a warning would conflict with federal law.  *Id.* at *10.  That analysis speaks only to the "different from" prong.  The court never separately asked whether requiring a benzene warning would impose an obligation in addition to what the federal monograph affirmatively demands, which is a distinct question that does not turn on whether federal and state law can coexist, but on whether the state requirement exceeds the federal floor.  By treating the absence of federal prohibition as

11

sufficient to defeat express preemption, *Clinger* effectively collapsed the two prongs into one and left the "in addition to" language without independent force.

In sum, Plaintiffs' misrepresentation claim asks the Court to police the accuracy of voluntary statements already appearing on the label, which runs parallel to § 352(a)(1)'s existing prohibition on false or misleading labeling and therefore survives preemption. Their omission claim, on the other hand, is categorically different. It asks this Court to compel Colgate to add new affirmative disclosures to a federally regulated drug label, which the FDA has never required and never authorized. Accordingly, to the extent Plaintiff alleges the labels are misleading because they misrepresent the Products as safe, healthy, and responsibly made, Colgate's motion to dismiss based on preemption is denied. However, to the extent Plaintiffs' claims rely on the omission of lead and heavy metals from the Products' labeling, Colgate's motion to dismiss based on preemption is granted and they are dismissed.

### B.    Standing

Colgate further contends that certain Plaintiffs lack standing as to certain aspects of their claims. (Mem. at 26.) According to Colgate, all the Plaintiffs lack standing as to their omission-based claims because they do not plausibly allege that the level of lead and/or mercury purportedly found in the Toothpastes poses any material health risk and therefore have failed to allege any concrete injury-in-fact. (*Id.*) Moreover, Colgate contends that several individual named Plaintiffs also lack standing as to some or all of their claims, based on a failure to meaningfully link their testing allegations to the Toothpaste units they allegedly bought. (*Id.* at 29.)

Because Colgate's first argument pertains to Plaintiffs' omission-based claims, which the Court has already dismissed, the Court does not address that argument.

With regard to Colgate's second argument concerning individual Plaintiffs, Colgate alleges that (1) Plaintiffs Rashed, Vinezeano, Alqadri, Triesch, and Scott lack standing for their claims regarding Total Active Prevention Whitening Toothpaste ("Total Active") (*id.* at 30); (2) Plaintiff Boyd lacks standing for his claims (*id.* at 31); and (3) Plaintiffs Brower, Peralta, and Alqadri (as to her purchases of Total Whitening Toothpaste) lack standing for any claims regarding mercury (*id.* at 32).

To establish standing under their price-premium theory of injury that they were injured because they overpaid for Colgate's products, Plaintiffs must allege facts making it plausible that they purchased Products that contained lead and mercury.  *See Onaka v. Shiseido Americas Corp.*, No. 21-CV-10665, 2024 WL 1177976, at *2 (S.D.N.Y. Mar. 19, 2024).  Plaintiffs may directly allege this by alleging testing of their own purchases.  *See id.* Where Plaintiffs have not alleged testing of their own purchases, Plaintiffs must "meaningfully link[]" the results of their alleged testing to their purchased Products.  *Id.* (quoting *Hicks v. L'Oreal U.S.A., Inc.*, No. 22-CV-1989, 2023 WL 6386847, at *9 (S.D.N.Y. Sep. 30, 2023)).  To establish this link, Plaintiffs must allege facts "from which the Court could extrapolate that their isolated testing should apply broadly" to the Products "such that the Court could 'infer a plausible likelihood of a past injury.'"  *Id.* (quotation marks omitted).  This requires alleging sufficient facts about the testing, which may include how many units of the products were tested, where those units were acquired, where and when the test took place, what entity performed the test, and how frequently the testing yielded the alleged results.  *See Esquibel v. Colgate-Palmolive Co.*, No. 23-CV-742, 2023 WL 7412169, at *2 (S.D.N.Y. Nov. 9, 2023); *see also Hicks*, 2023 WL 6386847, at *8.

Plaintiffs argue that so long as one named Plaintiff establishes standing for a given product, such standing can confer standing on all other Plaintiffs.  (Opp. at 25 ("[I]t is sufficient

if 'one of' the Plaintiffs or 'one class representative' alleges testing of a given purchased product") (quoting *Onaka*, 2023 WL 2663877, at *3-4).)  Moreover, Plaintiffs argue that the test results provided in the SAC, including the Lead Safe Mama test published in 2025 and three test results commissioned by Plaintiffs on product samples not alleged to be from their individual purchases ("Commissioned Tests") are sufficient to confer standing.  (*Id.*)

As an initial matter, Plaintiffs conflate standing with the sufficiency of a claim.  It is true that a claim may survive in a class action so long as at least one named plaintiff has standing for each claim.  *See Onaka*, 2023 WL 2663877, at *3 ("[F]or each claim asserted in a class action, there must be at least one class representative (a named plaintiff or a lead plaintiff) with standing to assert that claim" (quotation marks omitted)).  However, one plaintiff's standing does not confer standing onto others.  Rather, each individual named plaintiff in a class action must establish their own Article III standing.  *See TransUnion LLC v. Ramirez*, 594 U.S.413, 431 (2021) ("Every class member must have Article III standing in order to recover individual damages."); *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735, 2018 WL 1614349, at *4-5 (S.D.N.Y. Mar. 30, 2018) (explaining that "[s]tanding in the class action context requires a bifurcated inquiry" in which the court first ensures that the named plaintiffs have plausibly alleged an "injury-in-fact" sufficient to confer Article III standing on them, and then determines whether the conduct that caused that injury "implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants" (quotation marks omitted)); *Hicks v. L'Oreal U.S.A.*, No. 22-CV-1989, 2024 WL 4252498, at *12 (S.D.N.Y. Sep. 19, 2024) (analyzing whether each plaintiff adequately pleaded an injury-in-fact through indirect means, when they did not test their own product); *Hernandez v. Wonderful Co. LLC*, No. 23-CV-1242, 2023 WL 9022844, at *5 (S.D.N.Y. Dec. 29, 2023) ("[I]n a putative

class action, the named plaintiff must allege that she was personally injured by defendants'

conduct.").  Accordingly, Plaintiffs could not serve as representatives for certain claims if they

have not plausibly alleged an injury traceable to their own purchases.  Therefore, the Court must

consider specific facts alleged regarding the Plaintiffs in question and whether they have

adequately pleaded an injury-in-fact through indirect means.

All Plaintiffs in question rely on the Lead Safe Mama study.  Significant obstacles

preclude reliance on the Lead Safe Mama study to find an injury allegedly suffered by Plaintiffs.

That study allegedly tested Total Active, and not other Colgate products, but does not provide

any information necessary for this Court to link the results of the testing to the products

purchased by the Plaintiffs in question.  The Lead Safe Mama study does not state the number of

samples tested, *Kell v. Lily's Sweets, LLC*, No. 23-CV-0147, 2024 WL 1116651, at *4 (S.D.N.Y.

Mar. 13, 2024) (rejecting testing where it was "based on just two or three samples"); *Esquibel*,

2023 WL 7412169, at *2 (critiquing the plaintiffs for failing to allege how many units of the

product in question were tested) or the geographic proximity of the testing to the plaintiff's

purchases, *Esquibel*, 2023 WL 7412169, at *2 (critiquing the plaintiffs for failing to plead where

the units tested were acquired).  Instead, the Lead Safe Mama test results, which are attached to

the SAC, state only that the chart was last updated in April 2025 and that testing occurred in

March 2025 (ECF No. 37-1; ECF No. 37-2), but provide no additional information.  The Lead

Safe Mama study therefore is entitled to no weight in assessing whether the Plaintiffs at issue

have sufficiently alleged that they suffered an injury linked to their purchases.

All Plaintiffs similarly rely on the Commissioned Tests to confer standing.  Plaintiffs

provide even less detail as to the Commissioned Tests, as they fail to allege the date of testing,

where the testing took place, what entity performed the testing, or how many units were tested.

15

(*See* SAC ¶¶ 7, 69-70.)  Accordingly, the Court cannot conclude that lead was "present in the Purchased Products in a 'systematic and routine' way" during the class period based on the results of the Commissioned Tests.  *Hicks*, 2023 WL 6386847, at *9 (quoting *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017)).

### 1.    Plaintiffs Rashed, Vinezeano, Alqadri, Triesch, and Scott's Total Active Standing

Having rejected Plaintiffs' proffered testing as insufficient, the Court turns to Colgate's standing challenge as it relates to the Total Active product.  Colgate argues that Plaintiffs Rashed, Vinezeano, Alqadri, Triesch, and Scott[4] lack standing to pursue claims concerning Total Active Prevention Whitening Toothpaste because they do not allege that any testing was performed on the specific units they personally purchased.  (Mem. at 30.)  Instead, they rely on only the Commissioned Tests and the Lead Safe Mama test. (*Id.*)  Colgate is correct that all five Plaintiffs lack standing with respect to their Total Active purchases.  Although they allege that they purchased that product, they do not allege any facts showing that the specific units they purchased contained the purported defect, instead relying exclusively on the Commissioned Test and the Lead Safe Mama test.  Absent allegations connecting that testing to the products they themselves purchased, these plaintiffs fail to plead a concrete, particularized injury fairly traceable to Colgate's conduct.  Because Plaintiffs Rashed, Vinezeano, and Scott lack standing as to Total Active, and this is the only Product at issue that they allege buying, they are dismissed from this action.

---

[4] Although the SAC states that Plaintiff Scott bought Colgate Total Advanced Whitening Toothpaste (SAC ¶ 50), Plaintiffs correct this in their opposition brief, stating that Plaintiff Scott "bought Colgate Total active Prevention Whitening Toothpaste, not Colgate Total Advanced Whitening Toothpaste." (Opp. at 24 n.10).

### 2.    Plaintiff Boyd as to Total Whitening

Colgate argues that Plaintiff Boyd likewise lacks standing because he alleges only that he purchased Total Whitening Toothpaste ("Total Whitening") but does not allege that his own product was tested.  (Mem. at 31.)  The SAC alleges that Boyd "regularly purchased . . . Colgate Total Whitening Toothpaste" for "at least the last ten years."  (SAC ¶ 44.)  But these allegations, without more, do not plausibly establish an injury-in-fact.  As discussed above, Boyd cannot rely on testing conducted by other plaintiffs to supply this missing element.  *See Hicks*, 2024 WL 4252498, at *12 (evaluating whether each plaintiff independently alleged an injury-in-fact where they did not test their own products).  Nor does Boyd's long-term purchase history cure this deficiency, as it does not plausibly allege that the particular units he purchased contained the alleged contaminants, rendering any asserted injury too speculative absent product-specific testing or a plausible batch-level nexus.  Accordingly, Boyd has not adequately alleged standing to pursue claims based on Total Whitening.

### 3.    Plaintiffs Brower, Peralta, and Alqadri as to Mercury Content

Finally, Colgate contends that Plaintiffs Brower, Peralta, and Alqadri (as to her Total Whitening purchase) lack standing to assert any claims regarding mercury because their alleged testing fails to show the presence of mercury in their purchases.  (Mem. at 32.)  Colgate is correct.  Plaintiffs Brower, Peralta, and Alqadri's personal testing results report mercury levels of "< 5 ppb" or "< 4 ppb" (SAC ¶ 7), which do not plausibly demonstrate the presence of mercury at any detectable or actionable level and therefore preclude the Court from inferring an injury-in-fact as to mercury.  *See Hernandez*, 2023 WL 9022844, at *5 (finding no standing where, due to insufficient testing allegations, the plaintiff was "left with only conclusory allegations insufficient to plausibly allege that the bottle(s) she purchased of the Product contained PFAS").

17

### 4.    Remaining Plaintiffs and Claims

Having concluded that certain Plaintiffs lack standing as to certain claims, the following

Plaintiffs and claims remain:

- Triesch, as to **Triple Action Toothpaste** and **Baking Soda & Peroxide Whitening Toothpaste**.

- Alqadri, as to **Total Whitening Toothpaste**, limited to **lead-based claims**.

- Brower, as to **Total Whitening Toothpaste**, limited to **lead-based claims**.

- Peralta, as to **Colgate Total Advanced Prevention Whitening Toothpaste**, limited to **lead-based claims**.

- Grodnick, as to **Colgate Watermelon Burst Toothpaste**.

- Gauna, as to **Colgate Watermelon Burst Toothpaste** and **Total Active Toothpaste**.

- Smith, as to **Colgate MaxFresh with Whitening Toothpaste**.

### C.    Failure to State a Claim

Colgate next takes aim at Plaintiffs' substantive allegations, arguing that each of

Plaintiffs' claims is meritless.

As discussed above, Plaintiffs' omission-based claims are expressly preempted.  Thus, to

the extent that Plaintiffs' state law claims are based on an omission theory, such claims are

dismissed, and the Court need not consider Colgate's argument that they should be dismissed for

failure to adequately allege knowledge.  *See e.g. White*, 2026 WL 686269, at *6.  However,

Plaintiffs' misrepresentation-based state-law claims are not expressly preempted.  Consequently,

the Court considers Colgate's arguments as to false or misleading statements.

### 1.    NY General Business Law ("GBL") §§ 349 or 350 (Counts One and Two)

The New York General Business Law §§ 349 and 350 (False Advertising Unlawful),

require a claimant to show that the defendant "engaged in (1) consumer-oriented conduct that is

(2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 (N.Y. 2012)).

Colgate contends that Plaintiffs' GBL claims fail because the SAC does not adequately allege any false statement or material omission. To determine whether an act or advertising is misleading, the standard is whether a reasonable consumer could be misled by the alleged act, such as labeling and marketing. *See Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199, 2016 WL 5372794, at *12 (E.D.N.Y. Sep. 26, 2016) (citing *Ackerman v. Coca-Cola Co.*, No. 09-CV-0395, 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010)); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-CV-5029, 2015 WL 2168374, at *11-12 (S.D.N.Y. May 7, 2015) (concluding that the allegation of synthetic ingredients in foods labeled as "natural" brought "the claim of deception into the realm of plausibility"); *Colangelo v. Champion Petfoods USA, Inc.*, No. 18-CV-1228, 2020 WL 777462, at *10-11 (N.D.N.Y. Feb. 18, 2020) (explaining that there was not an unreasonable link between "biologically appropriate" label on dog food and the idea that it would contain no arsenic).

The Court is cognizant that "[w]hether the labels would mislead a reasonable consumer is a question of fact for the jury." *Segedie*, 2015 WL 2168374, at *12. At this stage, Plaintiffs' allegations "bring[] the claim of deception into the realm of plausibility." *Id.* Plaintiffs allege that Colgate markets the Products as "completely safe" and as tested "at every stage of the product life cycle." (SAC ¶ 136 (quotation marks omitted).) Plaintiffs also claim that Colgate misrepresents that the Products offer "Whole Mouth Health" and are "Responsibly Made." (*Id.* ¶ 10.) Those claims could plausibly lead a reasonable consumer to believe there are not heavy metals in the products. *White*, 2026 WL 686269, at *6.

Additionally, Colgate argues that Plaintiffs fail to allege that the Products "pose any material safety risk" or cause harm to consumers and thus fail to plausibly allege that the advertising materials are false or misleading. (Mem. at 35.) "Any inquiry into whether the [Products] pose 'any material safety risk' is a question reserved for summary judgment." *White*, 2026 WL 686269, at *6 (citing *Levy v. Hu Prods. LLC*, No. 23-CV-1381, 2024 WL 897495, at *4 (S.D.N.Y. Mar. 1, 2024)). At this stage in the case, Plaintiffs have done enough to plausibly allege that heavy metals, lead, and mercury present at least some risk to consumers. (SAC ¶¶ 91-121.)

### 2.    California Consumers Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL") (Counts Ten and Eleven)

Colgate argues that "like their GBL claims, Plaintiffs' CLRA and UCL claims warrant dismissal because Plaintiffs fail to adequately allege any misrepresentation." (Mem. at 37-38.) For the reasons discussed above, Colgate's argument is rejected at this stage.

Colgate's cited cases on whether the alleged misrepresentation relates to the safety of harmful substances are distinguishable. *(Id.* at 38.) In *Krystofiak v. BellRing Brands*, the court dismissed claims based on statements such as "a powerful nutrition boost" and "gluten free" because those representations "do not reasonably convey" any information about the presence or absence of lead. 737 F. Supp. 3d 782, 801-02 (N.D. Cal. 2024). However, the same court drew a critical distinction, holding that statements like "immune health support" and "healthy snack" could plausibly imply the absence of harmful substances, including lead, at the pleading stage. *Id.* at 800. The dispositive inquiry, therefore, was whether the challenged representation bears a reasonable connection to the alleged contaminant. That same connection is present here. Statements such as "Whole Mouth Health" and "Responsibly Made" are not unrelated marketing claims; they directly speak to product safety and overall healthfulness. A reasonable consumer

could interpret such representations as conveying that the Products are free from harmful substances like lead and mercury.

Nor does *Sanchez v. Nurture* compel a different result.  No. 21-CV-08566, 2023 WL 6391487 (N.D. Cal. Sep. 29, 2023).  There, the court found no plausible deception because the challenged statement—"3g Protein"—did not bear on the alleged harm, namely the products' sugar content.  *Id.* at *6.  The court emphasized that the complaint failed to allege that the purported harms would negate the specific benefit represented (protein content).  *Id.*  Put differently, there was no logical link between the representation and the alleged defect.  Here, by contrast, Plaintiffs allege that Colgate's representations concern the overall safety and healthfulness of the Products—precisely the qualities undermined by the alleged presence of lead and mercury.  Because the challenged statements plausibly relate to the very risk at issue, Plaintiffs have adequately alleged that a reasonable consumer could be misled.

Furthermore, Colgate's contention that Plaintiffs have not plausibly alleged that the trace amounts of lead and mercury pose any health risk (Mem. at 38) is incorrect.  Plaintiffs allege that any level of heavy metals or lead in the Products can cause various harms, including cognitive and reproductive problems, type 2 diabetes, skin cancer, and, with respect to children, leading to permanent loss of intellectual capacity and behavioral problems.  (SAC ¶¶ 91-124.)  *See In re Trader Joe's Company Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1170 n.15 (S.D. Cal. 2024) (failing to state a claim because plaintiffs did "not allege that these levels [of heavy metals in the Products] can cause the harms alleged."); *In re Pacific Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 764 F. Supp. 3d 1026, 1039 (W.D. Wash. 2025) (dismissing the claims where plaintiffs did not provide factual support that demonstrates a plausible risk of harm from lead).

### 3.    Minnesota Statutes (Counts Three, Four, Five, and Six)

Colgate contends that all four Minnesota claims should be dismissed on the ground that Plaintiffs fail to allege facts showing that the challenged statements would mislead a reasonable consumer. (Mem. at 40.) For the reasons already discussed, that argument is unavailing at this stage.

Colgate advances three additional arguments specific to the Minnesota claims. First, it argues that Plaintiffs fail to allege a public benefit as required under Minnesota law. (*Id.* at 42.) Second, it contends that Plaintiffs' claim under the Minnesota Uniform Deceptive Trade Practices Act ("MDTPA") fails because it does not seek injunctive relief. (*Id.*) Third, Colgate asserts that Plaintiffs' claim under the Minnesota False Statement in Advertising Act ("MFSAA") fails for lack of allegations that any false statements were viewed in Minnesota. (*Id.* at 43.)

The MFSAA and the Minnesota Prevention of Consumer Fraud Act ("MCFA") require plaintiffs to demonstrate that a cause of action benefits the public.[5] Under Minn. Stat. § 8.31, a private litigant who is injured by violations of Minnesota laws "respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade" can assert a cause of action. Minn. Stat. § 8.31, subd. 1, subd. 3a. The requirement exists to ensure that private attorneys general are acting in the public interest rather than pursuing purely personal grievances that happen to be framed as consumer protection claims. *See Hazelden Betty Ford Found. v. Freedom Healthcare of Am., LLC*, No. 18-CV-2374, 2019 WL 13219599, at *6 (D. Minn. May 22, 2019).

---

[5] Colgate also includes the MDPTA in this section of their argument. (Mem. at 42.) Because this Court dismisses the MDPTA claim for failure to adequately seek injunctive relief as required in the MDPTA, this Court does not address it here.

Minnesota laws covered by this provision include the MFSAA and the MCFA.  *See Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1016 (D. Minn. 2012).  The parties do not dispute that to successfully assert such a cause of action, a plaintiff must allege that the action has a "public benefit."  "In deciding whether a claim is brought for the public benefit, courts examine both the form of the alleged misrepresentation and the relief sought . . . to determine what public interests are at stake."  *Olivares v. PNC Bank*, No. 11-CV-1626, 2011 WL 4860167, at *8 (D. Minn. Oct. 13, 2011) (citing *In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d 1071, 1077 (D. Minn. 2010)).  More broadly, courts consider "the degree to which the defendants' alleged misrepresentations affected the public; the form of the alleged misrepresentation; the kind of relief sought; and whether the alleged misrepresentations are ongoing."  *Khoday*, 858 F. Supp. 2d at 1017 (citing *In re Levaquin*, 752 F. Supp. 2d at 1077-79).  Although "courts typically find no public benefit" where plaintiffs seek only damages, the presence or absence of injunctive relief is not dispositive.  *Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981, 986 (D. Minn. 2011) (citing *In re Levaquin*, 752 F. Supp. 2d at 1077).  The inquiry remains holistic, examining the degree to which the alleged misconduct affected the public and whether the challenged representations are ongoing.

Applying the relevant factors here, the Court concludes that the public benefit requirement is satisfied.  As to the form of the alleged misrepresentation, Colgate's challenged statements—including "Whole Mouth Health" and "Responsibly Made"—appeared on product packaging distributed to consumers nationwide, not in communications directed to a narrow or specialized audience.  (*See* SAC ¶ 130.)  As to the relief sought, Plaintiffs explicitly request injunctive and declaratory relief in addition to monetary damages, which reflects a forward-looking intent to correct ongoing marketplace deception rather than merely to recover past

23

losses.  (*Id.* ¶¶ 243, 258.)  And as to the degree of public impact, the allegations concern one of the most widely used consumer products in the United States, affecting a broad cross-section of consumers including children.  Courts have consistently recognized that eliminating false or misleading advertising directed to the public at large serves a cognizable public benefit.  *See Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 946 (D. Minn. 2009); *Olivares*, 2011 WL 4860167, at *8.  Plaintiffs allege precisely that type of harm here, asserting that Colgate's representations regarding the Products were misleading to consumers broadly.

Colgate's cited cases are again distinguishable.  In *Olivares v. PNC Bank*, the challenged statements were sent to a narrow group of defendant's customers. 2011 WL 4860167, at *8 ("This is a group of people far smaller than the 'public at large.'").  Here, by contrast, the alleged misrepresentations appeared on mass-market consumer products available to any member of the public, bringing this case squarely within the public benefit framework.  In *Select Comfort Corporation v. Tempur Sealy International*, the parties were competitors, and the plaintiff sought primarily monetary relief.  11 F. Supp. 3d 933, 939-40 (D. Minn. 2014) ("This is not the type of harm or benefit contemplated . . .  The essence of Plaintiff's lawsuit in this case is not curbing false advertising and sales for the public benefit[.]").  Unlike the competitor plaintiff in *Select Comfort*, Plaintiffs here are consumers seeking to correct ongoing misleading practices in the marketplace, which is precisely the type of public-regarding purpose the statute contemplates.

Colgate also argues that Plaintiffs' MDTPA claim fails to adequately seek injunctive relief because Brower, the only Minnesota plaintiff, does not allege irreparable injury or a threat of future harm, as required under the statute.  *Knotts v. Nissan North Am., Inc.*, 346 F. Supp. 3d 1310, 1328 (D. Minn. 2018) ("A plaintiff asserting a claim under the MDTPA must allege an

24

irreparable injury or threat of future harm in order to withstand a motion to dismiss."); *Cleveland v. Whirlpool Corp.*, 550 F. Supp. 3d 660, 677 (D. Minn. 2021) (same).  Colgate is correct.

Notably, Plaintiffs do not argue that Brower has alleged irreparable injury, rather they rely solely on a threat of future harm theory.  (*See* Opp. at 39-40.)  In support, Plaintiffs cite allegations in the SAC that "it is recommended that children and adults brush their teeth twice a day" (SAC ¶ 98) and that "reasonable consumers, including Plaintiffs . . . believe the . . . Products to be of a certain quality" (*id.* ¶ 86).  These generalized allegations are insufficient. They do not plausibly allege that Brower herself faces a real and immediate threat of future harm, as they fail to assert that she intends to purchase Colgate products again but is unable to rely on the challenged representations.  Absent such allegations, there is no basis to infer a likelihood of future injury.  *See Seutter v. Mead Johnson Nutrition Co.*, 763 F. Supp. 3d 783, 793 (D. Minn. 2025) (concluding that plaintiffs alleged a likelihood of future harm where they specifically alleged a desire to continue purchasing the product at issue but could not rely on its labeling).  Accordingly, as Brower is the only named plaintiff asserting a claim under the MDTPA, and she has failed to adequately plead entitlement to injunctive relief, that claim must be dismissed.  *See Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 376 n.5 (S.D.N.Y. 2024) ("In a putative class action, to survive a motion to dismiss, the complaint must state a claim based on the facts alleged as to the named plaintiffs, not the putative class.").

Finally, Colgate argues that Plaintiffs' claim under the MFSAA fails because they do not allege that they viewed any false statements in Minnesota, as required by the statute.  (Mem. at 43.)  On a Rule 12(b)(6) motion, however, courts must "accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor."  *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (quotation marks omitted).  Although Plaintiffs do not expressly

allege that Brower viewed the Products in Minnesota, they do allege that she purchased them from Target locations in Minneapolis, Minnesota.  (SAC ¶ 24.)  Drawing all reasonable inferences in Plaintiffs' favor, it is reasonable to infer that Brower necessarily encountered the Products' packaging on which the allegedly misleading statements appeared at the time of purchase in Minnesota.  This inference is not merely speculative.  It follows from the ordinary experience of retail grocery and pharmacy purchases, where consumers necessarily handle and examine product packaging before placing items in their cart.  To require an express allegation of label-viewing in addition to an allegation of in-state purchase would elevate form over substance in a way Rule 12(b)(6) does not require.

### 4. Illinois Consumer Fraud Act ("ICFA"), Arizona Consumer Fraud Act ("ACFA") and New Jersey Consumer Fraud Act ("NJCFA") (Counts Seven, Eight, and Nine)

Colgate contends that Plaintiffs' ICFA, ACFA, and NJCFA claims should be dismissed on the ground that Plaintiffs fail to allege facts showing that the challenged statements would mislead a reasonable consumer.  (Mem. at 43-45.)  For the reasons already discussed, that argument is unavailing at this stage.

### 5. Fraud by Omission (Count Twelve)

As discussed above, Plaintiffs' omission-based claims are expressly preempted.  Thus, Plaintiffs' fraud by omission claim is dismissed.

### 6. Unjust Enrichment (Count Thirteen)

Colgate argues that Plaintiffs' unjust enrichment claims fail for three reasons.  (Mem. at 47.)  Because Colgate is correct that Plaintiffs' unjust enrichment claims are duplicative of the wrongdoings alleged in their other state law claims, the Court does not consider the other two independent reasons for dismissal.

26

Both Plaintiffs and Colgate address Plaintiffs' unjust enrichment claims under New York law at this stage (Mem. at 46 n.16; Opp. at 47), and the Court does the same. *Ostenfeld v. Laundress, LLC*, No. 22-CV-10667, 2024 WL 967124, at *6 (S.D.N.Y. Mar. 5, 2024) (analyzing common law claims of multi-state class under New York law because "choice-of-law determinations are fact-intensive inquiries that [are] premature to resolve at the motion-to-dismiss stage." (quotation marks omitted)). "To prevail on a claim for unjust enrichment . . . , a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quotation marks omitted). Unjust enrichment is not a "catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012). "[E]ven pleaded in the alternative," unjust enrichment claims will be dismissed if "plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) (citation omitted). "Two claims are duplicative of one another if they arise from the same facts and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (cleaned up).

Plaintiffs' unjust enrichment claims fail because they merely repackages the same factual allegations and damages theory underlying their other claims, without identifying any independent basis for quasi-contractual relief. (*See* SAC ¶¶ 368-74; Mem. at 47.) Plaintiffs do not allege distinct harm arising from any inequitable retention of a benefit; instead, they rely on the same economic injury that animates their statutory and common-law claims, namely, that "the payments rendered by Plaintiffs were given and received with the expectation that the Toothpaste Products would not contain heavy metals, including lead and mercury." (SAC

¶ 370.)  Courts routinely dismiss unjust enrichment claims as duplicative where, as here, they rest on identical allegations and seek the same relief.  *See, e.g.*, *In re Nurture Baby Food Litig.*, No. 21-CV-1217, 2025 WL 918927, at *16 (S.D.N.Y. Mar. 26, 2025) (dismissing unjust enrichment claim premised on substantially similar allegations and damages theory); *White*, 2026 WL 686269, at *8 (same).  Accordingly, Plaintiffs' unjust enrichment claims are dismissed.

### D.    Statute of Limitations

"As a federal court sitting in diversity pursuant to the Class Action Fairness Act of 2005, *see* 28 U.S.C. § 1332(d)(2)(A), this Court applies the choice-of-law rules of the state in which the Court sits, namely New York."  *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 135 (S.D.N.Y. 2014) (cleaned up).  "Under New York's borrowing statute, N.Y. C.P.L.R. § 202, a case filed by a non-resident plaintiff requires application of the shorter statute of limitations period, as well as all applicable tolling provisions, provided by either New York or the state where the cause of action accrued."  *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002) (footnote omitted).

Colgate argues that New York's three-year statute of limitations for consumer protection claims applies to Plaintiffs' state-law claims. (Mem. at 49 (citing *Int'l Bhd. of Teamsters Loc. 456 Health & Welfare Tr. Fund v. Quest Diagnostics Inc.*, No. 10-CV-1692, 2012 WL 13202126, at *14 (E.D.N.Y. Apr. 19, 2012)).)  On that basis, Colgate contends that Plaintiffs' claims are time-barred to the extent they are predicated on purchases made prior to 2022.

To the extent Plaintiffs seek recovery for purchases made prior to 2022, those claims may ultimately fall outside the applicable limitations period.  But that does not warrant dismissal at the pleading stage.  "[A] statute of limitations analysis is generally riddled with questions of fact which [a defendant] must establish in order to bar [a plaintiff's] claims."  *Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, 251 F. Supp. 3d 724, 749 (S.D.N.Y. 2017) (quotation marks

omitted).  Accordingly, dismissal is appropriate only where the complaint itself establishes an "ironclad" limitations defense.  *Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010); *see also Robert Smalls Inc. v. Hamilton*, No. 09-CV-7171, 2010 WL 3238955, at *9 (S.D.N.Y. July 19, 2010).  Moreover, because Rule 12(b)(6) does not "permit piecemeal dismissals of *parts* of claims," *Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 283 n.6 (S.D.N.Y. 2024) (quoting *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis in original)), "once a court determines that a claim states a viable basis for relief, it cannot further parse out whether other portions of the claim would suffice on their own," *id.* (quoting *Fed. Trade Comm'n v. Facebook, Inc.*, 581 F. Supp. 3d 34, 60 (D.D.C. 2022)).

Here, the SAC does not plead facts sufficient to determine when any particular allegedly noncompliant product was purchased, or which specific products are tied to which time periods. Absent such allegations, the timeliness of any given claim cannot be resolved on the face of the pleading, and Colgate's assertion of a statute of limitations defense is premature.

### E.    Leave to Amend Request

Because the Court grants Colgate's motion to dismiss only in part, Plaintiffs' conditional request for leave to amend, requesting leave only in the event of a full dismissal (Opp. at 49), is denied.

## IV.    Conclusion

For the foregoing reasons, Colgate's motion to dismiss is GRANTED in part and DENIED in part.  Plaintiffs' remaining claims include violations of: (1) N.Y. Gen. Bus. Law § 349 (count one); (2) N.Y. Gen. Bus. Law § 350 (count two); (3) Minn. Stat. §325D.13, *et seq.* (count 3); (4) Minn. Stat. §325F.67, *et seq.* (count five); (5) Minn. Stat. §325F.69, *et seq.* (count six); (6) 815 Ill. Comp. Stat. §505/1, *et seq.* (count seven); (7) Ariz. Rev. Stat. §44-1521, *et seq.*, (count eight); (8) N.J. Rev. Stat. § 56:8-1, *et seq* (count nine); (9) Cal. Civ. Code § 1750, *et seq.*

(count ten); Cal. Bus. & Prof. Code § 17200, *et seq.* (count eleven).  These claims survive to the extent they are premised on alleged affirmative misrepresentations; any theories of liability based on omissions or failures to disclose are dismissed.  Plaintiffs' counts four, twelve, and thirteen are dismissed with prejudice.

Colgate shall file an answer to the remaining claims in the Second Amended Complaint within 14 days after the date of entry of this Opinion and Order.

The Clerk of Court is directed to close the motion at Docket Number 45.

SO ORDERED.

Dated: June 25, 2026
       New York, New York

_____
J. PAUL OETKEN
United States District Judge